# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 11, 2023              Decided October 20, 2023

No. 22-3062

UNITED STATES OF AMERICA,
APPELLEE

v.

THOMAS ROBERTSON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00034-1)

———

*Timothy Cone*, appointed by the court, argued the cause
and filed the briefs for appellant.

*James I. Pearce*, Special Assistant U.S. Attorney, U.S.
Department of Justice, argued the cause for appellee. With him
on the brief was *Chrisellen R. Kolb*, Assistant U.S. Attorney.

2

Before: HENDERSON, PILLARD and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

PAN, *Circuit Judge*:    Defendant-appellant Thomas
Robertson participated in the riot that took place on January 6,
2021, at the United States Capitol.  The riot interrupted and
delayed Congress's certification of the Electoral College vote
that determined the outcome of the 2020 presidential election.
A jury convicted Robertson of obstructing the vote
certification, in violation of 18 U.S.C. § 1512(c)(2).  In this
appeal, Robertson contends that the evidence was insufficient
to show that he acted "corruptly," as § 1512(c)(2) requires.  He
also challenges his 87-month sentence, making new arguments
on appeal that the district court erred in applying two specific
offense characteristics for obstruction of the "administration of
justice."  Because the evidence was sufficient to establish that
Robertson acted "corruptly," and the district court did not
plainly err in applying the specific offense characteristics, we
affirm.

## I. BACKGROUND

### A.

January 6, 2021, was a significant day.  It was the day on
which the United States Congress convened to declare the
winner of the 2020 presidential election, after certifying the
Electoral College vote.  The vote certification must take place
on January 6 following an election, after electors have met in
their respective states, cast their votes for President and Vice
President, and transmitted their certified and sealed ballots to
the President of the Senate.  U.S. Const. amend. XII; 3 U.S.C
§ 15 (2018), *amended by* Consolidated Appropriations Act,

3

136 Stat. 4459, 5238 (2022).  To certify the vote, the Vice President of the United States, acting as President of the Senate, "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."  U.S. Const. amend. XII.  "The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed."  *Id*.  "Such joint session shall not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16 (2018), *amended by* 136 Stat. 4459, 5240 (2022).  The vote certification is thus a pivotal moment in the peaceful transition of presidential power in the United States.

Thomas Robertson is an Army veteran, who was employed as a police sergeant in Rocky Mount, Virginia.  He believed that the results of the 2020 presidential election were "rigged."  Gov't's Suppl. App. ("S.A.") 110.  In the aftermath of the election, he repeatedly shared his views on social media.  He posted messages like the following:  "I won't be disenfranchised.  I'll follow the path our founders gave us.  Redress of grievances (already done) civil disobedience (here now) and then open armed rebellion.  I've spent the last 10 years fighting an insurgency in Iraq and then Afghanistan.  [I'm] prepared to start one here . . . ."  *Id.* at 190.  Because he was "tired of always taking the high road and being beat by those who cheat, lie, and [steal] to win," *id.*, Robertson made plans to travel to Washington, D.C., on January 6, 2021, when Congress would be in session to certify the results of the election.

Robertson invited two companions to travel with him to the District of Columbia on January 6:  a work colleague, Jacob Fracker, and a neighbor.  Robertson packed ready-to-eat meals, water, gas masks, and a large stick into his car.  He drove

4

Fracker and the neighbor to a metro station outside of the District; they then took a train into the city. The three men attended a rally near the Washington Monument, where they listened to speeches by Rudolph Giuliani and former President Donald Trump. They then joined a crowd that was headed to the Capitol. When they arrived at a lower plaza on the west side of the Capitol building, "[a] huge crowd [was] getting pretty out of hand." S.A. 121. The crowd was "yelling" and "screaming." *Id*. "[P]eople were throwing things," like "flash bangs" and "smoke grenades," so Robertson and his companions donned their gas masks. *Id*. at 121, 124-25. When Metropolitan Police Department officers tried to move through the crowd, Robertson blocked their way by standing in front of them with his stick in a "tactical" grip that allowed offensive and defensive movement. Trial Tr. 521:17–523:23, ECF No. 108; S.A. 85. Robertson used the stick to hit one officer and "swipe[]" at another. S.A. 103.

Robertson and Fracker followed a group that had broken through scaffolding on the west side of the Capitol, heading up a set of stairs and into a courtyard just outside the building. They crossed barricades and passed outnumbered officers who were trying to keep rioters out of the area. As Robertson and Fracker went up the stairs, another rioter threw a "stick-like object" at officers. S.A. 132–33.

Although they were briefly separated, both Robertson and Fracker entered the Capitol building at around 2:16 p.m., minutes after other members of the mob first breached the building at 2:13 p.m. Fracker observed rioters climbing through windows to gain access to the Capitol. He also saw broken glass and overturned furniture, and heard an alarm blaring. Robertson and Fracker made their way to the Capitol Crypt, where they took "selfie[s]" and other photos of the

5

chaos.  The Crypt was filled with rioters who began chanting, and Robertson pounded his stick on the floor to their beat.

When Robertson entered the Capitol building, the House and the Senate "were meeting in both the House and Senate chambers of the Capitol to certify the vote count of the electoral college of the 2020 presidential election which had taken place on Tuesday, November 3, 2020."  Trial Tr. 641:13–18, ECF No. 109.  The Vice President was in the building and presiding over the joint session.  *Id.* at 641:23–25.  Robertson was part of the mob that forced members of Congress to flee from the Senate chamber at 2:12 p.m. and from the House chamber at 2:30 p.m.  *See id.* at 642:3–18.  Even after the rioters had been cleared, the chaos and disruption caused by the mob prevented the Senate and the House from resuming their work until "8:06 p.m. and 9:02 p.m., respectively."  *Id.* at 642:14–15.

After January 6, Robertson celebrated his participation in the riot on social media.  He posted one message stating, "We were stomping on the roof of their safe room chanting WHOS[E] HOUSE?  OUR HOUSE," S.A. 186; and another stating, "[I've] seen for the first time in my life . . . [a] government scared of its people.  The pictures of them huddled in the floor crying is the most American thing I have ever seen."  *Id.* at 192–93.  Commenting on a photo of himself with Fracker in the Crypt, Robertson proclaimed:  "I am fucking PROUD of it.  It shows 2 men willing to actually put skin in the game and stand up for their rights. . . . Enjoy your feel good protests and fame.  I'll simply accept a 'Thank you' for the very blanket of freedom that you live and sleep under."  *Id.* at 180–81.  He also said that "CNN and the Left are just mad because we actually attacked the government who is the problem . . . . The Right IN ONE DAY . . . took the fucking U.S. Capitol. Keep poking us."  *Id.* at 184–85.  He described his actions as

6

"storm[ing]" the Capitol, *id.* at 193, and as being "part of the next American revolution," *id*. at 187.

Law-enforcement authorities informed Robertson and Fracker that warrants had been issued for their arrest, and gave them an opportunity to turn themselves in. Before they surrendered, Robertson took his and Fracker's phones and hid them. When officers later searched Robertson's home, they found a cell phone that had been activated the day after his arrest. They also discovered that Robertson had texted a friend that "[a]nything that may have been problematic is destroyed," "[i]ncluding [his] old phone" that "[t]ook a lake swim" and "had a tragic boating accident." S.A. 196, 198–200.

**B.**

Robertson was charged with "corruptly" obstructing Congress's certification of the Electoral College vote, in violation of 18 U.S.C. § 1512(c)(2). He also was charged with five additional offenses, including three more felony counts: knowingly entering a restricted building when the Vice President was there, while carrying a deadly and dangerous weapon (the large wooden stick), in violation of 18 U.S.C. § 1752(a)(1); knowingly impeding the orderly conduct of government business, while carrying a deadly and dangerous weapon (the large wooden stick), in violation of 18 U.S.C. § 1752(a)(2); and altering, destroying, mutilating, or concealing cell phones with intent to impair their use in an ensuing investigation (here, the grand jury investigation of the January 6 riot and Robertson's criminal prosecution), in violation of 18 U.S.C. § 1512(c)(1). *See* 18 U.S.C. § 1752(b)(1)(A) (providing that a violation of § 1752(a) shall be a felony if "during and in relation to the offense, [a person] uses or carries a deadly or dangerous weapon or firearm"). The remaining charges were misdemeanors: interfering with law

7

enforcement officers during the commission of a civil disorder, in violation of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 2; and engaging in disorderly and disruptive conduct in a Capitol building with the intent to disturb the orderly conduct of Congress, in violation of 40 U.S.C. § 5104(e)(2)(D).

Robertson moved to dismiss the § 1512(c)(2) charge, which alleged that he "corruptly" obstructed, influenced, or impeded the vote certification. He argued that the term "corruptly" is ambiguous, and that the statute was unconstitutionally vague as applied to him because it did not give him fair notice that his conduct was unlawful. The district court denied the motion, explaining that "corruptly" means "acting 'with consciousness of wrongdoing.'" *United States v. Robertson* (*Robertson I*), 588 F. Supp. 3d 114, 123 (D.D.C. 2022) (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705–06 (2005)).

Robertson's case proceeded to trial. At the close of the government's case, and again at the close of all the evidence, Robertson moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. He argued that the government had failed to prove that he had acted "corruptly." The district court reserved ruling on his motions until after the jury's verdict.

Robertson revisited the definition of "corruptly" in his proposed jury instructions. He requested that the jury be instructed as follows:

> To act "corruptly," the defendant must use unlawful means or have a wrongful or an unlawful purpose, or both. An act is done "corruptly" if the defendant acted knowingly and dishonestly, with the specific intent to

8

> subvert or undermine the due administration of
> justice. The defendant must also act with
> "consciousness of wrongdoing."
> "Consciousness of wrongdoing" means with an
> understanding or awareness that what the
> person is doing is wrong or unlawful. Not all
> attempts to obstruct or impede an official
> proceeding involve acting corruptly. For
> example, a witness in a court proceeding may
> refuse to testify by invoking his constitutional
> privilege against self-incrimination, thereby
> obstructing or impeding the proceeding, but he
> does not act corruptly. In contrast, an individual
> who obstructs or impedes a court proceeding by
> bribing a witness to refuse to testify in that
> proceeding, or by engaging in other
> independently unlawful conduct, does act
> corruptly.

S.A. 35 (citation omitted). The government objected to the
reference to "dishonestly" as duplicative and unnecessary.

The district court declined to adopt the requirement of
"dishonestly" but otherwise gave an instruction that largely
tracked what Robertson had requested. The final instruction
on "corruptly" provided:

> To act corruptly the defendant must use
> unlawful means, or act with an unlawful
> purpose, or both. The defendant must also act
> with consciousness of wrongdoing.
> Consciousness of wrongdoing means with an
> understanding or awareness that what the
> person is doing is wrong. Not all attempts to
> obstruct or impede an official proceeding

9

involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding. But he does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding or by engaging in other independently unlawful conduct does act corruptly.

S.A. 203; *see also* ECF No. 86 (Final Jury Instructions). The jury found Robertson guilty on all counts.

After the trial, Robertson renewed his motion for judgment of acquittal on the § 1512(c)(2) count. He again asserted that "corruptly" is unconstitutionally vague. He also argued for the first time that the government did not prove that he acted corruptly because it did not show that he "acted knowingly and dishonestly with the intent to obtain an unlawful advantage for himself or an associate." Robertson's App. ("App.") 38.

The district court denied the motion, reiterating that "corruptly" is not unconstitutionally vague and that the term means acting with consciousness of wrongdoing and with independently unlawful means or purpose. *United States v. Robertson* (*Robertson II*), 610 F. Supp. 3d 229, 233, 236 (D.D.C. 2022). The court further determined that the evidence supported the jury's finding that Robertson acted "corruptly." *Id.* at 236. The district court relied on evidence that Robertson "engaged in other independently unlawful conduct, by entering and remaining in a restricted area without lawful authority and by engaging in disruptive and disorderly conduct in a restricted area," and determined that such evidence demonstrated "using

10

unlawful means or acting with an unlawful purpose." *Id.* (cleaned up).

Robertson faced a statutory maximum sentence of 20 years' imprisonment for his convictions under 18 U.S.C. § 1512(c)(1) and (c)(2), while his other felony convictions each carried a statutory maximum of 10 years' imprisonment, *see* 18 U.S.C. § 1752(b)(1)(A). The district court sentenced Robertson to a total of 87 months' imprisonment (seven years and three months), followed by 36 months of supervised release. That sentence was at the bottom of the calculated guidelines range of 87 to 108 months, which was based on a total offense level of 29 and a Category I criminal history. To determine the offense level, the district court first looked to the obstruction-of-justice sentencing guideline, U.S.S.G. § 2J1.2, which has a base offense level of 14. Over Robertson's objections, the court then added 15 more levels to the offense: an eight-level increase for "causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," U.S.S.G. § 2J1.2(b)(1)(B); a three-level increase because "the offense resulted in substantial interference with the administration of justice," *id.* § 2J1.2(b)(2); a two-level adjustment for being an organizer of criminal activity, *id.* § 3B1.1(c); and another two-level enhancement for obstruction of justice based on destroying his and Fracker's cell phones, *id.* § 3C1.1.

## II. ANALYSIS

### A.

Robertson challenges his conviction under 18 U.S.C. § 1512(c)(2), which prohibits "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." The jury was instructed that, in order

11

to convict Robertson of violating § 1512(c)(2), it had to find beyond a reasonable doubt that he (1) "attempted [to] or did obstruct or impede an official proceeding"; (2) "acted with the intent to obstruct or impede the official proceeding"; (3) "acted knowingly with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding"; and (4) "acted corruptly."  Trial Tr. 980:14-20, 981:6-8, ECF No. 111.  On appeal, Robertson takes issue with only the "corruptly" element.  He does not challenge any of the other elements or dispute that they were met.

Robertson contends that the evidence presented at his trial was insufficient to prove that he acted "corruptly."  The district court held that "corruptly" signifies acting with independently unlawful means, unlawful purpose, or both, and with consciousness of wrongdoing.  *Robertson II*, 610 F. Supp. 3d at 233, 236.  Although Robertson previously endorsed most of the district court's definition, he now argues that a proper construction of "corruptly" holds a different meaning.  He claims that the term describes *only* "an act dishonestly done 'with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person.'"  Opening Br. 21 (quoting *United States v. Aguilar*, 515 U.S. 593, 616–17 (1995) (Scalia, J., concurring in part and dissenting in part)).  Under that interpretation, he urges, the trial evidence was insufficient to prove that he "corruptly" obstructed an official proceeding.  He contends that he did not act "dishonestly," that he did not seek any personal benefit by participating in the January 6 riot, and that any benefit to former President Trump was "too remote" to be considered.  *Id.*

We conclude that "corruptly" must be construed according to its plain meaning; that the "corruptly" element in § 1512(c)(2) delineates whether a defendant's conduct is culpable; and that there are a range of ways to prove a

12

defendant's "corrupt" intent or action.   On review of the sufficiency of the evidence, we need only determine that the "corruptly" element was satisfied by the evidence presented in Robertson's trial.   *See Musacchio v. United States*, 577 U.S. 237, 243 (2016).   We hold that the jury could have found, consistent with the district court's instructions, that Robertson acted "corruptly" based on evidence that he used felonious "unlawful means" to obstruct, impede, or influence the Electoral College vote certification.   The evidence was therefore sufficient to support Robertson's conviction of violating   § 1512(c)(2).   Robertson's contention that his preferred definition of "corruptly" is the sole and exclusive meaning of that term finds no support in the text, structure, or context of the statute, and is inconsistent with relevant precedents.

**1.**

Robertson frames his claim as one of insufficient evidence.[1]   The parties agree that our standard of review is *de novo*.  Gov't Br. 21; Def. Br. 12.  The government further states that our review does not rest on how the jury was instructed and that we should assess Robertson's claim based on how a properly instructed jury would assess the evidence.   *See* Gov't Br. 21 (citing *United States v. Hillie*, 39 F.4th 674, 679–80

---

[1]      It may be that the type of claim brought by Robertson, in which he essentially asserts that the jury instructions omitted a requirement under the statute, is not properly characterized as a challenge to the sufficiency of the evidence.   *See United States v. Reynoso*, 38 F.4th 1083, 1086–87 (D.C. Cir. 2022).   But the government does not question the framing of Robertson's claim.

13

(D.C. Cir. 2022); *Reynoso*, 38 F.4th at 1089).[2]  We thus apply that standard even though Robertson's claim on appeal is inconsistent with the jury instruction that he requested in the trial court.

In reviewing the sufficiency of the evidence *de novo*, we consider the evidence "in the light most favorable to the government." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021).  "As an appellate court, we owe tremendous deference to a jury verdict." *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990).  We must affirm where "*any* rational trier of fact" could have found guilt beyond a reasonable doubt. *Id.* (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Our task here is to make only a "limited inquiry" — we must examine the record in this case just to determine the sufficiency of the evidence to support Robertson's conviction. *Musacchio*, 577 U.S. at 243 ("On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires . . . .").  We start by determining the meaning of "corruptly" and then assess whether the evidence presented at Robertson's trial was sufficient to prove that element.

**2.**

In defining "corruptly," we do not write on a clean slate. Both the Supreme Court and this court have examined the meaning of "corruptly" in statutes that address obstructive

---

[2]    Although *Hillie* is arguably distinguishable from the case at bar because the instructional error in that case was preserved with a specific objection, *Hillie*, 39 F.4th at 679–80, the government does not make that distinction and does not request a different standard of review from that applied in *Hillie*.

14

behavior. *See Arthur Andersen*, 544 U.S. at 704–07 (analyzing 18 U.S.C. § 1512(b)(2)(A) and (B), which prohibits "knowingly . . . corruptly persuad[ing] another" to withhold, alter, or conceal evidence for use in an official proceeding); *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990), *opinion withdrawn and superseded on other grounds on reh'g*, 920 F.2d 940 (D.C. Cir. 1990) (analyzing 18 U.S.C. § 1505, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] or endeavor[ing] to influence, obstruct, or impede" a congressional inquiry). As in those cases, we must begin with the statutory text. Because Congress has not defined "corruptly" in § 1512(c)(2), we must look to the word's ordinary meaning. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012); *North*, 910 F.2d at 881; *Arthur Andersen*, 544 U.S. at 705.

The Supreme Court noted in *Arthur Andersen* that the "natural meaning" of "corruptly" is "clear": The word is "normally associated with wrongful, immoral, depraved, or evil." *Arthur Andersen*, 544 U.S. at 705. Similarly, we stated in *North* that "'corruptly' is the adverbial form of the adjective 'corrupt,' which means 'depraved, evil: perverted into a state of moral weakness or wickedness.'" *North*, 910 F.2d at 881 (quoting *Corrupt*, Webster's Third New International Dictionary 512 (1976)). Those cases provide guidance on how to apply the ordinary meaning of "corruptly" in statutory interpretation. *Arthur Andersen*, 544 U.S. at 705 (the "natural meaning" of "corruptly" "provides a clear answer" for how it should be applied in the statute); *North*, 910 F.2d at 882, 884 ("corruptly" is to be understood according to its "common meaning[]").

In *Arthur Andersen*, the Supreme Court reviewed the jury instructions for an obstruction charge arising from conduct that could have been either an ordinary business practice or

15

criminal obstruction: document shredding.  544 U.S. at 703–
08.   In that case, the Court reversed the conviction of
accounting firm Arthur Andersen LLP under 18 U.S.C.
§ 1512(b) for instructing its employees to destroy documents
of its client, the Enron Corporation, in advance of a
government investigation.   *Id.* at 698–702.   The Court
recognized that instructing employees to shred documents
pursuant to a corporate document-retention policy was not
necessarily criminal. *Id.* at 704.  To determine whether Arthur
Andersen's behavior was culpable, the Court looked to the
ordinary meaning of "corruptly": "wrongful, immoral,
depraved, or evil."   *Id.* at 705.   Then, because § 1512(b)
penalizes "knowingly . . . corruptly persuad[ing]," the Court
paired the ordinary meaning of "knowingly" with the ordinary
meaning of "corruptly" to hold that the statute required
"consciousness of wrongdoing." *Id.* at 705–06.  Importantly,
the Court noted that the "knowingly corruptly" element
ensured that "only those with the level of 'culpability . . . we
usually require in order to impose criminal liability'" could be
convicted.  *Id*. at 706 (quoting *Aguilar*, 515 U.S. at 602).

    Like the Supreme Court, we have relied on the ordinary
meaning of "corruptly."  In *North*, we reviewed a conviction
under 18 U.S.C. § 1505 for aiding and abetting an endeavor to
obstruct the congressional investigation of the Iran/Contra
affair.  910 F.2d at 851–52.  The defendant argued that his
obstructive actions were authorized by his superiors, and that
he therefore did not act "corruptly."  *Id*. at 878.  Interpreting
"corruptly" as used in § 1505, we recognized that ordinary
meanings of the word include "depraved, evil: perverted into a
state of moral weakness or wickedness."  *Id.* at 881.  We held
that the defendant was "entitled only . . . to a jury that applied
'corruptly' according to its usual definitions" or "common
meaning[]."  *Id.* at 882, 884.  We recognized, however, that
proof of "corrupt" intent or action may vary depending on

16

circumstances.    We noted that several courts of appeal reviewing convictions under § 1503 — which prohibits corrupt obstruction of the "due administration of justice" — have said that "the word 'corruptly' means nothing more than an intent to obstruct the proceeding," because there are "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding."  *Id.* at 882.  In other words, knowingly obstructing a judicial proceeding — such as by destroying evidence or threatening jurors — may be viewed as inherently corrupt.  *Id.*; *see also United States v. Fischer*, 64 F.4th 329, 355 (D.C. Cir. 2023) (Walker, J., concurring in part and concurring in the judgment); *id.* at 373 (Katsas, J., dissenting). By contrast, "to assert that all endeavors to influence, obstruct or impede the proceedings of congressional committees are, as a matter of law, corrupt [] would undoubtedly criminalize some innocent behavior."  *North*, 910 F.2d at 882.  That is because "congressional committees are part and parcel of a political branch of government" that is engaged in making legislative and policy choices.  *Id*.  It is thus commonplace for people — such as lobbyists, protesters, and constituents — to lawfully "attempt, in innumerable ways, to obstruct or impede congressional committees."  *Id.*[3]

---

[3]    Our dissenting colleague errs in asserting that we "expressly rejected" defining "corruptly" according to its ordinary meaning and dictionary definition in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).  Dissenting Op. 28.  We held in that case that the term "corruptly" as used in 18 U.S.C. § 1505 was vague as applied to Poindexter's alleged conduct — lying to Congress.  *Poindexter*, 951 F.2d at 379 ("As used in § 1505, . . . we find that the term 'corruptly' is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress.").  But we expressly declined to conclude that "the ambiguity of the term 'corruptly' in § 1505 renders that term unconstitutionally vague as applied to all conduct." *Id*. at 385.  Because *Poindexter*'s holding focused on whether § 1505

17

*Arthur Andersen* and *North* show that the type of proceeding and the nature of a defendant's conduct matter. In contexts where obstructive actions are not inherently corrupt, the requirement to act "corruptly" separates innocent from illegal behavior. *See Arthur Andersen*, 544 U.S. at 706. The "corruptly" element protects non-culpable conduct — such as a corporation following a document retention policy for routine reasons, *id.* at 704, or lobbyists and protestors exercising their rights to influence a congressional committee hearing, *North*, 910 F.2d at 882 — from being swept up by the statute's broad prohibition on "obstructing, influencing or impeding an official proceeding." Those cases confirm, moreover, that the requirement that a defendant act "corruptly" is met by establishing that the defendant acted with a corrupt purpose or via independently corrupt means. *Id.*; *see id.* at 942–43 (Silberman, J., concurring in part and dissenting in part) ("[T]o say that someone corruptly endeavors to obstruct an inquiry might mean (1) that he does so with a corrupt purpose, or (2) that he does so by independently corrupt means, or (3) both.").

*North* suggests that where an individual "chooses the illegal or dubious course" to obstruct a congressional proceeding when a lawful means was available, no further showing of "corrupt motive" is required beyond his intent to commit the illegal, obstructive act. *North*, 910 F.2d at 883–84 (rejecting defendant's argument that he did not act "corruptly" if his supervisors authorized his conduct where evidence showed that he employed unlawful means to do their bidding);

---

was unconstitutionally vague as applied to the specific conduct at issue in that case, it is not helpful in interpreting whether Robertson's very different conduct in obstructing the Electoral College vote certification was sufficient to establish "corrupt" intent or action under § 1512(c)(2).

18

*see also Aguilar*, 515 U.S. at 616 (Scalia, J., concurring in part and dissenting in part) (citing with approval a jury instruction for 18 U.S.C. § 1503 stating that "[a]n act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some *unlawful method*" (emphasis added)).  In concluding that reliance on corrupt means is appropriate, Judge Silberman reasoned in his separate opinion in *North* that the "adverbial words or phrases 'corruptly,' 'by threats or force,' and 'by any threatening letter or communication' [in § 1505] are equated, suggesting that Congress meant 'corruptly' to refer to the means by which the defendant endeavored to influence or impede a congressional inquiry." 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part).  Thus, a defendant who seeks to influence a congressional vote by "brib[ing] the chairman of a congressional committee can be said to have acted 'corruptly' no matter how laudable his underlying motive." *Id*.  Where a defendant uses "independently criminal" means, the jury "would not necessarily need to probe the morality or propriety of the defendant's purpose." *Id*.

Where neither the obstruction itself nor the defendant's means of obstruction are "inherently malign," however, consideration of a defendant's actions alone does not suffice. *Arthur Andersen*, 544 U.S. at 704.  In that circumstance, a jury must find that the defendant acted with a "corrupt" purpose — in other words, a purpose that was "depraved, evil, or wrongful." *See North*, 910 F.2d at 942–43 (Silberman, J., concurring in part and dissenting in part) ("Whenever the means used are not independently criminal, the jury cannot avoid considering the defendant's purpose if it is to meaningfully determine whether the endeavor was corrupt or evil or depraved.").  As the Supreme Court explained in *Arthur Andersen*, a manager's instruction to employees to shred documents in compliance with an established document

19

retention policy "under ordinary circumstances" is not corrupt, 544 U.S. at 704; but a manager who knows that the shredded documents are relevant to a pending judicial proceeding may act "corruptly" in giving the same instruction. *Id.* at 708. Similarly, a jury considering the culpability of a lawyer who "advise[d] his client not to testify before a congressional committee conducting an inquiry" must consider the lawyer's purpose in giving that advice to "meaningfully determine whether the endeavor was corrupt or evil or depraved." *See North*, 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part). "The obstruction would not be corrupt if his purpose were solely to protect his client from possible legal difficulties." *Id.* "But it might well be corrupt if the lawyer's purpose were to prevent the client from divulging information that would implicate the lawyer." *Id.* Thus, under circumstances where a defendant's conduct is not inherently corrupt nor his means independently wrongful, "corruptly" can be proved by examining the defendant's purpose.

*North* and *Arthur Andersen* confirm that there are multiple ways to prove that a defendant acted "corruptly." Those cases provide examples of how corrupt intent or action may be established and demonstrate that "corruptly" need not be proved in the same way in every case. *See North*, 910 F.2d at 883 (declining to adopt a rule that a defendant must have a "corrupt motive" to act "corruptly" because, "[j]ust as . . . there are myriad ways of 'impeding' or 'obstructing' congressional investigations that are not in themselves corrupt; so are there equally corrupt ways of impeding or obstructing Congress that do not proceed from corrupt motives"). Thus, "choos[ing] the illegal or dubious course" to obstruct a congressional proceeding can suffice to establish that a defendant acted corruptly. *Id.* at 887. Alternatively, a defendant's purpose may prove to be "corrupt" where, as in the hypothetical of the lawyer who convinces his client not to testify against him, the

20

defendant "attempt[s] to secure some advantage for himself . . . that was . . . not in accordance with [his] legal rights." *Id.* at 944 (Silberman, J., concurring in part and dissenting in part). Or one might establish a defendant's corrupt intent by proving that he acted "dishonestly" in "persuad[ing] another to withhold information from the Government," or that he committed obstructive acts with "consciousness of wrongdoing." *Arthur Andersen*, 544 U.S. at 704, 706–07. As Congress has recognized in a related context, "the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted . . . [is] limited only by the imagination of the criminally inclined." *Poindexter*, 951 F.2d at 382 (quoting S. Rep. No. 97-532, at 18 (1982)); *see also* S. Rep. No. 97-532, at 18 (1982) (noting that the "obstruction of justice statute," *i.e.*, what became 18 U.S.C. § 1505, "is an outgrowth of Congressional recognition of [a] variety of corrupt methods" (quoting *Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949))). Congress and the courts have, accordingly, both recognized that "corruptly" in obstruction statutes can be proved in a variety of ways.

**3.**

For present purposes, we need only identify one way in which the evidence at trial could have supported a finding that Robertson acted "corruptly" when he obstructed, impeded, or influenced the Electoral College vote certification. That is because his claim on appeal challenges only the sufficiency of the evidence, and evaluating such a claim requires us to make only a "limited inquiry." *Musacchio*, 577 U.S. at 243. In our view, the district court correctly instructed the jury, in relevant part, that one way to prove that a defendant acted "corruptly"

21

is to demonstrate that he "obstruct[ed] or impede[d] . . . by engaging in other independently unlawful conduct." S.A. 203.

That part of the district court's instruction falls squarely within our holding in *North* that a defendant acts "corruptly" when he "chooses the illegal or dubious course when other legal action" is possible. *North*, 910 F.2d at 883; *id.* at 942–43 (Silberman, J., concurring in part and dissenting in part). Moreover, courts that have construed "corruptly" in 18 U.S.C. § 1512 and in similar obstruction statutes have often focused on equating "corruption" with "wrongfulness." *See, e.g.*, *Arthur Andersen*, 544 U.S. at 705–06 (defining corruption as "wrongdoing" under § 1512(b)(2)(A) and (B)).[4] In this context, "wrongful" can mean "[a]n act taken in violation of a legal duty," *i.e.*, unlawful. *Wrongful Conduct*, Black's Law Dictionary (7th ed. 1999); *see also Unlawful*, Black's Law Dictionary (7th ed. 1999) ("Not authorized by law; illegal."); *Matthews*, 505 F.3d at 706 (explaining that "wrongfully" means acting without "legal right," such as the right to avoid

---

[4]    *See also North*, 910 F.2d at 942 (Silberman, J., concurring in part and dissenting in part) (interpreting "corruptly" as "depraved, evil, or wrongful" under 18 U.S.C. § 1505); *United States v. Farrell*, 921 F.3d 116, 141 (4th Cir. 2019) ("To act 'corruptly' [under § 1512(c)(2)] means to act wrongfully."); *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (defining "corruptly" under § 1512(c)(2) as acting "with a wrongful purpose"); *United States v. Mann*, 701 F.3d 274, 307 (8th Cir. 2012) (upholding convictions under § 1512(c)(1), (c)(2), and (k) where "the jury was instructed that 'corruptly' means to act with 'consciousness of wrongdoing'"); *United States v. Matthews*, 505 F.3d 698, 705–07 (7th Cir. 2007) (approving jury instruction defining "corruptly" under § 1512(c)(1) "as acting 'with the purpose of *wrongfully* impeding the due administration of justice'" (quoting Seventh Circuit Pattern Criminal Federal Jury Instructions for 18 U.S.C. § 1503 (1999))).

22

self-incrimination); *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999) (determining that a defendant could be convicted of corrupt persuasion in violation of § 1512(b) because he persuaded another to "violate his legal duty"), *amended*, 197 F.3d 662 (3d Cir. 1999); *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979) (explaining that "corruptly" as used in 18 U.S.C. § 1503 "really means unlawful"). There is thus ample precedent for treating acting unlawfully as acting "corruptly."

Accordingly, the district court correctly informed the jury that it could find that Robertson acted "corruptly" if the government proved that he "use[d] [independently] unlawful means" when he obstructed, impeded, or influenced the Electoral College vote certification. S.A. 203. Defining "corruptly" as "wrongfully" — and treating independently unlawful conduct as "wrongful" — provides an objective measure of culpable conduct that is straightforward to apply: A court or a jury can easily determine whether the evidence shows that a defendant took unlawful action to obstruct, impede, or influence the proceeding. *See North*, 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part). Although words like "immoral, depraved, or evil" may also accurately convey what it means to be "corrupt," *see Arthur Andersen*, 544 U.S. at 705; *North*, 910 F.2d at 881, "wrongful" captures the "core" meaning of "corrupt" intent or action and readily describes Robertson's conduct. *See Poindexter*, 951 F.2d at 385 (noting that defining "corruptly" as prompting the "violat[ion] [of] a legal duty . . . may be useful as a description of the 'core' behavior to which [18 U.S.C. § 1505] may constitutionally be applied").

In sum, the ordinary meaning of the word "corruptly" in 18 U.S.C. § 1512(c)(2) encompasses acting through

independently unlawful means — just as the district court instructed the jury.[5]

**4.**

The evidence presented at Robertson's trial was undoubtedly sufficient to prove that he acted "corruptly." We must consider that evidence "in the light most favorable to the government." *Shi*, 991 F.3d at 205. And we undertake this review mindful of the "tremendous deference" owed to a jury verdict. *Long*, 905 F.2d at 1576.

Before January 6, Robertson declared his intention to join a "counterinsurgency" and to participate in an "open armed rebellion." S.A. 112, 190. To accomplish that end, Robertson broke the law in multiple ways. He used a stick to hit a police officer and to swipe at another. Wielding that stick as a show of force and intimidation, he joined the "out of hand" crowd surging into the Capitol building despite the blaring of alarms and warnings by police officers that the area was restricted. *Id.* at 83, 85, 121, 140, 142. Once inside the Capitol, he beat his stick on the floor while other rioters chanted. The riot, which

---

[5]    We note that the district court's instruction required the jury to find that Robertson acted with "consciousness of wrongdoing," in addition to finding that he acted with an unlawful purpose or through independently unlawful means. S.A. 203. That "consciousness of wrongdoing" standard originated with *Arthur Andersen*'s interpretation of 18 U.S.C. § 1512(b), which makes it a crime for a defendant to "knowingly . . . corruptly persuade[]" another to obstruct an investigation. *See Arthur Andersen*, 544 U.S. at 704–06. Because § 1512(c)(2) does not contain a "knowingly corrupt" requirement, it is not apparent that "consciousness of wrongdoing" must be proved in this context. Nevertheless, the jury necessarily found that the evidence met that standard when it convicted Robertson; and showing "consciousness of wrongdoing" may itself suffice to prove corrupt intent. *See id.* at 706–07.

24

Robertson enthusiastically joined, forced both houses of Congress to suspend the Electoral College vote certification for six to seven hours. That evidence amply supported the jury's finding that Robertson committed two felony offenses to obstruct the vote certification: *i.e.*, remaining in a restricted building or grounds without lawful authority, and disorderly conduct at the Capitol, both with a deadly or dangerous weapon. *See* 18 U.S.C. § 1752(a)(1), (a)(2), (b)(1)(A). In other words, a jury could easily find that Robertson acted "corruptly" by using independently unlawful, felonious means with the intent to obstruct, influence, or impede the electoral-vote certification.[6]

Applying the "corruptly" element of the statute in this case is "rather simple" because Robertson took action to obstruct Congress by force. *Cf. North*, 910 F.2d at 940 (Silberman, J., concurring in part and dissenting in part) (interpreting 18 U.S.C. § 1505). Using force to obstruct, influence, or impede a congressional proceeding is plainly wrongful and therefore corrupt. Thus, this case does not present a close question of culpability. Robertson did not argue, for example, that he was a mere protestor exercising his First Amendment right to peacefully disagree with the outcome of the presidential election. The evidence established that Robertson was part of a mob that sought to overturn the result of the election by force, and that he used a dangerous weapon to impede the Electoral College vote certification. Where a defendant acts feloniously to obstruct a proceeding before the Congress, with no evidence or argument that he was merely engaged in peaceful

---

[6]    Robertson and our dissenting colleague argue that relying on independently unlawful conduct to prove the "corruptly" element is the equivalent of *requiring* proof of a predicate offense that is not listed in the statute. But that is not so. We hold only that proof of independently felonious means is a *sufficient* way to establish corrupt intent or conduct.

25

expression, his culpability — *i.e.*, the "corruptness" of his actions — is not difficult to discern.

We emphasize that Robertson's independently wrongful conduct was felonious because his resort to felonious means unquestionably suffices to establish his culpability. Whether § 1512(c)(2) applies to defendants who obstruct Congress by means of only "minor advocacy, lobbying, and protest offenses," *Fischer*, 64 F.4th at 380 (Katsas, J., dissenting), or by "non-criminal tortious activity," Opening Br. 15, is beyond the scope of our "limited" review and should be decided in a case that requires resolution of that question. *See Musacchio*, 577 U.S. at 243. Here, we have no trouble rejecting Robertson's specific claim that the evidence was insufficient to support a finding that he acted "corruptly" when he participated in the Capitol riot. A jury could find that he used independently felonious means to obstruct a congressional proceeding, which falls within the core meaning of "corruptly." *See Poindexter*, 951 F.2d at 385.[7]

**5.**

Robertson advocates a definition of "corruptly" that he claims is the sole and exclusive meaning of that term: He asserts that the *only* way to satisfy the element of "corrupt" intent under 18 U.S.C. § 1512(c) is to establish "an act dishonestly done," Opening Br. 21, "with a hope or expectation of either financial gain or other benefit to oneself or a benefit [to] another person," *id.* (quoting *Aguilar*, 515 U.S. at 616–17

---

[7]     Robertson has not renewed on appeal his argument before the district court that "corruptly" is unconstitutionally vague because it has no definite meaning. He apparently recognizes the uphill battle a vagueness challenge would face in light of his use of wrongful — indeed, felonious — means with the intent to obstruct an official proceeding.

26

(Scalia, J., concurring in part and dissenting in part)). According to Robertson, a defendant *must* act in that particular way and with that particular purpose in order to behave "corruptly," and such a limited definition is necessary to appropriately constrain § 1512(c)(2)'s otherwise overly expansive scope. Robertson's attempt to limit "corruptly" to his preferred, single meaning is wholly unconvincing: It finds no support in the statute and is contrary to precedent.

The asserted exclusivity of Robertson's definition of "corruptly" is at odds with the view of that term taken by the Supreme Court, this court, and Congress. *See supra* Section II.A.2. Moreover, the two requirements espoused by Robertson are not mandated by the ordinary meaning of "corruptly" or any other relevant text in the statute. The word "dishonestly" is not included in 18 U.S.C. § 1512(c)(2), or in the dictionary definition of "corruptly." *See Arthur Andersen*, 544 U.S. at 705–06; *Corruptly*, Black's Law Dictionary (7th ed. 1999). Likewise, the "hope or expectation of a benefit" is absent from the statute's text and not required by its plain meaning. *See* 18 U.S.C. § 1512(c). Robertson's proposed definition cannot be the *exclusive* way to construe "corruptly," as he insists, when his definition does not even reflect the ordinary meaning of the word. Indeed, Robertson's reading of "corruptly" conflicts with our decision in *North*. We held that even if North could show that he lacked a corrupt motive (because he was just following orders), a jury could find that he acted "corruptly" because he chose illegal means over available lawful ones to carry out the instructions of his superiors. *See* 901 F.2d at 883–84. In other words, where criminal means are employed, no proof of corrupt purpose is necessary. That holding precludes Robertson's position that a particular purpose — seeking a benefit for oneself or another — is invariably required to prove "corruptly."

27

The broader statutory context also undermines Robertson's position. As we have discussed, "corruptly" encompasses multiple ways of acting with corrupt purpose or corrupt means. *See supra* Section II.A.2. Robertson seems to acknowledge as much in his supplemental brief, and he requested a jury instruction stating that "[t]o act 'corruptly,' the defendant must use unlawful *means* or have a wrongful or an unlawful *purpose*, or *both*." S.A. 35 (emphases added). Yet his current definition of "corruptly" focuses only on a particular type of corrupt means and purpose — acting dishonestly with the hope or expectation of gaining a benefit for oneself or another — while reading the statute to preclude other common ways of behaving "corruptly."

Nor do precedents support Robertson's limited and exclusive interpretation of "corruptly." With respect to the asserted requirement of dishonesty, he relies on *Arthur Andersen*. In that case, the Supreme Court faulted the trial judge for removing from the proposed jury instructions the requirement that the defendant acted "dishonestly" — but only because that deletion relieved the government of its obligation to prove any culpable state of mind and thereby "diluted the meaning of 'corruptly' so that it covered innocent conduct." *Arthur Andersen*, 544 U.S. at 706–07. We do not read *Arthur Andersen* to require proof of "dishonesty" in every case in which "corruptly" is an element.

As for the asserted requirement that the defendant have a "hope or expectation" of a "benefit," Robertson and our dissenting colleague cite two sources: (1) Judge Walker's concurring opinion in *United States v. Fischer*, which asserted that "corruptly" means acting "with an intent to procure an unlawful benefit either for [one]self or for some other person," *Fischer*, 64 F.4th at 352, 357 (Walker, J., concurring in part and concurring in the judgment) (quoting *Marinello v. United*

28

*States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)); *see also* Dissenting Op. 11; and (2) Justice Scalia's partial dissent in *Aguilar*, which approved of a jury instruction defining "corruptly" under 18 U.S.C. § 1503 as an act done "with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." *Aguilar*, 515 U.S. at 616–17 (Scalia, J., concurring in part and dissenting in part); *see* Def.'s Suppl. Br. 9.

Both Judge Walker and Justice Scalia characterized the expectation-of-benefit formulation of "corruptly" as "longstanding," and Judge Walker reasoned in *Fischer* that Congress must have intended "corruptly" as used in § 1512(c) to incorporate that meaning because it is well-established. *Fischer*, 64 F.4th at 352–53, 356–57 (Walker, J., concurring in part and concurring in the judgment). But Judge Walker relied primarily on a dissent in *Marinello* to support his claim of "longstanding" authority, *id*. at 352; and Justice Scalia also was in the minority in *Aguilar* — his opinion was joined by only two other justices, *Aguilar*, 515 U.S. at 609 (Scalia, J., concurring in part and dissenting in part). No majority of the Supreme Court has adopted the "expectation-of-benefit" requirement when defining "corruptly" in an obstruction case.

In actuality, the expectation-of-benefit requirement is not "longstanding" at all in the context of obstruction statutes: Instead, its use has been almost exclusively confined to bribery and tax law. *See Fischer*, 64 F.4th at 381 (Katsas, J., dissenting) ("The concurrence's approach thus requires transplanting into section 1512(c)(2) an interpretation of *corruptly* that appears to have been used so far only in tax law." (emphasis in original)); *see also United States v. Lonich*, 23 F.4th 881, 902–03 (9th Cir. 2022) (noting similar interpretation in bribery statutes); *United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) ("[T]here is a consensus among the courts of appeals

29

that 'corruptly,' as used in section 7212(a) [prohibiting obstruction of the administration of the tax code], means acting with an intent to procure an unlawful benefit either for the actor or for some other person."). Thus, the purportedly "longstanding" definition of "corruptly" would come as a surprise to every sister circuit to previously consider the meaning of that term in § 1512(c)(2).  *See United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016); *United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021); *Lonich*, 23 F.4th at 906; *United States v. Ahrensfield*, 698 F.3d 1310, 1324–25 (10th Cir. 2012); *United States v. Gordon*, 710 F.3d 1124, 1148–49 (10th Cir. 2013); *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *see also Matthews*, 505 F.3d at 705 (interpreting "corruptly" in § 1512(c)(1)).  Even the Tenth Circuit, which recognized the benefit-focused definition in a case involving a different obstruction statute, *Ogle*, 613 F.2d at 238, has approved definitions of "corruptly" without the benefit requirement in later cases  *See United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009) (interpreting § 1503); *see also Ahrensfield*, 698 F.3d at 1325 (interpreting § 1512(c)(2)); *Gordon*, 710 F.3d at 1148 (interpreting § 1512(c)(2)).  We see no basis to create a split with those circuits, particularly on sufficiency review when the culpability of Robertson's conduct is obvious.[8]

---

[8]    The dissent erroneously asserts that our interpretation is in "outright conflict" with some of the cited authorities from other jurisdictions.  Dissenting Op. 19 n.10.  The dissent notes that none of those authorities adopts an "independently unlawful means" requirement.  *Id.*  Nor do we impose such a requirement.  Instead, we recognize that proof of independently unlawful means can *suffice* to establish "corrupt" intent or action.  By the same token, in cases charging that conduct was corrupt because it was dishonest, proof of

30

The *Fischer* concurrence argued that its narrow view of "corruptly" must be exclusive to "ensure[] that [§ 1512(c)(2)] does not have a breathtaking scope." *Fischer*, 64 F.4th at 352, 360–61, 362 n.10 (Walker, J., concurring in part and concurring in the judgment); *see also* Opening Br. 15–16; Reply Br. 8–9. But, as discussed, the "corruptly" element works to separate culpable conduct from innocent behavior, even without the additional requirement advocated by the *Fischer* concurrence. *See supra* Section II.A.2. The element of "corrupt" intent or action, as we construe it, protects the right of peaceful advocacy and protest — *i.e.*, the legitimate efforts of lobbyists and protestors to influence policymaking or to express political views do not fit the ordinary meaning of "corruptly." *See North*, 910 F.2d at 882. That is so even in the case of protestors who passionately, but lawfully, voice displeasure, suspicion, or outrage over election results. In any event, the potential breadth of a statute is not alone a reason to depart from its ordinary meaning. Even Justice Scalia's partial dissent in *Aguilar*, on which Robertson and the *Fischer* concurrence both rely, opposed "importing extratextual requirements *in order to limit the reach* of a federal criminal statute." *Aguilar*, 515 U.S at 612 (Scalia, J., concurring in part and dissenting in part) (emphasis in original).

We note, too, that concerns about constraining lobbying and advocacy are not implicated in January 6 cases because the electoral-vote certification by Congress is not a policymaking exercise open to "political jousting," *see North*, 910 F.2d at 882. Instead, it is a constitutionally scripted transition of presidential power, with an outcome determined by the results of a presidential election. *Fischer*, 64 F.4th at 342-43; 3 U.S.C.

---

dishonesty can also suffice. The cited authorities are consistent with our view that there are many ways to prove "corruptly." *See supra* Section II.A.2.

31

§ 15 (2018), *amended by* 136 Stat. 4459, 5238 (2022). The purpose of the proceeding is to present and count the "certificates of the electoral votes" duly submitted by each state. 3 U.S.C. § 15 (2018), *amended by* 136 Stat. 4459, 5238 (2022). After the votes are "ascertained and counted," the Vice President, as President of the Senate, "announce[s] the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States." *Id.* Although members of Congress may object to a state's certificates, *see id.*, Robertson does not argue that his conduct on January 6, 2021, was a peaceful effort to convince members of Congress to raise objections to the vote certification.

The interpretations of "corruptly" posited by Robertson and the *Fischer* concurrence appear to confuse sufficiency with necessity: Their proposed definitions of "corruptly" may be sufficient to prove corrupt intent, but neither dishonesty nor seeking a benefit for oneself or another is necessary to demonstrate "wrongful, immoral, depraved, or evil" behavior within the meaning of § 1512(c). *See supra* Section II.A.2 (explaining that corrupt intent may be proved in many ways). Acting "dishonestly" would be consistent with the ordinary meaning of acting "corruptly." *See United States v. Richardson*, 676 F.3d 491, 507–08 (5th Cir. 2012). Likewise, a defendant's obstructive conduct may often seek to secure an unlawful benefit for himself or another, such as preventing negative testimony at a trial. *See United States v. Edlind*, 887 F.3d 166, 172–76 (4th Cir. 2018). But Robertson has not persuaded us that all the courts that have heretofore defined "corruptly" without the "benefit" element — *i.e.*, in virtually all previous cases not involving bribery or tax offenses — were wrong.

32

For all the foregoing reasons, we decline to adopt the limited constructions of "corruptly" proffered by Robertson and the *Fischer* concurrence, which each insist that the broad concept of "corrupt" intent *must* be proved in *only* one way. To the extent that Robertson seeks reversal of his conviction under § 1512(c)(2), we also note that the *Fischer* concurrence does not appear to help him. Although the *Fischer* concurrence favored a definition of "corruptly" that required proof of the defendant's intent to procure a benefit for himself or another, it applied that standard to support the prosecution of January 6 defendants who, like Robertson, "used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump)." *Fischer*, 64 F.4th at 361 (Walker, J., concurring in part and concurring in the judgment).

**6.**

We respectfully disagree with our dissenting colleague, who asserts that the record evidence was insufficient to support Robertson's conviction under § 1512(c)(2) and that Judge Walker's concurrence in *United States v. Fischer* is binding on us. *See* 64 F.4 351 (Walker, J., concurring in part and concurring in the judgment).

**i.**

The dissent contends that the concurring opinion in *Fischer* is binding precedent that we must follow. *See* Dissenting Op. 1, 12–14. That contention is based on the erroneous belief that "[t]he definition of 'corruptly' endorsed by Judge Walker . . . was necessary to create a holding." *Id.* at 13. The only holding in *Fischer* was the majority's ruling reversing the district court's erroneous interpretation of a different part of the statute — the "otherwise obstructs" clause.

33

In *Fischer*, we reversed the district court's decision to dismiss the § 1512(c)(2) charges in the defendants' indictments and remanded the cases for further proceedings. 64 F.4th at 350. The district court's dismissal order was narrow: It rested solely on the conclusion that § 1512(c)(2) "requires that the defendant have taken some action with respect to a document, record, or other object." *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022). We disagreed, holding that "otherwise . . . obstruct[ing], influenc[ing] or imped[ing]" an official proceeding under § 1512(c)(2) covers "all forms of corrupt obstruction of an official proceeding." *Fischer*, 64 F.4th at 336. We also determined that the certification of the Electoral College vote by Congress is an "official proceeding" under the statute. *Id.* at 342–43. We did not resolve the question at issue in this case: How to define and apply "corruptly" within the meaning of the statute.

The district court in *Fischer* had expressly declined to address the meaning of "corruptly" in § 1512(c)(2). *United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022). Thus, the briefing in the *Fischer* appeal considered the role of "corruptly" only as context for interpreting the words "otherwise . . . obstructs, influences, or impedes," which was the issue before us. In arguing for a broader interpretation of "otherwise obstructs," the government asserted that the statute's reach was constrained by the "corruptly" element, which requires proof that the defendant "intended to obstruct" an official proceeding, took actions "the natural and probable effect of which" was to obstruct, and did so "with a corrupt purpose or through independently corrupt means, or both." U.S. Br. 50–51, *Fischer*, 64 F.4th 329 (22-3038) (cleaned up). The defendants responded that the term "corruptly" is unconstitutionally vague, Appellee Br. 32–36, *Fischer*, 64 F.4th 329 (22-3038), so would not cure "the uncertainty surrounding which acts are criminal," *id.* at

34

36.  Thus, the parties only tangentially addressed the meaning of "corruptly" in their briefs.

Our holding in *Fischer* was that the district court erroneously dismissed the defendants' § 1512(c)(2) counts based on its interpretation of "otherwise obstructs"; we did not decide whether the § 1512(c)(2) charge was otherwise properly pled, including as to the "corruptly" element.  A holding of error as to a district court's sole ground for dismissing an indictment does not affirmatively establish the indictment's validity in all other respects.  *Cf.* Dissenting Op. 13 n.8. Rather, our conclusion that the district court erred in its interpretation of "otherwise obstructs" left room for the defendants to raise other challenges to the statute on remand — including any claims regarding "corruptly."  Nothing in the *Fischer* opinion prevented the district court from entertaining such a claim on remand.

Robertson and the government agree that the three separate opinions in *Fischer* produced no holding on the meaning of "corruptly."  Def.'s Suppl. Br. 1; Gov't's Suppl. Br. 1.  The lead *Fischer* opinion saw no need to settle on a statutory interpretation of that term, 64 F.4th at 339–42, nor did Judge Katsas in dissent, *id*. at 382.  Only Judge Walker, concurring in part and concurring in the judgment, presented his view of how "corruptly" in § 1512(c)(2) should be defined. His discussion on that point was dicta.

Judge Walker agreed with Judge Pan that the district court erred in dismissing the indictments for failure to sufficiently allege that the defendants "otherwise . . . obstruct[ed], influence[d] or impede[d]" an official proceeding.  He noted that, "[i]f proven at trial, the Defendants' efforts to stop Congress from certifying the results of the 2020 presidential election are the kind of 'obstructive conduct' proscribed by

(c)(2)." 64 F.4th at 351 (Walker, J., concurring in the lead opinion's interpretation of "otherwise obstructs" in § 1512(c)(2) and concurring in the judgment) (cleaned up). He went on to explain his view that the statutory requirement that obstruction be undertaken "corruptly" requires proof that the defendant acted "with an intent to procure an unlawful benefit either for himself or for some other person." *Id*. at 352 (quoting *Marinello*, 138 S. Ct. at 1114 (Thomas, J., dissenting)).

Judge Walker suggested that his interpretation of "corruptly" might be binding on the court, emphasizing its importance to him in his decision to embrace the broader reading of "otherwise obstructs." *Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring in part and concurring in the judgment). Although Judge Walker was free to forecast in his concurrence how he would interpret "corruptly" in an appeal requiring that it be resolved, the role his interpretation played in his own thinking did not make it precedent that is binding on this court. *See Doe v. Fed. Democratic Republic of Ethiopia*, 851 F.3d 7, 10 (D.C. Cir. 2017) ("[B]inding circuit law comes only from the holdings of a prior panel, not from its dicta." (cleaned up)).

In any event, even if we assume, *arguendo*, that *Fischer* included a holding about "corruptly," any such holding was limited to a conclusion that the "corruptly" element was adequately alleged. Two members of the panel agreed on that outcome but relied on different reasoning — a way to resolve an appeal that is not unusual. *See*, *e.g.*, *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1246 (D.C. Cir. 2018) (Henderson, J., concurring) ("I do not join the portion of the opinion that identifies alternative avenues by which the plaintiffs might press their claim. . . . I would leave it up to a

36

future court to decide whether the alternatives discussed are sufficient to pursue the claim we reject in this appeal.").

The lead opinion in *Fischer* determined that the facts alleged in the indictments were *sufficient* to support any definition of "corruptly," but did not adopt a definition, *i.e.*, the opinion did not state what was *necessary* to prove corrupt intent. *See* 64 F.4th at 339–41 (opinion of Pan, J.); *id.* at 340 ("[T]he sufficiency of the indictments in this case does not turn on the precise definition of 'corruptly.'"). By contrast, Judge Walker opined in his concurrence that it was *necessary* to prove that a defendant intended to procure an unlawful benefit to establish corrupt intent, and that the allegations in the indictments satisfied that requirement. *Id.* at 361–62 & 362 n.10 (Walker, J., concurring in part and concurring in the judgment). Thus, in reversing the judgment of the trial court dismissing the indictments, both Judge Pan and Judge Walker agreed that the "corruptly" element — as well as the "otherwise obstructs" element — was adequately alleged. Contrary to the dissent's analysis, it was not necessary for Judge Pan and Judge Walker to adopt the same reasoning about the definition of "corruptly" to conclude that the element was met. Although the dissent emphasizes that "Judge Walker conditioned his vote on one definition — the one he called the 'long-standing meaning' of 'corruptly,'" Dissenting Op. 12, Judge Walker's statement did not, and could not, change Judge Pan's view of the "corruptly" requirement, which was plainly different from his.

Our dissenting colleague asserts that Judge Walker's reasoning was the narrowest holding of *Fischer* and therefore is binding. Dissenting Op. 14 n.9. That characterization is inapt because, as we have explained, there was no "holding" about "corruptly" in *Fischer*. Moreover, the dissent's logic is drawn from the Supreme Court's *Marks* rule, which this court

37

has never adopted for the purpose of determining its own holdings. *See Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.) (discussing *Marks v. United States*, 430 U.S. 188 (1977)).

In any event, even under *Marks*, the narrowest holding must be the lowest common denominator, or a "subset," of any broader opinion's reasoning:    In that circumstance, the narrower "subset" commands the majority needed to bind the court and therefore can be characterized as a "holding." *Cf. King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) (Silberman, J., concurring) ("*Marks* is workable — one opinion can be meaningfully regarded as 'narrower' than another — only when one opinion is a logical subset of other, broader opinions.").    In *Fischer*, where the lead opinion reasoned that proof of options A, B, *or* C would be *sufficient* to establish "corrupt" intent, *Fischer*, 64 F.4th at 339–41 (opinion of Pan, J.), and the concurrence stated that option C is *necessary* to prove "corruptly," *id.* at 352, 361–362 (Walker, J., concurring in part and concurring in the judgment), the concurrence is not a subset of the lead opinion — the two opinions rely on rationales that do not overlap.[9]    Judge Pan's acceptance of C as sufficient but not necessary — *i.e.*, that C need not be proved in every case — conflicts with Judge Walker's insistence that C is invariably required.    Thus, neither

---

[9]    By contrast, if the lead opinion had said that options A, B, *and* C are *necessary* to prove "corruptly," and the concurrence had said *only* that C is *necessary*, then the concurrence would be a logical subset of the lead opinion.    Under such circumstances, a defendant's claim that a jury instruction was inadequate for failing to require proof of C would support reversal because two judges agreed that C was necessary.    By contrast, if a defendant objected to instructions failing to require A, there would be no binding law because only the lead opinion reached such a conclusion.

38

opinion is narrower than the other.[10]  The *Fischer* concurrence is not a "holding" but instead reflects the opinion of a single judge.

**ii.**

The dissent claims that we are bound by Judge Walker's view that "corruptly" in § 1512(c)(2) requires the defendant to act with the intent of obtaining an unlawful benefit for himself or another.  *See* Dissenting Op. 8–15.  But in applying that standard, Judge Walker reasoned that the indictments at issue in *Fischer* should be upheld, stating that "it might be enough for the Government to prove that a defendant used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump)."  *Fischer*, 64 F.4th at 361 (Walker, J., concurring in part and concurring in the judgment).  The dissent does not explain why that reasoning, in an opinion that the dissent believes is binding, does not dictate affirmance in this case.

Instead, the dissent contends that we must overturn the jury's verdict in this case because "[t]here is no evidence in the record suggesting Robertson obstructed the election certification proceeding in order to obtain an unlawful benefit for himself or someone else."  Dissenting Op. 33.  That is incorrect.  Robertson believed that the election was "rigged"; announced that he refused to be "disenfranchised"; and declared that he was "prepared to start" an "open armed

---

[10]    The dissent posits that "[a]nother way of phrasing Judge Walker's conclusion that *C* is necessary is to say that *only C* is sufficient," and that phrasing "yields a logical subset."  Dissenting Op. 14 n.9.  The dissent's formulation makes little sense because "necessary" and "sufficient" mean different things.  There is no way to make Judge Walker's opinion a subset of Judge Pan's opinion because Judge Pan did not agree with him that C is necessary.

39

rebellion." S.A. 110, 190. That evidence was plainly sufficient to support a finding that Robertson intended to secure the unlawful benefit of installing the loser of the presidential election, Donald J. Trump, as its winner. *See Fischer*, 64 F.4th at 361 (Walker, J., concurring in part and concurring in the judgment); *see also id.* at 356 n.5 (reasoning that "the beneficiary of an unlawful benefit need not be the defendant or his friends" and § 1512(c)(2) could apply to a defendant "trying to secure the presidency for Donald Trump").

To shore up its assessment of the evidence, the dissent states in a footnote that "[t]he 'unlawful benefit' the defendant seeks must be financial, professional or exculpatory." Dissenting Op. 34 n.18. But Judge Walker's concurring decision in *Fischer*, which the dissent believes is binding, *see id*. at 1, did not endorse such a limited definition. *See Fischer*, 64 F.4th at 356 n.5 (Walker, J., concurring in part and concurring in the judgment). And Judge Walker himself emphasized that, even were the requisite "benefit" so limited, the defendants' conduct "may have been an attempt to help Donald Trump unlawfully secure a professional advantage — the presidency," so would likely suffice. *Id.* The dissent's position, in any event, ignores the fact that it can be "corrupt" to obstruct an official proceeding for the purpose of gaining a personal, social, or political favor. *See United States v. Brenson*, 104 F.3d 1267, 1273–81 (11th Cir. 1997) (affirming defendant's conviction under 18 U.S.C. § 1503 where he disclosed details of a grand jury investigation to its target in order to get a date with the target's daughter).

**iii.**

In explaining their adoption of the expectation-of-benefit formulation of "corruptly," the dissent and the *Fischer* concurrence rely on bribery and tax law as asserted foundations

40

of the expectation-of-benefit requirement. *See* 64 F.4th at 352–56 (Walker, J., concurring in part and concurring in the judgment); Dissenting Op. 15–19. But both of those types of cases are poor comparators. For a bribe to be a bribe and not merely a payment, there must be some sort of *quid pro quo*, *i.e.*, an agreement by a public official to perform an official act to benefit the payee. *See McDonnell v. United States*, 579 U.S. 550, 562–63 (2016); *United States v. Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996); *Lonich*, 23 F.4th at 902–07. Likewise, it is difficult to "imagine a scenario where a taxpayer would 'willfully' violate the Tax Code (the *mens rea* requirement of various tax crimes, including misdemeanors) without intending someone to obtain an unlawful advantage." *Marinello*, 138 S. Ct. at 1108. Thus, in bribery and tax cases, the expectation of a benefit is inherent in the crime in a way that it is not in the obstruction context. Unlike in tax and bribery cases, there are many corrupt ways or reasons for a defendant to obstruct an official proceeding that do not involve seeking to obtain an unlawful advantage for himself or another. Moreover, for a person who attempts to influence a congressional proceeding, the intent to procure a benefit — *e.g.*, a change of policy — may be entirely lawful. Thus, requiring proof of a benefit would not protect the innocent lobbying or advocacy that concerns the dissent. We therefore see no apparent reason to import the expectation-of-benefit requirement into the obstruction context, and we discern no justification for making such a requirement the exclusive way to prove corrupt intent.

We also reject the assertion by the dissent and the *Fischer* concurrence that the common-law history of bribery determines the meaning of "corruptly" in this obstruction statute. Our court has previously traced the historical provenance of a related obstruction statute, 18 U.S.C. § 1505, to an 1831 contempt statute that punished attempts to "corruptly, or by threats or force, endeavour to influence,

41

intimidate, or impede any juror, witness, or officer" or to "corruptly, or by threats or force, obstruct, or impede, or endeavour to obstruct or impede, the due administration of justice." Act of Mar. 2, 1831, ch. 98, § 2, 4 Stat. 487, 488; *see Poindexter*, 951 F.2d at 380 (citing Walter Nelles & Carol Weiss King, *Contempt by Publication in the United States*, 28 Colum. L. Rev. 401, 430–31 (1928)); *see also* Felix Frankfurter, *Power of Congress over Procedure in Criminal Contempts in 'Inferior' Federal Courts — A Study in Separation of Powers*, 37 Harv. L. Rev. 1010, 1026–27 n.75 (1924) (recounting legislative history of Act of Mar. 2, 1831).

That predecessor contempt statute does not include any mention of a required intent to procure a benefit. Moreover, courts interpreting a later version of that provision, which incorporated similar statutory language, have held that the word "corruptly" is "capable of different meanings in different connections," and that requiring that obstruction be accompanied by a promise of payment would "quite unreasonably restrict the obvious purpose of the legislation." *See Bosselman v. United States*, 239 F. 82, 86 (2d Cir. 1917) ("As used in this particular [contempt] statute, we think any endeavor to impede and obstruct the due administration of justice in the inquiries specified is corrupt."); *see also United States v. Polakoff*, 121 F.2d 333, 334 (2d Cir. 1941) ("Exact precedents appear to be lacking, but the decisions under the [contempt] statute are illuminating in their unwillingness to limit the court's protection from improper obstructions."); *id.* at 335 (discussing *Bosselman*). Neither the dissent nor the *Fischer* concurrence address contempt statutes in the history that they recount.

The dissent raises three additional objections to our holding that a defendant obstructs "corruptly" when he does so by independently felonious means. First, the dissent reiterates

42

concerns expressed by the *Fischer* dissent that relying on independently unlawful means to prove "corruptly" could inappropriately "supercharge a range of minor advocacy, lobbying, and protest offenses into 20-year felonies." Dissenting Op. 30, 32 (quoting *Fischer*, 64 F.4th at 380 (Katsas, J., dissenting)).  But that is not so:  Obstruction of Congress by corrupt means is a distinct harm from that associated with the unlawful means used to carry out the obstruction.  In any event, prosecutions seeking to demonstrate that a defendant "corruptly" obstructed a proceeding by relying on proof that the defendant's means were misdemeanors or otherwise unlawful are not before us and should be addressed when they arise.  *See supra* Section II.A.4.

Second, the dissent complains that our opinion responds to such concerns by "imposing a limitation plucked from thin air," *i.e.*, that we "suggest[] that the 'unlawful-means' requirement is satisfied only when a defendant acts through 'independently *felonious* means.'"    Dissenting  Op.  30 (emphasis in original). The dissent is again mistaken.  In holding that felonious means are *sufficient* to establish "corrupt" behavior, we do not suggest that they are always *necessary* to prove the "corruptly" element.

Third, and finally, the dissent contends that our reading of "corruptly" "strip[s] the word of any independent meaning." Dissenting Op. 24.  That, too, is wrong.  The requirement that a defendant act via corrupt means or corrupt purpose plays the crucial role of ensuring that § 1512(c)(2) does not penalize innocent efforts to obstruct an official proceeding, including by engaging in constitutionally protected expression.  *See supra* Section II.A.2.

For all the foregoing reasons, we respectfully disagree with our dissenting colleague.

43

**B.**

Robertson challenges his sentence, arguing that the district court erroneously applied an 11-point increase to his offense level based on the specific offense characteristics in U.S.S.G. § 2J1.2(b)(1)(B) and (b)(2).  Section 2J1.2 sets forth the base offense level and enhancements for obstruction-of-justice crimes.  Subsection (b)(1)(B) instructs that an eight-level increase applies "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," *id.* § 2J1.2(b)(1)(B); and subsection (b)(2) provides that a three-level increase is appropriate "[i]f the offense resulted in substantial interference with the administration of justice," *id.* § 2J1.2(b)(2).

In Robertson's view, his conduct does not fall within either subsection (b)(1)(B) or (b)(2) because Congress's certification of the Electoral College vote does not implicate the "administration of justice."  Instead, he asserts, "administration of justice" refers only to judicial or quasi-judicial proceedings and related investigations, relying primarily on a district court decision issued after his sentencing.  *See* Opening Br. 24–28 (citing *United States v. Seefried*, 639 F. Supp. 3d 8, 11-19 (D.D.C. 2022)).

Although Robertson objected to the application of subsections (b)(1)(B) and (b)(2) in the district court, he never argued that Congress's certification of the election was not an "administration of justice."[11]  We therefore review Robertson's

---

[11]    Specifically, Robertson's sentencing memorandum argued only that the offense characteristics did not apply because "at no time did [he] cause or threaten physical injury to a person or property," and because he "did nothing that increased the resources" expended by

44

claims for plain error. *See United States v. Hunter*, 809 F.3d 677, 681 (D.C. Cir. 2016); *United States v. Gewin*, 759 F.3d 72, 78–79 (D.C. Cir. 2014). Under that standard, Robertson bears the burden of showing "(1) that there was an error, (2) that the error was clear or obvious, (3) that it affected [his] substantial rights, and (4) that it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gooch*, 665 F.3d 1318, 1332 (D.C. Cir. 2012); *accord Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021); *United States v. Olano*, 507 U.S. 725, 732–35 (1993).

Robertson's argument fails to clear the second hurdle: We need not even decide whether the district court erred to conclude that it is far from clear or obvious that it did so. First, the ordinary meaning of "administration of justice" does not necessarily exclude Congress's certification of the Electoral College vote under 3 U.S.C. § 15. The term "justice" is defined as the "fair and proper administration of laws," which may pertain to the administration of laws by a legislative body. *Justice*, Black's Law Dictionary (7th ed. 1999); *see also Contempt*, Black's Law Dictionary (7th ed. 1999) (explaining that contempt of a "legislature" impairs the "administration of justice"). Moreover, Robertson cites no binding authority limiting the administration of justice to judicial or quasi-judicial proceedings. Thus, we cannot conclude that the district court clearly or obviously erred when it found that Robertson's obstruction of the Electoral College vote also obstructed and interfered with the "administration of justice." In short, Robertson fails to meet his burden to demonstrate that the

---

the government. S.A. 54–55. Likewise, at the sentencing hearing, his counsel repeated that "the enhancement does not apply when the government fails to identify any expenses in addition to the costs of bringing the defendant to trial" and that "if we take the definition of what 'substantial interference' means, that doesn't apply here at all." *Id.* at 212, 214.

45

district court plainly erred when it determined that the specific offense characteristics in U.S.S.G. § 2J1.2 (b)(1)(B) and (b)(2) apply to his conduct. *See Greer*, 141 S. Ct. at 2097.

*     *     *

For the reasons discussed, we affirm the judgment of the district court. The evidence at trial was sufficient to support a finding that Robertson acted "corruptly" under 18 U.S.C. § 1512(c)(2) by engaging in independently felonious conduct to obstruct the certification of the Electoral College vote. Moreover, the district court did not plainly err when it increased Robertson's sentencing range under the Sentencing Guidelines based on findings that he obstructed or interfered with the administration of justice.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting:

> The best laws should be constructed as to leave
> as little as possible to the decision of the judge.
>
> Aristotle[*]

It is not every day that a criminal appeal gives the court a "multiple choice" of grounds on which to vacate a conviction. I believe that Thomas Robertson's appeal has done so. For me, the simplest ground for vacatur can be described as "done and dusted" because our court already decided the issue *sub judice* in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). My colleagues stray from that precedent and I cannot join them. Even if *Fischer* did not bind us, the majority's formulation of the requisite *mens rea*—"corruptly" defined as having an "unlawful" purpose or acting through "unlawful" means— makes the commission of *any* crime "corrupt" because any crime requires the use of unlawful means or an unlawful purpose or both. Perhaps in attempting to define "corruptly," we are "faced with the task of trying to define what may be indefinable," as Supreme Court Justice Potter Stewart once observed regarding a different criminal statute. *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). But as Mr. Justice Stewart also noted (regarding pornography), *see id.*, I know what "corruptly" does *not* mean. It does not mean what the majority says it does. Accordingly, I respectfully dissent.

## I.   BACKGROUND

Every four years, state-appointed "Electors," equal to the total number of Senators and Representatives for each state, "vote by Ballot" for the President and the Vice President of the

---

[*]   *Rhetoric*, bk. I, ch. 1 (*as reprinted in The Quotable Lawyer* 165 (David Shrager & Elizabeth Frost eds., 1986)).

2

United States. U.S. Const. art. II, § 1. After voting in their respective states, the electors sign, seal and forward their votes to the President of the Senate. The President of the Senate, "in the presence of the Senate and House of Representatives," then counts the votes. *Id.* amend. XII. "The person having the greatest number of votes for President, shall be the President . . . ." *Id.* The certification proceeding occurs "on the sixth day of January" following the presidential election. 3 U.S.C. § 15.

On January 6, 2021, as the certification of the electoral vote progressed, hundreds of people made their way past law enforcement and into the United States Capitol building to protest the certification.[1] Some of them assaulted police officers and damaged property, halting the certification proceeding for nearly six hours.

Thomas Robertson was among the protesters who entered the Capitol. He was then a patrol sergeant in the Rocky Mount (Virginia) Police Department. According to the record, he believed that the 2020 presidential election had been "rigged." Suppl. App. 110. Robertson and two other men—a neighbor and a fellow police officer, Jacob Fracker—drove together to Washington, D.C., on January 6, 2021. They carried with them water, food, three gas masks and a large wooden stick. Both Robertson and Fracker brought their department-issued handguns but, at Robertson's suggestion, left them in Robertson's car at a northern Virginia Metro station.

Upon arriving in D.C., Robertson, Fracker and Robertson's neighbor headed to the Washington Monument, where they listened to speeches by then-President Donald Trump, among others. The three men then walked with a "big

---

[1] The following description of the facts is drawn from the trial record.

3

crowd" toward the Capitol building. Suppl. App. 120. By the time they arrived, the crowd was "pretty out of hand." There was "yelling, screaming, [and] people . . . throwing things," including "flash bangs [and] smoke grenades." *Id.* at 121. Capitol Police were "overwhelm[ed]" by the rioters, *id.*, and "severely outnumbered," *id.* at 67. Fearing the Capitol Police's use of pepper spray or tear gas, Robertson and the other two donned their gas masks.

Not long after, Metropolitan Police Department (MPD) officers arrived to reinforce the Capitol Police. One group of MPD officers, known as unit CDU-42, walked in two single-file lines toward the Capitol building, passing through protesters who were holding "large sticks" and "[t]hrowing cement." Suppl. App. 93–95. When the MPD officers approached his position, Robertson stood in their path, holding his wooden stick in the "[p]ort arms" position.[2] *Id.* at 103. One MPD officer testified that Robertson used the wooden stick to strike another officer before taking a "swipe[]" at the testifying officer. *Id.*

Robertson and Fracker then entered the Capitol. While inside, they posed for pictures in the Capitol Crypt (the room directly beneath the Capitol Rotunda), where they remained for about ten minutes. As police observed them from across the room, the crowd began chanting and Robertson banged his wooden stick to the chant. Eventually, law enforcement officers regained control of the area and directed Robertson and Fracker to leave, which they did. Following January 6th, Robertson made a number of social media posts, including one with a photograph of him and Fracker in the Capitol Crypt, expressing his pride in having protested.

---

[2] "Port arms" is a "tactical position" in which a baton or stick may be used "both offensively and defensively." Suppl. App. 85.

4

After the FBI contacted Robertson and Fracker and told them to turn themselves in, Robertson asked Fracker for Fracker's cell phone. Fracker understood that Robertson intended to "make it disappear." Suppl. App. 169–70. When Robertson was arrested on January 13, 2021, he did not have a cell phone on his person. An FBI search of his house the following week discovered a cell phone that had been activated on January 14, 2021—one day after Robertson's arrest. In a text message exchange the day after he activated the phone, Robertson told a correspondent that "[a]nything that may have been problematic is destroyed." *Id.* at 196.

On March 23, 2022, Robertson was charged in a second superseding indictment with six counts based on his January 6th-related conduct. Five of the counts charged: (1) civil disorder; (2) entering and remaining in a restricted building while carrying a dangerous weapon; (3) disorderly conduct in a restricted building while carrying a dangerous weapon; (4) disorderly conduct in the Capitol building; and (5) destroying cell phones with the intent to render them unavailable for a grand jury investigation.

The sixth count forms the basis of Robertson's appeal. It charged Robertson with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2). Section 1512(c) reads in full:

> Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

5

> (2) otherwise obstructs, influences, or
> impedes any official proceeding, or attempts
> to do so,

> shall be fined under this title or imprisoned not
> more than 20 years, or both.

Before trial, Robertson moved to dismiss the subsection (c)(2) count. Robertson argued *inter alia* that the *mens rea* adverb "corruptly" rendered subsection (c)(2) unconstitutionally vague, both on its face and as applied to him. The district court denied Robertson's facial vagueness challenge, concluding that, notwithstanding that there "may be scenarios at the edges that present vagueness problems," the statute sufficiently specified the "'core' behavior to which it constitutionally applies." *United States v. Robertson*, 588 F. Supp. 3d 114, 123 (D.D.C. 2022) (quotation omitted). The court likewise rejected Robertson's as-applied challenge, concluding that the allegations in the indictment sufficed for a jury to conclude Robertson acted "corruptly." *Id.* at 123–24.

The jury charge defined "corruptly" as used in section 1512(c)(2) as follows:

> To act corruptly the defendant must use
> unlawful means, or act with an unlawful
> purpose, or both. The defendant must also act
> with consciousness of wrongdoing.
> Consciousness of wrongdoing means with an
> understanding or awareness that what the
> person is doing is wrong.

> Not all attempts to obstruct or impede an official
> proceeding involve acting corruptly. For
> example, a witness in a court proceeding may
> refuse to testify by invoking his constitutional

6

> privilege against self-incrimination, thereby
> obstructing or impeding the proceeding. But he
> does not act corruptly.
>
> In contrast, an individual who obstructs or
> impedes a court proceeding by bribing a witness
> to refuse to testify in that proceeding or by
> engaging in other independently unlawful
> conduct does act corruptly.

Suppl. App. 203.

The jury convicted Robertson on all counts. After trial,
Robertson moved for a judgment of acquittal under Rule 29 of
the Federal Rules of Criminal Procedure.[3] Robertson argued
that, in order to prove he acted "corruptly," the Government
was required to show that he acted "knowingly and dishonestly
with the intent to obtain an unlawful advantage for himself or
an associate, and that he influenced another to violate their
legal duty." App. 38. Robertson argued that the Government
failed to meet that burden, relying instead on his "mere
presence" inside the Capitol to establish that he acted
"corruptly." *Id.* at 39.

The district court denied Robertson's motion, holding that
section 1512(c)(2) is "properly narrowed" by the requirement
that the Government prove Robertson acted with
"consciousness of wrongdoing," *United States v. Robertson*,
610 F. Supp. 3d 229, 233 (D.D.C. 2022) (quoting *Robertson*,
588 F. Supp. 3d at 123), and concluding that the evidence

---

[3] *See* Fed. R. Crim. P. 29(a) ("[T]he court on the defendant's
motion must enter a judgment of acquittal of any offense for which
the evidence is insufficient to sustain a conviction.").

7

"comfortably support[ed] the jury's verdict on each element," *id.* at 235.

Robertson was sentenced to eighty-seven months' imprisonment followed by three years of supervised release. He timely appealed.

## II.  ANALYSIS

Robertson appeals the denial of his motion for judgment of acquittal and seeks vacatur of his section 1512(c)(2) conviction because the Government's evidence was insufficient to show that he acted "corruptly."

Reviewing a sufficiency-of-the-evidence challenge, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). Our sufficiency review "'does not rest on how the jury was instructed' but rather on how a properly instructed jury would assess the evidence." *United States v. Hillie*, 14 F.4th 677, 682 (D.C. Cir. 2021) (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016); *see also United States v. Khatallah*, 41 F.4th 608, 634 (D.C. Cir. 2022) (per curiam) (acquittal motion "tests sufficiency against 'how a properly instructed jury would assess the evidence,' not on 'how the jury was instructed'" (quoting *Hillie*, 14 F.4th at 682)). The reason for this standard is simple: "To allow a conviction to stand where the defendant's conduct 'fails to come within the statutory definition of the crime,' or despite insufficient evidence to support it, would violate the Due Process Clause." *Hillie*, 14 F.4th at 683 (quoting *Griffin v. United States*, 502 U.S. 46, 59 (1991)). Even where, as here, the defendant fails to object to the definition of the offense used in the jury charge, his conviction must be set aside if the

8

prosecution failed to produce sufficient evidence of one or more elements of the properly formulated offense. *See id.* ("A defendant does not 'waive' his rights . . . by failing to present the correct interpretation of the offense to the district court."); *cf. Boyle v. United Techs. Corp.*, 487 U.S. 500, 513–14 (1988) ("If the evidence presented in the . . . trial would not suffice, as a matter of law, to support a jury verdict under the properly formulated defense, judgment could properly be entered for the [defendant] at once, without a new trial. And that is so even though . . . [the defendant] failed to object to jury instructions that expressed the defense differently, and in a fashion that would support a verdict.").

## A. *United States v. Fischer*

To assess whether a properly instructed jury could have found the essential elements of the offense beyond a reasonable doubt, the court must first determine what the essential elements of the properly formulated offense in fact are. Robertson's appeal involves only one of section 1512(c)'s elements: the requirement that the defendant obstruct an official proceeding "corruptly." 18 U.S.C. § 1512(c). As noted *supra*, *United States v. Fischer* defined "corruptly" and we are required to apply its definition. 64 F.4th 329.[4]

The three *Fischer* defendants were indicted on various offenses arising from their participation in the January 6, 2021, Capitol protest. *Id.* at 332. Of relevance here, each was charged with one count of Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2). *Fischer*, 64 F.4th at 333. Each subsequently moved to dismiss the section 1512(c)(2) count. *Id.* at 333–34. The district court granted each defendant's

---

[4] Although Robertson concedes that *Fischer* does not bind us, the precedential effect of an earlier decision is a matter for the court, not the parties, to decide.

9

motion to dismiss. *Id.* at 334. The court first concluded that section 1512(c) is ambiguous regarding subsection (c)(2)'s relation to subsection (c)(1). The court explained that (c)(2) could be read as prohibiting *any* act that obstructs an official proceeding or as prohibiting only obstructive acts similar to those covered by (c)(1).[5] *See United States v. Miller*, 589 F. Supp. 3d 60, 67–68, 70–71 (D.D.C. 2022). The court chose the latter reading, in part because the former would render superfluous both subsection (c)(1) as well as (c)(2)'s use of the word "otherwise." *Id.* at 68, 70. It concluded that (c)(2) "requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id.* at 78. Because the indictments did not allege that the defendants committed obstructive acts in conjunction with "a document, record, or other object," *see* 18 U.S.C. § 1512(c)(1), the court dismissed the section 1512(c)(2) counts. *Miller*, 589 F. Supp. 3d at 78; *see United States v. Fischer*, No. 1:21-cr-234, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) (relying on *Miller* to dismiss section 1512(c)(2) count); Min. Order, *United States v. Lang*, No. 1:21-cr-53 (D.D.C. June 7, 2022) (same).

This Court reversed. The *Fischer* majority held that under "the most natural reading of the statute," section 1512(c)(2) unambiguously "applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." 64 F.4th at 336. In so doing, the majority explained that "otherwise" as used in (c)(2) does not limit the reach of that subsection to obstructive acts similar to

---

[5]    As noted *supra*, subsection (c)(1) prohibits "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1).

10

those mentioned in subsection (c)(1) but instead means "in a different manner." *Id.* at 336–37. Regarding section 1512(c)(2)'s *actus reus* element, Judge Pan—who authored the lead opinion—explained that, notwithstanding that section 1512(c)(2) "plainly extends to a wide range of conduct," the provision contains "important limitations": The obstructive act described in (c)(2) must be accompanied by "corrupt" intent and must target an "official proceeding." *Id.* at 339.

In a section of her opinion not joined by Judge Walker, who was the concurring judge, Judge Pan discussed the meaning of "corruptly." She began with the observation that "the allegations against appellees appear to be sufficient to meet *any* proposed definition of 'corrupt' intent." *Id.* (emphasis added). Although she declined to "express[] a preference for any particular definition of 'corruptly,'" she "consider[ed] three candidates." *Id.*[6] Using any of the three definitions, she concluded, a jury could find that the defendants acted "corruptly." *Id.* at 339–40. She then opined that the sufficiency of the indictments did not turn on the "precise definition of

_____

[6] First, citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005), Judge Pan stated that "corruptly" can mean "wrongful, immoral, depraved, or evil." *Fischer*, 64 F.4th at 339–40. Second, she stated that a defendant has a "corrupt" state of mind if he acts "with a corrupt purpose, through independently corrupt means, or both." *Id.* at 340 (internal quotations omitted) (citing *United States v. North*, 910 F.3d 843, 942–43 (D.C. Cir. 1990) (Silberman, J., concurring in part)). Third, Judge Pan suggested that "[a]n act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." *Id.* at 340 (quoting *United States v. Aguilar*, 515 U.S. 593, 616–17 (1995) (Scalia, J., concurring in part)).

11

'corruptly'" and the "exact contours of 'corrupt' intent" could be left "for another day." *Id.* at 340.

Judge Walker's concurrence—required in part to achieve a majority holding—adamantly (and, in my view, correctly) disagreed, declaring that "we *must* define [corruptly] to make sense of (c)(2)'s act element," thereby not joining Judge Pan's failure to do so. *Id.* at 351 (Walker, J., concurring in part). He gave "corruptly" its "long-standing meaning," which requires a defendant to act "with an intent to procure an unlawful benefit either for himself or for some other person." *Id.* at 352 (quoting *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting)). Otherwise, he went on, if subsection (c)(2) "has a broad act element and an even broader mental state," the statute would have "breathtaking scope." *Id.* at 351–52. Under his interpretation (Judge Pan's third option), a defendant "must not only know he was obtaining an 'unlawful benefit,' it must also be his 'objective' or 'purpose.'" *Id.* (cleaned up) (quoting *Marinello*, 138 S. Ct. at 1114 (Thomas, J., dissenting)). Critically, Judge Walker expressly conditioned his vote on his reading of "corruptly." He explained: "[M]y reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding on [the *actus reus*]. If I did not read 'corruptly' narrowly, I would join the dissenting opinion." *Id.* at 362 n.10. He also suggested his reading of "corruptly" may be controlling. *Id.* (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)).

Judge Katsas dissented. In his view, section 1512(c)(2) applies only to obstructive acts related to the specific acts of evidence spoliation covered by subsection (c)(1). To reach that conclusion, he read "otherwise" in (c)(2) to mean "in a manner similar to" rather than "in a manner different from." *Id.* at 363 (Katsas, J., dissenting). He also relied on "normal linguistic usage" and interpretive canons to find that subsection (c)(2), a

12

catch-all provision, must not render superfluous the longer, more complex list of examples in (c)(1). *Id.* And, most notably here, he concluded that the majority's reading renders subsection (c)(2) implausibly broad and unconstitutional in a significant number of its applications. *Id.* at 363, 378–79. On the *mens rea* question, Judge Katsas explained that, in his view, none of the three definitions of "corruptly" proposed by Judge Pan "inspire[d] much confidence." *Id.* at 379. Thus, "[r]ather than try to extract meaningful limits out of that broad and vague adverb," he would have "acknowledged that Congress limited the *actus reus* to conduct that impairs the integrity or availability of evidence." *Id.* at 382.

The determinative question for us is whether *Fischer* constitutes a holding regarding the meaning of "corruptly." It does. Judges Pan and Walker agreed that a defendant acts "corruptly" if he acts with the intent to obtain an unlawful benefit for himself or another. Recall that Judge Pan considered three definitions of "corruptly" and concluded that the indictments sufficiently charged the *Fischer* defendants under any of the three. *Id.* at 339–40 (opinion of Pan, J.). And Judge Walker conditioned his vote on one definition—the one he called the "long-standing meaning" of "corruptly." *See id.* at 352, 362 n.10 (Walker, J., concurring in part). That "long-standing meaning" was one of the three definitions Judge Pan considered.[7] Two judges, then, agreed that the *Fischer*

---

[7]   *Compare id.* at 340 (opinion of Pan, J.) ("[A]n act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." (quoting *Aguilar*, 515 U.S. at 616–17 (Scalia, J., concurring in part))), *with id.* at 352 (Walker, J., concurring in part) ("'[C]orruptly' . . . requires a defendant to act 'with an intent to procure an unlawful benefit either for himself or

13

defendants could be found to have acted "corruptly" if they obstructed the election certification proceeding with the intent to obtain an unlawful benefit.[8]

The definition of "corruptly" endorsed by Judge Walker binds us because that definition was necessary to create a holding. *See Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring in part) ("[M]y reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding on [the *actus reus*]. If I did not read 'corruptly' narrowly, I would join the dissenting opinion."). We must follow "those portions of the opinion necessary to that result by which we are bound." *Util. Air Regul. Grp. v. EPA*, 885 F.3d 714, 720 (D.C. Cir. 2018) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996)); *see also Holding*, Black's Law Dictionary (11th ed. 2019) (defining "holding" as "[the] court's determination of a

---

for some other person.'" (quoting *Marinello*, 138 S. Ct. at 1114 (Thomas, J., dissenting))).

[8] Although Judge Pan declared that she took "*no* position on the exact meaning of 'corruptly,'" *id.* at 341 n.5 (opinion of Pan, J.), that cannot be right. In reviewing a motion to dismiss an indictment, the operative question is whether the allegations are sufficient for a reasonable jury to conclude the defendant committed the charged offense. *See United States v. Sampson*, 371 U.S. 75, 76 (1962). In order to uphold the *Fischer* indictments, then, Judge Pan had to conclude that the allegations were sufficient for a jury to find that the defendants acted "corruptly." And, to so conclude, she had to assign a meaning to "corruptly" that at least one panel member agreed with. *See Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring in part) ("Without taking a position, the lead opinion could not conclude, as it does, that the indictments should be upheld.").

14

matter of law pivotal to its decision"). Accordingly, I believe the improper-benefit reading of "corruptly" binds us.[9]

The majority resists this conclusion by focusing only on the result in *Fischer* while ignoring its rationale. According to the majority, "the only holding in *Fischer* was the majority's ruling reversing the district court's erroneous interpretation of a different part of the statute – the 'otherwise obstructs'

---

[9] Even assuming *arguendo* that *Fischer* cannot be explained by a "single rationale," the improper-benefit reading of "corruptly" controls because Judge Walker's reading represents the "position taken" by the judge "who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (plurality opinion)). We have explained that the "narrowest ground" is a "logical subset of other, broader opinions." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). Although Judge Pan would have upheld the indictments under any of three definitions of "corruptly," *see Fischer*, 64 F.4th at 340, Judge Walker agreed to do so under only one of those definitions, *see id.* at 362 (Walker, J., concurring in part). Put differently, Judge Pan concluded that "corruptly" could mean *A* or *B* or *C* and, regardless of the definition chosen, the indictments should be upheld; Judge Walker, however, concluded that "corruptly" *must* mean *C*. His concurrence, then, represents the "position taken" by the judge "who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193 (quoting *Gregg*, 428 U.S. at 169 n.15).

The majority argues that Judge Walker's and Judge Pan's opinions "rely on rationales that do not overlap" because the latter focused on the *sufficiency* of the three possible definitions but the former found one definition *necessary*. Maj. Op. 36–37. That characterization does not prevent Judge Walker's concurrence from forming a logical subset of the lead opinion. Another way of phrasing Judge Walker's conclusion that *C* is necessary is to say that *only C* is sufficient. Thus, Judge Pan found that *A* or *B* or *C* is sufficient and Judge Walker found that only *C* is sufficient. That yields a logical subset.

15

clause." Maj. Op. 32. But that overlooks entirely *how* the Court
reached the result of reversal. What gives a judicial opinion
precedential effect beyond the parties is not its judgment but its
rationale. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 (2020)
(plurality opinion) ("It is usually a judicial decision's
reasoning—its *ratio decidendi*—that allows it to have life and
effect in the disposition of future cases."); *see also United
States v. Montague*, 67 F.4th 520, 531 n.2 (2d Cir. 2023)
("[W]e do not apply prior judgments 'stripped from any
reasoning' articulated in those cases.") (citation omitted). The
reasoning necessary to the result in *Fischer* includes Judge
Walker's definition of "corruptly" because he expressly
conditioned his interpretation of the "otherwise obstructs"
clause on his understanding of "corruptly." *Fischer*, 64 F.4th at
362 n.10 (Walker, J., concurring in part). Thus, *Fischer* did
reach a holding on the question before us.

## B. MEANING OF "CORRUPTLY"

Even assuming *arguendo* that *Fischer* did not decide what
"corruptly" means, I believe "corruptly" is best read to require
the defendant to act with the intent of obtaining an unlawful
benefit for himself or another. To reach that conclusion, I rely
on (1) the historical treatment of the "corrupt" mental state;
(2) other federal statutes requiring evidence of "corrupt" intent;
(3) the structure of Chapter 73 of Title 18 in general and of
section 1512(c) in particular; and (4) the rule of lenity.

### 1. Common-Law Meaning of "Corruptly"

As Judge Walker explained in *Fischer*, "corruptly" has a
settled *mens rea* meaning. *See Fischer*, 64 F.4th at 352
(Walker, J., concurring in part); *see also United States v.
Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in
part) ("[T]he term 'corruptly' in criminal laws has a
longstanding and well-accepted meaning."). The criminal

16

proscription against "corrupt" behavior first appeared in England around the 13th century—a time when public officials, most notably the sheriff, "carried a broad range of powers" and "were only loosely accountable to any central authority." Jeremy N. Gayed, *"Corruptly": Why Corrupt State of Mind Is an Essential Element for Hobbs Act Extortion Under Color of Official Right*, 78 Notre Dame L. Rev. 1731, 1737 (2003). Despite wielding considerable power, officials "were both poorly and irregularly paid [by the Crown]." 2 William Holdsworth, *A History of English Law* 294 (4th ed. 1936); *see* Gayed, *supra*, at 1737 ("Although the sheriff was revenue collector, administrator, and law enforcer for the king, he received little or no compensation from the crown for his duties."). To compensate for this deficiency, officials exacted fees from those they served, which fees were fixed by law or custom. *See* Gayed, *supra*, at 1737–38; 10 Holdsworth, *supra*, at 153. Because the amount that officials were authorized to charge was in their view insufficient, however, they resorted to "blatant and widespread disregard for legal and customary limits on their fees." Gayed, *supra*, at 1738.

This practice gave rise to the earliest laws against corruption, "particularly th[ose] proscribing extortion and bribery." *Id.* at 1739. Early extortion laws provided that officials "could not *knowingly* charge more than the customary amount." *Fischer*, 64 F.4th at 353 (Walker, J., concurring in part) (citing Gayed, *supra*, at 1735–38). Thus, even if an official overcharged for his services, if he did not knowingly do so, he did not act "corruptly." *See* Gayed, *supra*, at 1748 ("[T]he case law ostensibly defines 'corruptly' as . . . the purpose to give, take, receive, or accept, anything of value that is illegal or inappropriate to that particular office, knowing that it is illegal or inappropriate."). Common-law bribery statutes provided that "the mere payment of a fee to an official for a benefit was not enough—the bribe payer had to know he was

17

seeking an unlawful benefit." *Fischer*, 64 F.4th at 353 (Walker, J., concurring in part); *see also* James Lindgren, *The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act*, 35 UCLA L. Rev. 815, 823 (1988) ("[E]ven someone who is paying to influence official behavior in his favor may not be acting corruptly if he is merely buying back fair treatment from an official who threatens to inflict unfair treatment.").

The English courts' understanding of the "corrupt" mental state carried over to early American courts. The Supreme Court of Pennsylvania declined to hold one official liable for charging concededly "illegal" (excessive) fees because he did not have "criminal intentions." *Respublica v. Hannum*, 1 Yeates 71, 74 (Pa. 1791) (per curiam). Three years later that same court held that a criminal information lay against a justice of the peace who released the defendant on his recognizance notwithstanding the defendant's grossly insufficient bail payment because the justice of the peace "could not have been so ignorant as not to have known, that the taking of recognizances in such sums, was a reproach to the public justice of the country." *Respublica v. Burns*, 1 Yeates 370, 370 (Pa. 1794) (per curiam). The fact that the justice of the peace issued a certificate stating that the defendant "had entered into recognizance with *sufficient* securities, prove[d] that he knew he was acting wrong in his office." *Id.* at 371. In *Runnells v. Fletcher*, the Supreme Judicial Court of Massachusetts assessed whether the defendant, a deputy sheriff collecting a debt, had committed extortion by "demanding and receiving of the plaintiff a greater fee" than he was authorized to collect. 15 Mass. 525, 525 (1819). The court decided he had not, reasoning that he had not demanded the excess fees "wilfully and corruptly" but had believed they were warranted "as a compensation for labor and trouble attending a supposed injury." *Id.* at 526; *cf. Jenifer v. Lord Proprietary*, 1 H. & McH.

18

535, 535 (Md. 1774) (sheriff convicted of receiving "greater and larger fees" than he was entitled to). In *Cleaveland v. State*, the Supreme Court of Alabama rejected the argument that an official could be held criminally liable for imposing unlawful charges without knowing they were illegal. 34 Ala. 254, 259 (1859). To be liable, the court held, officers must "intentionally charge and take fees which they know at the time they are not authorized to collect." *Id.*

The long history of the "corrupt" mental state, then, has imposed two requisites: to act "corruptly," the defendant must intend to secure an unlawful benefit for himself or another; and, the defendant must know that the benefit he seeks is unlawful or improper. Prominent legal treatises, both historical and modern, reaffirm these principles. *See* 2 Francis Wharton, *A Treatise on the Criminal Law of the United States* § 2518 (7th ed. 1874) (to be "corrupt," act must be done "above all with knowledge that it was wrong"); 2 Emlin McClain, *Treatise on the Criminal Law as Now Administered in the United States* 130 (1897) (official did not extort if he "had ground to believe and did believe that he was justified in taking the fees received"); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 446–47 (3d ed. 1982) ("[E]xtortion is not committed by the officer who innocently receives an unlawful fee as a result of an honest mistake of fact or of law."). In addition, modern legal dictionaries confirm the unlawful-benefit element of "corruptly." Black's Law Dictionary states, "[a]s used in criminal-law statutes, corruptly usu[ally] indicates a wrongful desire for pecuniary gain or other advantage." *Corruptly* (def. 2), Black's Law Dictionary (11th ed. 2019). And Ballentine's Law Dictionary defines "corruptly" as "[w]rongfully; acting with the intent to obtain an improper advantage for self or someone else, inconsistent with official duty and the rights of

19

others." *Corruptly*, Ballentine's Law Dictionary 276 (3d ed. 1969).[10]

## 2. "Corruptly" Used in *In Pari Materia* Statutes

Like common-law extortion and bribery, modern federal statutes using a "corrupt" *mens rea* generally require proof that the defendant acted with the intent to secure an unlawful

---

[10] Interpreting a different criminal statute, the Supreme Court has recently noted that "[w]hen Congress transplants a common-law term, the 'old soil' comes with it." *United States v. Hansen*, 143 S. Ct. 1932, 1944 (2023) (citation and some internal quotation marks omitted). Yet the majority here spends little time discussing the history just recounted. *See* Maj. 39–40. In fact, the only counterevidence it cites is a lone contempt statute from 1831, which "does not include any mention of a required intent to procure a benefit." *Id.* at 40 (discussing Act of Mar. 2, 1831, ch. 98, § 2, 4 Stat. 487). But the statute need not spell out what is already inherent in the *mens rea* of "corruptly," as the common-law history of the word demonstrates.

The majority also argues that the common-law meaning "would come as a surprise" to our sister circuits that have not read the unlawful-benefit requirement into section 1512(c)(2). *Id.* at 28–29 (collecting authorities). If so, the majority's definition would come equally as a surprise. None of the majority's authorities adopts its "independently unlawful means" definition and some outright conflict with it. *Cf.* Maj. Op. 26–27 and 22 n.3 (rejecting the argument that the defendant must act "dishonestly" and expressing doubt that he must act "knowingly"), *with United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016) (requiring the defendant to act "knowingly and dishonestly"); *United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) (same); *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007) (same); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same). Further, not one of the cases the majority cites even mentions the common-law history of "corruptly." They are, then, of little help in construing the common-law history of "corruptly."

20

benefit. For example, 18 U.S.C. § 201, titled "[b]ribery of public officials and witnesses," imposes penalties on an individual who "*corruptly* gives, offers or promises anything of value to any public official . . . with intent . . . to influence any official act." 18 U.S.C. § 201(b)(1)(A) (emphasis added). Courts have interpreted "corruptly" in that statute to mean that the defendant must intend that the bribe be part of a "quid pro quo." *United States v. Tomblin*, 46 F.3d 1369, 1379–80 (5th Cir. 1995); *United States v. Terry*, 707 F.3d 607, 612 (6th Cir. 2013). That is, the bribe payer "must intend to secure a benefit from the bribe taker and vice versa." *Fischer*, 64 F.4th at 354 (Walker, J., concurring in part).

"Corruptly" is also used in other obstruction-of-justice statutes. For most of those provisions, courts have not interpreted "corruptly" to require proof that the defendant intended to secure an unlawful benefit. As Judge Walker observed in *Fischer*, that omission reflects that, for many provisions, "the connection between 'corruptly' and the defendant's intent to procure an unlawful benefit is implicit," as the statutes criminalize conduct that *necessarily* results in securing some unlawful benefit. *Id.* at 362 (Walker, J., concurring in part). For example, 18 U.S.C. § 1503 criminalizes "corruptly" injuring or influencing a juror or judicial officer; 18 U.S.C. § 1512(b)(2) makes it unlawful to "corruptly persuade[]" someone to "withhold testimony," destroy evidence or "evade legal process"; and 18 U.S.C. § 1517 criminalizes "corruptly" obstructing "any examination of a financial institution by an agency of the United States." With respect to these statutes, then, the improper-benefit requirement need not be express because commission of the *actus reus* necessarily results in an improper advantage—

21

influencing a juror, suppressing evidence or avoiding financial investigation, respectively.[11]

If a criminal statute prohibits a broad range of conduct, as section 1512(c)(2) does, however, "it is problematic to leave implicit the long-established requirement that a defendant acts 'corruptly' only when he seeks to secure an unlawful benefit." *Fischer*, 64 F.4th at 355 (Walker, J., concurring in part). That statutory silence is one reason courts give "corruptly" its narrow meaning in 26 U.S.C. § 7212(a), a statute that imposes penalties on any individual who "corruptly" "endeavors to obstruct or impede[] the due administration of [the Internal Revenue Code]." *See, e.g.*, *United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) ("[T]here is a consensus among the courts of appeals that 'corruptly,' as used in section 7212(a), means acting with an intent to procure an unlawful benefit either for the actor or for some other person.") (collecting cases); *see also* Eric J. Tamashasky, *The Lewis Carroll Offense: The Ever-Changing Meaning of "Corruptly" Within the Federal Criminal Law*, 31 J. Legis. 129, 130 (2004) ("[T]he common law meaning [of 'corruptly'] already is used consistently across the federal circuits in the context of prosecutions under 26 U.S.C. § 7212(a)."). Whereas suppressing evidence within the meaning of section 1512(b)(2) or influencing a juror under section 1503 "will almost necessarily result in an improper advantage to one side in the case," obstructing the

---

[11]  That the improper-benefit requirement is frequently implicit, rather than express, has been recognized. *See Aguilar*, 515 U.S. at 616–17 (Scalia, J., concurring in part) ("Acts specifically intended to 'influence, obstruct, or impede, the due administration of justice . . . are necessarily corrupt." (quoting 18 U.S.C. § 1503)); *North*, 910 F.2d at 939–46 (Silberman, J., concurring in part) (reading "corruptly" in section 1505 as not including an unlawful-benefit requirement "can be taken to express the view that *any* endeavor to obstruct a judicial proceeding is inherently . . . corrupt").

22

administration of the Internal Revenue Code under section 7212(a) could encompass conduct that does not result in a party "gain[ing] an improper advantage." *United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985). With respect to the latter statute, then, courts have required that the improper-benefit requirement be explicit. *E.g.*, *id.* at 999–1002.

Like in section 7212(a), section 1512(c)(2)'s *actus reus* can capture conduct that does not produce an improper benefit. Not every attempt to influence an official proceeding is carried out "corruptly." For example, a lobbyist "who persuades a congressman to ask hard questions at a committee hearing has influenced the proceeding" and might therefore come within section 1512(c)(2). *Fischer*, 64 F.4th at 361 (Walker, J., concurring in part). But the lobbyist has not acted "corruptly." Thus, to ensure that such conduct does not trigger section 1512(c)(2), the improper-benefit requirement must be rigorously enforced. *See id.* at 356 ("[T]he more conduct an obstruction statute reaches, the more vigilantly we must apply the long-established . . . meaning of 'corruptly.'").

### 3.  Statutory Structure and History: Chapter 73 and Section 1512

Both the structure and history of Chapter 73 in general and of section 1512 specifically offer further support for the unlawful-benefit reading. Chapter 73 comprises twenty-two distinct obstruction-of-justice sections, several prescribing multiple offenses. Section 1512 was initially enacted as part of the Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 4, 96 Stat. 1248, 1249. The codified statute is titled "[t]ampering with a witness, victim, or an informant" and criminalizes specific types of obstructive conduct, including "kill[ing] or attempt[ing] to kill another person" in order to prevent the person from attending or testifying at an official

23

proceeding, 18 U.S.C. § 1512(a)(1)(A); "us[ing] physical force or the threat of physical force" or "knowingly us[ing] intimidation, threat[s], or corrupt[] persua[sion]" in order to "influence, delay, or prevent the testimony of any person in an official proceeding," *id.* § 1512(a)(2)(A), (b)(1), or "caus[ing] or induc[ing] any person to" "withhold [evidence] from an official proceeding" or "impair [an] object's integrity or availability for use in an official proceeding," *id.* § 1512(a)(2)(B)(i), (b)(2)(B); and "intentionally harass[ing] another person" to prevent the person from attending or testifying at an official proceeding, *id.* § 1512(d)(1).

Section 1512(c), the provision under which Robertson was charged and convicted, became law twenty years later as part of the Corporate Fraud Accountability Act of 2002, *see* Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807, one of several acts composing the broader Sarbanes-Oxley Act of 2002, the enactment of which "was prompted by the exposure of [energy giant] Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents," *see Yates v. United States*, 574 U.S. 528, 535–36 (2015) (plurality opinion). The Enron scandal revealed a "yawning gap" in the obstruction-of-justice enforcement scheme: although then-current statutes prohibited an individual from inducing *someone else* to destroy evidence, none imposed liability on an individual who destroyed evidence himself. *Id.* at 557–58 (Kagan, J., dissenting). In 2002, the Congress cured that "conspicuous omission" by enacting 18 U.S.C. § 1519, which criminalizes altering or destroying "any record, document, or tangible object" with the intent to impede or influence a federal investigation. *See Yates*, 574 U.S. at 536 (plurality opinion).

24

Section 1512(c) was enacted at the same time as section 1519 but as a last-minute addition, having been "introduced in a floor amendment late in the legislative process." *Fischer*, 64 F.4th at 347 (citing 128 Cong. Rec. S6542 (daily ed. July 10, 2002)). Section 1512(c) has two subsections: "(c)(1) prohibits 'corruptly' altering or destroying a 'document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding'" and "(c)(2) is a residual clause, making it an offense to 'corruptly' 'otherwise obstruct[], influence[], or impede[] any official proceeding.'" *Id.* at 358 (Walker, J., concurring in part) (alterations in original). "Subsection (c)(2)'s inconspicuous place within the statutory scheme suggests that it is an odd place for Congress to hide a far-reaching criminal provision," *id.*, including, in particular, the egregiously ill-fit of prosecuting trespassing protesters. Giving "corruptly" its common-law meaning correctly limits its reach. "Even though (c)(2) has a broad act element—there are many ways to obstruct, influence, or impede an official proceeding—its mental state keeps it in check: A defendant is liable only if he intends to procure an unlawful benefit." *Id.* Indeed, to conclude that hundreds—perhaps thousands—of individuals entered the Capitol building "corruptly"—by reading "corruptly" to mean nothing more than "acting with an independently unlawful purpose or through independently unlawful means"—would strip the word of any independent meaning.

### 4.    Other—Flawed—Definitions of "Corruptly"

Citing *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), the lead *Fischer* opinion suggested that "corruptly" may simply mean "wrongful, immoral, depraved, or evil." 64 F.4th at 340 (opinion of Pan, J.) (quoting *Arthur Andersen*, 544 U.S. at 705). And other courts have adopted this definition (or a variation thereof), both in the context of section 1512(c), *see,*

25

*e.g.*, *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007), and related obstruction statutes, *see, e.g.*, *United States v. Edlind*, 887 F.3d 166, 173 (4th Cir. 2018) (interpreting 18 U.S.C. § 1512(b)); *United States v. Edwards*, 869 F.3d 490, 498 (7th Cir. 2017) (same); *United States v. Quattrone*, 441 F.3d 153, 170, 173–76 (2d Cir. 2006) (interpreting 18 U.S.C. §§ 1503, 1505, 1512(b)). Those cases have found this definition appealing because it gives "corruptly" its common or colloquial meaning.[12] And although, as a general matter, "words in statutes should be given their common or popular meanings[] in the absence of [a] congressional definition," *North*, 910 F.2d at 881, "[s]tatutory language need not be colloquial," *Aguilar*, 515 U.S. at 616 (Scalia, J., concurring in part). Indeed, "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Morissette v. United States*, 342 U.S. 246, 263 (1952). Thus, there are compelling reasons that "corruptly" should not be given a colloquial meaning in section 1512(c).

For starters, *Arthur Andersen*, the primary authority for the colloquial definition, simply noted that "corruptly" is

---

[12] Lay dictionaries define "corruptly" by using the adverbial form of "corrupt." *Corruptly*, Webster's Third New International Dictionary 512 (1976) ("[I]n a corrupt manner; by corruption."); *Corruptly*, Oxford English Dictionary (2d ed. 1989) ("In a corrupt or depraved manner; pervertedly; by means of corruption or bribery."). "Corrupt," in turn, is defined as "depraved, evil; perverted into a state of moral weakness or wickedness." Webster's Third New International Dictionary, *supra*, at 512; *see Corrupt*, Oxford English Dictionary, *supra* ("Debased in character; infected with evil; depraved; perverted; evil, wicked."); *Corrupt*, American Heritage College Dictionary 321 (4th ed. 2007) ("Marked by immorality and perversion; depraved.").

26

"normally associated with" the adjectives "wrongful, immoral, depraved, or evil." 544 U.S. at 705. The opinion never "suggested that this adjectival string could supply a complete definition." *Fischer*, 64 F.4th at 379 (Katsas, J., dissenting); *accord United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) ("While the Court in *Arthur Andersen* did observe . . . that 'corruptly' is generally associated with 'wrongful, immoral, depraved, or evil,' the Court's holding was not that the definition of 'corruptly' had to include those words." (quoting *Arthur Andersen*, 544 U.S. at 705)). Indeed, the *Arthur Andersen* Court expressly declined to "explore[]" the "outer limits" of the term because, regardless of the precise definition, the jury instructions in question "simply failed to convey the requisite consciousness of wrongdoing." *Arthur Andersen*, 544 U.S. at 706. The *Arthur Andersen* defendant argued that "corruptly" in 18 U.S.C. § 1512(b)—a different obstruction provision—meant "'knowingly and dishonestly, with the specific intent to subvert or undermine the integrity' of a proceeding." *Id.* (quotation omitted). Instructing the jury, however, the district court declined to use "dishonestly" and instead added "impede" to "subvert or undermine." *Id.* The instruction thus read: "The word 'corruptly' means having an improper purpose. An improper purpose, for this case, is an intent to subvert, undermine, or impede the fact-finding ability of an official proceeding." *United States v. Arthur Andersen, LLP*, 374 F.2d 281, 293 (5th Cir. 2004). On review, the Supreme Court found the two changes "significant" because "dishonesty" was no longer "necessary to a finding of guilt" and "impede" had "broader connotations" than "subvert or undermine." *Arthur Andersen*, 544 U.S. at 706–07 (alterations accepted). Thus, the district court's instruction "diluted the meaning of 'corruptly' so that it covered innocent conduct." *Id.* at 706. The Court also implied that a narrowing construction of "corruptly" was needed to counteract the statute's broad *actus reus*: "The dictionary defines 'impede' as 'to interfere with or

27

get in the way of the progress of' . . . . By definition, [that applies to] anyone who innocently persuades another to withhold information from the Government . . . . With regard to such innocent conduct, the 'corruptly' instructions did no limiting work whatsoever." *Id.* at 707 (quotation omitted).

*Arthur Andersen* plainly warns against giving "corruptly" in section 1512(c) its colloquial meaning. In fact, because section 1512(c)'s *actus reus* is broader than section 1512(b)'s *actus reus*, the need to cabin "corruptly" is even more pressing here. Whereas section 1512(b) reaches comparatively discrete categories of wrongful conduct such as causing someone to withhold evidence, section 1512(c)(2) encompasses any attempt to influence or impede an official proceeding, including conduct that is otherwise lawful. *See Fischer*, 64 F.4th at 344–45. Moreover, the defendant's mental state is ordinarily a question of fact for the jury. *See North*, 910 F.2d at 942 (Silberman, J., concurring in part) ("[I]t seems inescapable that this is a question of fact for the *jury* to determine whether an endeavor was undertaken corruptly."). Reading section 1512(c) to criminalize "wrongful, immoral, depraved, or evil" conduct would support a guilty verdict based on "little more than a jury's subjective disapproval of the conduct at issue." *See Fischer*, 64 F.4th at 379–80 (Katsas, J., dissenting); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) ("Where the legislature fails to provide . . . minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" (alteration in original) (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974))).[13]

---

[13]  The majority also relies heavily on Judge Silberman's separate opinion in *North*, which suggests that a defendant's use of "independently criminal" means satisfies the *mens rea* of

28

Defining "corruptly" by reference to ambiguous adjectives is also objectionable because this Court expressly rejected that definition in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991). That case involved the prosecution of Admiral John Poindexter for his role in the Iran-Contra Affair. We held that "corruptly" as used in 18 U.S.C. § 1505 was vague "on its face" and that the "various dictionary definitions of the adjective 'corrupt'" did "nothing to alleviate the vagueness problem." *Id.* at 378. "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper,'" we explained, did not illuminate the meaning of "corruptly" because they "are no more specific—indeed they may be less specific—than 'corrupt.'" *Id.* at 379; *see also Cartwright v. Maynard*, 822 F.2d 1477, 1489 (10th Cir. 1987) (en banc) ("Vague terms do not suddenly become clear when they are defined by reference to other vague terms.").

Consider an alternative definition of "corruptly"—the one the majority adopts. "Corruptly," it contends, encompasses "act[ing] with a corrupt purpose or via independently corrupt means." Maj. Op. 17.[14] To avoid circularity, the majority then

_____

"corruptly." *See North*, 910 F.2d at 943 (Silberman, J., concurring in part) (interpreting 18 U.S.C. § 1505). But Judge Silberman was in dissent in his discussion of the meaning of "corruptly." *See id.* at 946 (noting that the majority "reaches the opposite result" and "renders the word 'corruptly' meaningless"). Nor did he discuss the common-law history of the word in reaching his conclusion—an oversight that matters here, especially as we are plainly not bound by his view.

[14]  Note (although it hardly bears mentioning) that "corruptly" requires something more than the specific intent to commit the *actus reus*. If the specific intent to influence, obstruct or impede a proceeding were enough, section 1512(c)(2) would be untenably broad, capturing anyone who attempts to influence any official proceeding for any reason. If we were to adopt that interpretation, "we might as well convert all of Washington's office buildings into

29

equates "corrupt" with "unlawful." *Id.* at 20–21.[15] My colleagues' definition gives section 1512(c)(2) an eye-popping sweep. Start with "unlawful means." As Judge Katsas explained in *Fischer*, "even if independently unlawful means were necessary, section 1512(c)(2) still would cover large swaths of advocacy, lobbying, and protest." *Fischer*, 64 F.4th at 380 (Katsas, J., dissenting). Consider "[a] protestor who demonstrates outside a courthouse, hoping to affect jury deliberations." *Id.* Or a federal employee who convinces a congressman to change his vote on pending legislation. *Id.* Or an individual who peacefully protests a bill in the Senate gallery. *Id.* Under a "corrupt means" interpretation of "corruptly," all three would violate section 1512(c)(2) because all attempted to influence an official proceeding by violating an independent statute to do so. *Id.*; *see also* 18 U.S.C. § 1507 (prohibiting picketing outside courthouse with intent to influence judge, juror or witness); *id.* § 1913 (prohibiting lobbying by agency employees); 40 U.S.C. § 5104(e)(2)(G) (prohibiting demonstrating inside Capitol). As a result, each would face up to twenty years in prison, rather than a maximum

---

prisons." *North*, 910 F.2d at 942 (Silberman, J., concurring in part). Moreover, reading "corruptly" to require only the specific intent to influence, obstruct or impede a proceeding would be inconsistent with even the colloquial meaning of corruptly, which implies *some* degree of wrongfulness. *See Arthur Andersen*, 544 U.S. at 706 ("corruptly" requires "consciousness of wrongdoing").

[15] The majority's equation of "corruptly" with "unlawfully" belies its assertion that it is merely adopting the "ordinary meaning" of the word. *See* Maj. Op. 14. According to the majority, the plain meaning of "corruptly" (even in a criminal statute) is "depraved, evil: perverted into a state of moral weakness or wickedness." *Id.* at 15 (quoting *North*, 910 F.2d at 881). But "unlawfully" means something else entirely. Acts may be evil or depraved and yet lawful. And acts may not be evil or depraved and yet be unlawful.

30

of one year, a criminal fine and six months, respectively. *See Fischer*, 64 F.4th at 380 (Katsas, J., dissenting).

Like Judge Katsas, I doubt whether, in enacting section 1512(c)(2), the Congress intended to "supercharge a range of minor advocacy, lobbying, and protest offenses into 20-year felonies." *Id.* Take 18 U.S.C. § 1507, the statute prohibiting protesting outside a courthouse with intent to influence a judge or juror. The Congress specifically provided that conviction under that provision warranted no more than one year in prison. *See* 18 U.S.C. § 1507 (violators "shall be fined under this title or imprisoned not more than one year, or both"). The Congress's policy choice would be nullified if the same person could be imprisoned for up to *twenty years* under section 1512(c)(2) for engaging in precisely the same conduct. Yet that result is possible under the majority's reading. An individual convicted under section 1507 could also be convicted under section 1512(c)(2) because anyone who protests outside a courthouse with the intent to influence a judge or juror *necessarily* intends to influence, obstruct or impede an official proceeding by unlawful means. Thus, although the majority's reading "create[s] an escape hatch for those who influence an official proceeding without committing any other crime," it nevertheless "gives section 1512(c)(2) an improbably broad reach." *Fischer*, 64 F.4th, at 380 (Katsas, J., dissenting).

The majority responds by imposing a limitation plucked from thin air. It suggests that the "unlawful-means" requirement is satisfied only when a defendant acts through "independently *felonious* means." Maj. Op. 24–25. But as far as I can tell, no decision of any court has even suggested, much less held, that "corruptly" can bear such a meaning. And in any event, imposing a "felonious means" requirement fails to cure the remarkable overbreadth of section 1512(c)(2) as interpreted by the majority. Even with that limitation, the majority's

31

reading is difficult to reconcile with Chapter 73's reticulated scheme of penalties. For example, 18 U.S.C. § 1506 sets forth a maximum penalty of five years' imprisonment for feloniously stealing a record or other process used in a court proceeding. Under the majority's interpretation of "corruptly," it would be impossible to violate section 1506 (aside from the separate prohibition on posting false bail) without also violating section 1512(c)(2).

Moreover, defining "corruptly" to mean "acting through independently unlawful means" requires the jury to find beyond a reasonable doubt that the defendant committed some other offense, aside from section 1512(c), in order to find him guilty of violating section 1512(c). The majority's definition effectively requires proof of a predicate offense that is not listed in the statute, an atextual and baffling result. The majority fails to point to a single statute in which the Congress uses a *mens rea* term—much less this particular *mens rea* term—to impose a similar requirement.[16]

The "unlawful purpose" facet of the majority's definition is no less dubious. Defining "corruptly" to mean, in essence, "acting with an independently unlawful purpose" does nothing to limit the scope of section 1512(c)(2). What does it mean to act with an independently unlawful purpose? *See* Maj. Op. 18. Perhaps the majority means that the defendant must intend to violate a law other than section 1512(c)(2). But if so, the

---

[16] The majority denies that its definition requires proof of a predicate offense because there are ways "to establish corrupt intent or conduct" other than "proof of independently felonious means." Maj. Op. 23 n.4. But the majority has tethered the "core" meaning of "corruptly" to the defendant's independently unlawful purpose or use of independently unlawful means, *see id.* at 21–22, requiring the jury to look for offenses outside the four corners of section 1512(c)(2) to assess what is independently unlawful.

32

defendant would *always* act "corruptly" so long as he also has a distinct illegal purpose—distinct from corruption, that is. If that reading is truly what the Congress intended in enacting section 1512(c)(2), sadly, Mark Twain had it right.[17]

Unlike the majority's definition of "corruptly," the unlawful-benefit definition properly limits the scope of section 1512(c)(2). The requirement that a defendant act with intent to obtain an unlawful benefit means section 1512(c)(2) will neither cover "large swaths of advocacy, lobbying, and protest," *Fischer*, 64 F.4th at 380 (Katsas, J., dissenting), nor "supercharge a range of minor advocacy, lobbying, and protest offenses into 20-year felonies." *Id.* Section 1512(c)(2) will apply only where a defendant intends to secure an unlawful benefit for himself or another and knows the benefit he seeks is unlawful. *See Marinello*, 138 S. Ct. at 1114 (Thomas, J., dissenting).

### 5.   Rule of Lenity

If *Fischer* had not decided the meaning of "corruptly," and if the remainder of the foregoing analysis left any doubt, I believe the rule of lenity tips the scales in Robertson's favor. The rule of lenity instructs courts that "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). Or, as the rule is often expressed, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Dowling v. United States*, 473 U.S. 207, 214 (1985) (quoting *Williams v. United States*, 458 U.S. 279, 290 (1982)). The Supreme Court

---

[17] 2 Albert Bigelow Paine, *Mark Twain, A Biography* 724 (1912).

33

has frequently applied the rule of lenity in obstruction-of-justice cases. *See, e.g.*, *Yates*, 574 U.S. at 547–48 (plurality opinion); *Arthur Andersen*, 544 U.S. at 703–04; *Aguilar*, 515 U.S. at 600; *see also Fischer*, 64 F.4th 382 (Katsas, J., dissenting) ("In the specific context of obstruction of justice, the Supreme Court repeatedly has emphasized the need for caution."). I would follow the Supreme Court's instruction.

### C.  DID ROBERTSON ACT "CORRUPTLY"?

Having concluded that "corruptly" is best read to require a defendant to act with the intent of obtaining an unlawful benefit for himself or another, I turn again to the facts of this case. The question, to reiterate, is whether a properly instructed juror could have found Robertson guilty under section 1512(c) beyond a reasonable doubt. *Hillie*, 14 F.4th at 682. The answer is no. There is no evidence in the record suggesting Robertson obstructed the election certification proceeding in order to obtain an unlawful benefit for himself or someone else. In fact, the Government does not contend that any such evidence exists.

In denying Robertson's motion for judgment of acquittal, the district court isolated the following evidence to support the jury's finding that Robertson acted "corruptly": (1) communications Robertson made before and after the January 6th protest; (2) Robertson's intent to use violence; (3) Robertson's decision to carry a dangerous weapon—a large wooden stick—outside and inside the Capitol building; (4) Robertson's admission that he entered and remained in the Capitol without lawful authority and engaged in disorderly conduct in a restricted area; (5) Fracker's testimony that, when he and Robertson arrived at the Capitol building, MPD officers were "in trouble" and the crowd was "out of hand"; (6) Robertson impeded MPD officers as the officers marched

34

through the protesters and (7) Robertson banged his wooden stick while the protesters chanted in the Capitol Crypt. None of this evidence comes close to establishing at all—much less beyond a reasonable doubt—that Robertson acted with the intent to obtain an unlawful benefit for himself or another.[18]

I would vacate Robertson's section 1512(c)(2) conviction and remand for resentencing on the remaining counts.

Accordingly, I respectfully dissent.

---

[18] The "unlawful benefit" the defendant seeks must be financial, professional or exculpatory. *See, e.g.*, *Marinello*, 138 S. Ct. at 1105 (avoiding taxes); *Aguilar*, 515 U.S. at 595 (concealing wrongdoing through illegal disclosure of wiretap); *North*, 910 F.2d at 851 (fabricating false testimony and destroying documents); *see also Corruptly* (def. 2), Black's Law Dictionary (11th ed. 2019) ("corruptly usu[ally] indicates a wrongful desire for pecuniary gain or other advantage"). Acquittal is thus required if, as I view the evidence, Robertson merely intended to protest the outcome of the election or his (perceived) disenfranchisement or to make some other political point.

The majority mistakenly insists that my view conflicts with Judge Walker's *Fischer* opinion. Maj. Op. 37–38. On the contrary, Judge Walker did not decide how broadly to construe the "unlawful benefit" requirement. He merely stated that he was "not so sure" that the sought-after benefit must be "financial, professional, or exculpatory." *Fischer*, 15 64 F.4th at 356 n.5 (Walker, J., concurring in part) (citation omitted). And even if this panel agreed with Judge Walker's suggestion that the office of the President "may" qualify as "a professional benefit," *see id.*, we would remain free to conclude that there was no evidence presented at trial to show that Robertson intended—either alone or collectively—to procure that benefit.