**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-3062

(District Court Cr. No. 21-000347 (CRC))

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THOMAS ROBERTSON,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLANT THOMAS ROBERTSON

Timothy Cone, Esq.
1615 New Hampshire Avenue NW
4th Floor (North)
Washington, D.C. 20009
Tel. (202) 862-4333
timcone@comcast.net

Counsel for Defendant Thomas Robertson
Appointed by the Court

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), defendant-appellant Thomas Robertson hereby states:

**A.     Parties and Amici:**

This appeal arises from a criminal prosecution of defendant-appellant Thomas Robertson by plaintiff-appellee, the United States of America.  There are no intervenors or amici.

**B.     Rulings under Review:**

This is an appeal from the August 17, 2022 judgment of the district court (the Honorable Judge Christopher R. Cooper), imposing sentence after convictions.  A058.  Robertson seeks review of the following rulings:

**Issue I**: The district court's denial (A043) of Robertson's motion for judgment of acquittal on Count 1.  A035.

**Issue II**: The district court's imposition of an eight-level enhancement and a three-level enhancement when it calculated Robertson's sentencing Guideline offense level calculation, pursuant to U.S.S.G. §§ 2J1.1(b)(1)(B) & (b)(2), based on obstruction of the "administration of justice."

**C.    Related Cases:**

The related case of co-defendant Jacob Malone Fracker, Cr. No. 21-00034-002 concluded on August 23, 2022, with the judgment of the district court (Honorable Judge Christopher R. Cooper) imposing a sentence of 12 months of probation for violation of 18 U.S.C. § 371.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..............i

TABLE OF AUTHORITIES ...................................................................................v

JURISDICTIONAL STATEMENT ......................................................................vii

STATUTES AND RULES ...................................................................................viii

ISSUES PRESENTED FOR REVIEW ...................................................................1

STATEMENT OF FACTS .......................................................................................1

     A.  Nature of the Case, Course of Proceedings and Disposition
in the Court below ...................................................................................................1

        Statement of Facts...................................................................................4

            (i) Government case-in-chief................................................................4

            (ii) Defense case ...................................................................................9

            (iii) Government rebuttal.......................................................................9

SUMMARY OF THE ARGUMENT .....................................................................10

ARGUMENT...........................................................................................................12

     1.     Because it did not establish that Robertson acted
          "corruptly," the evidence was insufficient to sustain his
          conviction for violating 18 U.S.C. § 1512(c)(2) .................................12

         A.     Standard of Review.................................................................12

         B.     The term "corruptly" in 18 U.S.C. §
              1512(c)(2) requires  proof of a defendant's
              dishonest intent to benefit himself or another ..........................12

2.    The district court erred in imposing eight-level and three-level sentence enhancement under U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2), because Robertson did not obstruct the "administration of justice" ................................................21

A.    Standard of Review....................................................................21

B.    The term "administration of justice" does not encompass Congress's certification of electoral votes ........................................................22

CONCLUSION.......................................................................................29

CERTIFICATE OF LENGTH....................................................................29

CERTIFICATE OF SERVICE ...................................................................30

ADDENDUM .........................................................................................31

# TABLE OF AUTHORITIES

**Cases:**

*\* Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) ........................17-18

*Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F.Supp. 3d 1
    (D.D.C. 2014) ...................................................................................................17

*Eastman v. Thompson*, 594 F.Supp. 3d 1156 (C.D. Cal. 2022) .............................16

*Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997)...................................................17

*Hoai v. Sun Refining and Marketing Co.*, 1991 WL 242116 (D.D.C. 1991)...........17

*In re Chief Executive Officers Club, Inc.*, 359 B.R. 527
    (Bankr. Ct. S.D.N.Y. 2007) ...........................................................................17

*Heffernan v. City of Patterson, N.J.*, 578 U.S. 266 (2016) ....................................16

*John Doe v. Metropolitan Police Dep't of the District of Columbia*,
    445 F.3d 460 (D.C. Cir. 2006) ....................................................................16-17

*Kelly v. United States*, __U.S. __, 140 S.Ct. 1565 (2020) .....................................19

*Maryland v. King*, 569 U.S. 435 (2013) .................................................................16

*Stichting Ter Behartiging Van de Belangen v. Schreiber*,
    327 F.3d 173 (2d Cir. 2003) .........................................................................19

*\* United States v. Aguilar*,  515 U.S. 593 (1995) ..........................15, 18, 19, 27, 28

*United States v. Caldwell*, 581 F. Supp. 1 (D.D.C. 2021) .....................................14

*United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011) ....................................18-19

*United States v. Johnson*, 561 F.2d 832 (D.C. Cir. 1977) ......................................16

*United States v. McGill*, 815 F.3d 846 (D.C. Cir. 2016) .........................................12

v

*United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022)................................12-13

*United States v. Miller*, __F. Supp. 3d __ , 2022 WL 1718984
    (D.D.C. May 27, 2022)...................................................................................14

*United States v. Mostofsky*, 579 F. Supp. 9 (D.D.C. 2021)................................ 14-15

*United States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021) ...............................18

*United States v. Reffitt*, __F.3d __, 2021 WL 1404247 (D.D.C. 2022) .................15

*United States v. Rubenacker*,  21-cr-193 (May 26, 2022 Transcript) .....................25

*United States v. Sandlin*, 575 F.Supp. 3d 16 (D.D.C. 2021) ...........................14, 15

* *United States v. Seefried*, __F.Supp. 3d __,
    2022 WL 16528415 (D.D.C. Oct. 29, 2022) ...........................................23-28

*United States v. Turner*, 21 F.4th 862 (D.C. Cir. 2022)...........................................21

*United States v. Waller*, 426 F.3d 838 (6th Cir. 2005) ............................................16

**Statutes and other authorities:**

3 U.S.C. § 15 ..............................................................................23

18 U.S.C. § 922(g) .......................................................................17

18 U.S.C. § 1503 .........................................................................24

18 U.S.C. § 1512(c)(2).............................................................*passim*

18 U.S.C. § 1956 .........................................................................17

U.S.S.G. § 2J1.2...................................................................*passim*

Fifth Circuit Pattern Jury Instruction, 18 U.S.C. § 1503 .......................18

Select Committee to Investigate the January 6th Attack on the United States Capitol, *Introductory Material to the Final Report* ...........................................15-16

S. Rep. No. 95-114 (1977)................................................................19

Ballentine's Law Dictionary (3d. ed. 1969) ........................................25

Black's Law Dictionary (11th ed. 2019)..........................................23, 24

Declaration of Independence ...........................................................28

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231. A timely notice of appeal having been filed, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATUTES AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and Circuit Rule 28(a)(5), pertinent constitutional provisions, statutes, and rules are set forth in the Addendum to this brief.

## ISSUES PRESENTED FOR REVIEW

**Issue I**: Was the evidence insufficient to convict Robertson of violating 18 U.S.C. § 1512(c)(2), because this statute requires proof that a defendant acted "corruptly," and, here, there was no evidence that Robertson acted dishonestly to obtain a benefit for himself.

**Issue II**: Did the district court misinterpret U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) when it imposed these Guideline sentence enhancements, because both enhancements require a showing that Robertson obstructed the "administration of justice," proceedings which are distinct from Congress' electoral college count.

## STATEMENT OF THE CASE

### A.     Nature of the Case, Course of Proceedings, and Disposition in the Court below.

The six-count Second Superseding Indictment ("Indictment") charged that on January 6, 2021, Robertson corruptly obstructed Congress's certification of the Electoral College vote, in violation of 18 U.S.C. § 1512(c)(2) (Count 1); interfered with law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3) & (2) (Count 2); knowingly entered a restricted building where the Vice-President was, and did carry a deadly and dangerous weapon, that is, a large wooden stick, in violation of 18 U.S.C. § 1752(a)(1) & (b)(1)(A) (Count 3); knowingly impeded the orderly conduct of Government business, and carried a deadly and dangerous weapon, that is, a large wooden stick, in violation of 18 U.S.C. § 1752(a)(2) & (b)(1)(A) (Count 4); engaged in disorderly and disruptive

1

conduct in a Capitol Building with the intent to disturb the orderly conduct of Congress, in violation of 18 U.S.C. § 5104(e)(2)(D) (Count 5); and destroyed an object, that is, one or more cell phones, with the intent to impair the grand jury investigation into the attack on the Capitol on January 6, 2021, and the federal prosecution of Robertson, in violation of 18 U.S.C. § 1512(c)(1) (Count 6). Appendix A001-A0004 ("A0001" is the format of this Brief's citation to the page numbers of the accompanying Appendix of Appellant. Occasional "DE" citations in the Brief refer to documents cited in the brief but not included in the Appendix. *See* Fed. R. App. P. 30(c)(2)).

Prior to trial, Robertson moved to dismiss Count 1 of the Indictment. DE52. Count 1 charged a violation of 18 U.S.C. § 1512(C)(2), which provides:

> Whoever corruptly –
>
> 1.    Alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> 2.    Otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned.

Robertson argued, *inter alia*, that the word "corruptly" in § 1512 is too vague to provide him with fair notice that his conduct violated this statute. DE52:9. The district court denied the motion, finding that "corruptly" means "acting 'with consciousness of wrongdoing." DE63:11 (stating that "corruptly" means acting "unlawfully and with the intent to obstruct").

At the conclusion of a six-day trial, the jury convicted Robertson on all six counts of the Indictment.  DE102.  Post-trial, Robertson moved for a judgement of acquittal on counts 1, 3 and 4.  A035.  As to Count 1, Robertson argued that a "corrupt" intent means "the intent to obtain an improper advantage for oneself or someone else."  A038 (citation omitted).  Robertson argued that no reasonable juror could find that Robertson acted "corruptly."  A039 ("It's only [Robertson's] mere presence that the Government relies on to find that he acted corruptly.").  Robertson argued that the evidence showed that he walked into the Capitol and went into the Crypt – but there were no words or actions that indicate "corruption."

With regard to Counts 3 and 4, Robertson argued that there was no evidence that he carried "a deadly or dangerous weapon.  A040.  Robertson acknowledged that he used a stick "at Port Arms," but emphasized that there was no evidence "that he used [the stick] in a deadly or dangerous way."  A040.  The district court denied this post-trial motion.  A043.

As to Count 1, the district court stated that "corruptly" meant "'the defendant must use unlawful means or act with an unlawful purpose, or both. The defendant must also act with 'consciousness of wrongdoing,' meaning 'with an understanding or awareness that what the person is doing is wrong."  A050-51. (quoting jury instructions, DE86:12).  The district court stated that, at trial, the evidence of "corrupt intent" included evidence that Robertson "packed gas masks" and "brought a large wood stick."  A051.  Robertson also "resisted or impeded [law enforcement] officers when they were coming through the crowd."  A051.  Further, once the

3

situation got "out of hand," Robertson remained with the crowd and joined the first wave of people who made their way to the Upper West Terrace to enter the Capitol building." A051-52. Then, Robertson advanced to the Crypt area, and banged his stick along with the chants of the crowd. A052. The district court concluded that this evidence sufficed to support the jury's verdict on Count 1. A052.

Turning to Counts 3 and 4, the district court concluded that the jury could find that Robertson's act of holding his stick in port arms "evinced his intent to use [it] as a means of force if he came into a confrontation with the officers . . . even though he ultimately did not use the stick in that way." A056. Robertson filed this timely appeal.

### B.    Statement of Facts.

#### (i) Government case-in-chief.

The government's proof relied on video, taken by surveillance cameras at the Capitol or by body cameras worn by District of Columbia police officers during the January 6, 2021 incident on Capitol Hill, involving Congress' counting the Electoral College votes for President. One video showed a man wearing a gas mask, holding a stick in a position called "port arms." DE108:523. This man was directly in front of police officers, blocking their path. DE108:524. The defense acknowledged that this man was Robertson. DE108:541.

Jacob Fracker, who was originally charged as Robertson's co-defendant in the case, pled guilty to conspiracy as a result of his conduct on January 6, and testified for the government. DE109:676, 680.    Fracker worked with Robertson at the

4

Rocky Mount, Virginia, police department; Fracker was a police officer and Robertson was his patrol sergeant.   DE109:677.   On January 6, 2021, with Robertson and a neighbor of Robertson's, Fracker drove to Washington, D.C. DE109:677.   Fracker had a cell phone with which he took photos and videos on January 6, but he no longer has it after he handed it to Robertson.  DE109:678.

Fracker testified that Robertson believed that the 2020 election had been "rigged."   DE109:688.   Fracker identified a Facebook post by Robertson which stated:

> A legitimate republic stands on 4 boxes.  The soap box, the ballot box, the jury box, and then the cartridge box.  We just moved to step 3.  Step 4 will not be pretty.  I cannot speak for others, but being disenfranchised by fraud is my hard line.  I've spent most of my adult life fighting a counterinsurgency.  I'm about to become part of one and a very effective one.

DE109:690; Gov't Ex. 100A.

A few days prior to January 6, Robertson made plans to drive up Washington D.C., with Fracker and a neighbor; a four-hour drive from Rocky Mount. DE109:693.  Robertson supplied three gas masks, and brought a stick.  DE109:694. The three drove up in a car supplied by Robertson.   DE109:694.   Fracker and Robertson drove up with their badges and guns but, at Robertson's suggestion, left them in the car when they arrived near D.C.  DE109:697.

The three men took the Metro to the National Mall, where they heard speeches.  DE109:697.   With a crowd, the three men then walked to the Capitol DE109:699.  "The protesters outnumbered the police by a lot."  DE109:699.  Fracker

5

identified Robertson in a photo, wearing a gas mask and holding a stick in the "port arms" manner.  DE109:704-05; Gov't Ex. 201C.

After a number of people breached a scaffolding near the Capitol, Robertson and Fracker when up the stairs to a courtyard area.  DE109:709.  On a video taken at this time by Fracker from his phone, Fracker identified Robertson, wearing a gas mask, holding a stick.  DE109:713; Gov't Ex. 101C.

Fracker went inside the Capitol.  DE109:721.  Fracker took a video that he posted on Facebook.  DE109:724.  Fracker identified Robertson on a video entering the Capitol, with a stick.  DE109:724.  Fracker again identified Robertson on another video, in the "statue room" (also known as the Crypt).  DE109:728-29.  Fracker took a selfie photo of Robertson and himself inside this room.  DE109:733; Gov't Ex. 103.  Fracker also identified a photo taken by Robertson in the same room.  DE109:735.  At one point, the crowd started chanting, and Robertson was tapping his stick along to the clapping.  DE109:736.

Later, police officers arrived and told Fracker and Robertson to leave, and both men left the Capitol.  DE109:738.  After Fracker and Robertson got out of the building, their mood was "excited."  DE109:743.  Fracker "felt like we had maybe been heard by whoever it was we needed to be heard by . . . [t]o maybe possibly have the election results overturned."  DE109:744.  Robertson and Fracker drove back to home, with Robertson's neighbor.  DE109:744.

In the days after January 6, Fracker posted on social media about the events of that day, because he "felt like I took a step in making a difference in the election

6

results." DE109:751. In one of his posts, Fracker wrote: "Not like I did anything illegal." DE109:754-55.

On January 13, 2021, Fracker got a call from the FBI, telling him there were warrants for his arrest. DE109:746. Robertson said he also got the same phone call. DE109:747. At Robertson's suggestion, Fracker went to Robertson's house, where, after Robertson asked for it, he handed his phone to Robertson. DE109:747. Fracker gave Robertson his phone "so I wouldn't get caught with incriminating photos and videos." DE109:748. At some point, Robertson said "problem solved" about the phone. DE109:748. Fracker understood that his phone "[j]ust didn't exist anymore." DE109:750. Robertson paid Fracker $30,000. DE109:750.

Fracker's direct testimony concluded as follows:

> Q. Can you explain how you feel sitting here today?
>
> A. I feel weird. The person in those videos and the photos and that day -- at the time it was all fun and games. Here lately I've had it actually presented to me and shown to me for what it is. And that's not the person I am. That's not how I act. Like, I don't do those things. I don't behave like that. I wasn't raised like that. Like, I know for a fact my mom would slap me in the face if she had saw what I was doing that day. And so I sit here today just ashamed of my actions. I didn't have to do all that stuff, but I did.

DE109:756.

On cross-examination, Fracker testified that when Robertson is seen with a stick on a video, he is using the stick as a "walking stick." DE110:809. Fracker only saw Robertson using the stick in the "port arms" position on a single occasion.

DE110:809.  Fracker testified that beyond protesting, he would not have physically done something that would have stopped Congress.  DE110:812.

During the testimony of FBI Agent Kathryn Camiliere, the government introduced in evidence stipulations regarding the fact that (1) the events of January 6, 2021, at the Capitol, obstructed interstate commerce; (2) U.S. Capitol police are officers of the United States government; (3) Metropolitan Police Department officers were assisting Capitol Hill police on January 6, 2021; and (4) the events of January 6, 2021 affected a federally protected function, namely the protection of the Capitol by Capitol Hill police.

Camiliere testified that a search of Robertson's posts on the social media site AR-15.com included the following post:

> I've seen for the first time in my life ..... A government scared of its people.  The pictures of them huddled in the floor crying is the most American thing I have ever seen. Regardless of what else happens those Senators and Congressmen now understand who they truly are accountable to in the end.  They have paid lip service to "Working for the people' for so long its become a hollow phrase.  They have been reminded.

DE110:802; Gov't Ex. 102A.

Camiliere also identified a January 15, 2021 text message from Robertson to "MW" stating "Anything that may have been problematic is destroyed." DE110:897; Gov't Ex. 314A.  In response to a January 15, 2021 text message from "MW" asking whether Robertson's phone hadn't been seized, Robertson answered: "Including my old phone."  DE110:899.  A message the same day to "MW" from

8

Robertson added "Took a lake swim." DE110:900. Another message added: "And later had a tragic boating accident." DE110:900.

On redirect examination, Camiliere testified that when the stick was seized from Robertson, Robertson identified it as a "flagpole." DE110:914.

### (ii)    Defense case.

Edward Lavado, a police officer in the same police department as Robertson, testified that when Robertson came back from military service overseas he had been blown up and "had a piece of shrapnel in his right leg." DE111:944. For time, Robertson had "an actual cane" to lean on. DE111:944. Robertson had "a stick sometimes that he would lean on" at the police trainings. DE111:944. Robertson had the stick "[b]ecause of that injury to his leg. I mean, it's a big injury." DE111:945.

### (iii)    Government rebuttal.

On rebuttal, Camiliere testified identified an April 5, 2021 message from Robertson to Ed Buckley, which stated: "I'm 48. My kids are adult and I can still run a 16 minute 2 mile with a 30 pound pack. I'm as dangerous as I'll ever be." DE111:951; Gov't Ex. 3000.

## SUMMARY OF THE ARGUMENT

**Issue I**: Robertson was convicted of Count 1, which charged him with violating 18 U.S.C. § 1512(c)(2) by "corruptly" obstructing, influencing or impeding an official proceeding. Rejecting Robertson's motion for judgment of acquittal, the district court reasoned that the term corruptly means that a defendant acted "unlawfully . . . with consciousness of wrongdoing." The district court found that Robertson's conduct met this definition. But this interpretation of "corruptly" is incorrect because it is too broad, as one's conduct, if done "unlawfully . . . with consciousness of wrongdoing," need not be *criminal*.

The term "corruptly" means that a person acted dishonestly, with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person. Looking back on January 6, there may well be persons who acted "corruptly" – persons like President Donald Trump himself and his closest advisers, who were acting dishonestly, to benefit themselves. But Robertson did not act "corruptly" on January 6. He openly expressed his belief that he had been disenfranchised by fraud during the counting of the voting results of the 2020 Presidential election. Roberston was not out to benefit himself. Any hope of benefit for President Trump was too remote from Robertson's conduct to make this conduct criminally corrupt.

**Issue II**: When it calculated Robertson's Guideline sentence under the Federal Sentencing Guidelines, the district court imposed an 8-level enhancement under U.S.S.G. § 2J1.2(b)(1)(B), and an additional 3-level enhancement under

10

U.S.S.G. § 2J1.2(b)(2), based on a finding that Robertson obstructed "the administration of justice." The term "administration of justice," however, does not encompass Congress' certification of electoral votes. The term "administration of justice" refers to a judicial or quasi-judicial tribunal that applies the force of the state to determine legal rights.

## ARGUMENT

**1.    Because it did not establish that Robertson acted "corruptly," the evidence was insufficient to sustain his conviction for violating 18 U.S.C. § 1512(c)(2).**

### A.    Standard of Review.

This Court reviews the sufficiency of the evidence *de novo*. *United States v. McGill*, 815 F.3d 846, 945 (D.C. Cir. 2016).

### B.    The term "corruptly" in 18 U.S.C. § 1512(c)(2) requires proof of a defendant's dishonest intent to benefit himself or another.

Count 1 of the Indictment charged that Robertson "attempted to and did, corruptly obstruct, influence and impede an official proceeding," in violation of 18 U.S.C. § 1512(c)(2). A001. This statute, captioned "Tampering with a witness, victim or informant," provides in pertinent part as follows:

(c) Whoever *corruptly* –

(1)    alters, mutilates, destroys or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding;

(2)    otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).

12

This Court has already received briefs, and heard oral argument, regarding the applicability of § 1512(c)(2) to defendants involved in the January 6, 2021 events on Capitol Hill, in Case No. 22-3041, the appeal of *United States v. Miller*, 589 F. Supp. 3d 60 (D.D.C. 2022).   In *Miller*, Judge Carl J. Nichols concluded that "§ 1512(c)(2) . . . requires that the defendant must have taken some action with respect to a document, record or other object in order to corruptly obstruct, impeded, or influence an official proceeding." *Id*. at 78.   Robertson agrees that § 1512(c)(2) requires that a defendant took some action with respect to a document, record or other object in order to corruptly obstruct, impede, or influence an official proceeding, and, accordingly, hereby adopts by reference the arguments of the appellees in *Miller*, and respectfully requests that in the event this Court adopts Judge Nichols' reasoning and holds that § 1512(c) does not apply to defendants involved in the January 6, 2021 events on Capitol Hill, Robertson benefit from this ruling.   Robertson specifically requests that, in the event it affirms *Miller*, or reaches a like decision in another like case, this Court vacate his Count 1 conviction, because he is similarly-situated to the defendants in *Miller*: as the statement of facts above indicates, Robertson took no action with respect to a document, record or other object in order to corruptly obstruct, impede or influence an official proceeding.

If this Court reverses Judge Nichols' decision in *Miller*, Robertson submits that his § 1512(c)(2) conviction is invalid for a separate reason, not addressed in *Miller*: the term "corruptly" in this statute does not reach Robertson's conduct.   (In his decision denying the government's motion for reconsideration, Judge Nichols

expressly stated that he was "not now interpret[ing] 'corruptly.'" *United States v. Miller*, __F. Supp. 3d __ , 2022 WL 1718984 at * 5, n. 3 (D.D.C. May 27, 2022).

When it denied Robertson's motion for judgment of acquittal as to Count 1, the district court rejected his argument that the term "corruptly" means "dishonestly," (A035), citing to the conclusion in *United States v. Caldwell*, 581 F. Supp. 1, 19-20 (D.D.C. 2021) that the term "corruptly" means "acted with consciousness of wrongdoing," and to the conclusion in *United States v. Sandlin*, 575 F.Supp. 3d 16, 34 (D.D.C. 2021), that "corruptly" means "unlawfully, with the intent to obstruct." A047.   Other courts have agreed with *Sandlin*'s conclusion that "corruptly" means "unlawfully."  *See United States v. Reffitt*, __F.3d __, 2021 WL 1404247 at * 4 (D.D.C. 2022) ("To act 'corruptly,' the defendant must use unlawful means or act with an unlawful purpose.") (discussing *Sandlin*); *United States v. Mostofsky*, 579 F. Supp. 9, 26 (D.D.C. 2021) ("The Court concurs with how the court defined 'corruptly' in *Sandlin* – *i.e.*, requiring that defendants acted 'unlawfully, and with the intent to obstruct, impede, or influence an official proceeding.'" ).

The problem with equating the term "corruptly" with terms like "unlawfully," or "with consciousness of wrongdoing," is that they substitute meanings that are too broad, because "unlawfully" or "with consciousness of wrongdoing" encompass both *criminal* and *non-criminal* conduct.  Properly construed, the term "corruptly" has the narrower meaning the Supreme Court cited in *Andersen*, and that Justice Scalia identified in *United States v. Aguilar*.  *See Arthur Andersen LLP v. United*

*States*, 544 U.S. 696, 706 (2005) (citing approvingly the Fifth Circuit Pattern Jury Instruction for 18 U.S.C. § 1503 that "defined 'corruptly' as 'knowingly and *dishonestly* with the specific intent to subvert or undermine the integrity' of a proceeding.") (emphasis added); *United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J. concurring) (emphasis added) ("[a]n act is done corruptly if it's done voluntarily and intentionally either to bring about an unlawful result or a lawful result by some unlawful method, *with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person*."). Under these meanings of "corruptly," one can hypothesize January 6 prosecutions of persons who violated § 1512(c)(2) because they acted dishonestly in the hope of benefitting themselves. *See* Select Committee to Investigate the January 6th Attack on the United States Capitol, *Introductory Material to the Final Report* (available at https://january6th.house.gov/report-executive-summary) pp. 594-613 (making a criminal referral to the Department of Justice for President Trump's prosecution under § 1512(c)(2), based on his dishonesty in declaring himself the winner of the 2020 Presidential election); *Eastman v. Thompson*, 594 F.Supp. 3d 1156, 1195 (C.D. Cal. 2022) ("Dr. Eastman likely acted *deceitfully and dishonestly* each time he pushed for [an electoral college vote] plan that he knew was unsupported by law.").

For a defendant like Robertson, however, equating "corruptly" with "unlawfully," gives too broad a meaning to the term "corruptly." "Unlawfully" encompasses non-criminal tortious activity, or even activity that is non-tortious but just a violation of a person's constitutionally-protected expectation of privacy, or

property. *See*, *e.g.*, *United States v. Johnson*, 561 F.2d 832, 845 (D.C. Cir. 1977) (en banc) (Leventhal, J., concurring) (to determine whether an "entry" is "unlawful" under the Fourth Amendment, the "salient question" is not whether it was a "technical trespass" but whether it "was encroaching on a reasonable expectation of privacy"); *Heffernan v. City of Patterson, N.J.*, 578 U.S. 266, 273 (2016) (addressing whether an employee's demotion was "unlawful action under the First Amendment"); *United States v. Waller*, 426 F.3d 838, 848 (6th Cir. 2005) (discussing a Tenth Circuit precedent which held that the police's search of a suitcase was "unlawful" because it violated its owner's expectation of privacy); *See also Maryland v. King*, 569 U.S. 435, 439 (2013) (addressing whether the police's cheek swab to obtain DNA was an "unlawful seizure"); *John Doe v. Metropolitan Police Dep't of the District of Columbia*, 445 F.3d 460, 463 (D.C. Cir. 2006) (a D.C. statute that encompasses both civil and criminal violations, in effect, "makes it unlawful" for any person under 21 to consume alcohol, or for a person to dispense alcohol to any person under 21).

Here, the district court found that, based on possession of a stick, a dangerous weapon, Robertson "intended to use violence on January 6th, which is indicative of using *unlawful means* or acting *with unlawful purpose*." A051 (emphasis added). The district court further reasoned that Robertson acted "corruptly" because he engaged in "lesser-included" offenses, such as remaining in a restricted area without lawful authority, or disorderly conduct. A051. In so reasoning, however, the district court, in effect, read into the statute a set of *predicate* criminal offenses, the

commission of which can trigger criminal liability under § 1512(c)(2) – *e.g.*, "using unlawful means"; "acting with unlawful purpose"; "remaining in a restricted area without lawful activity"; "disorderly conduct."  But § 1512(c)(2) statute does not cross-reference "using unlawful means," or being guilty of "disorderly conduct," or any other of the predicates the district court listed.  When Congress intends for predicate criminal offenses, conduct, or status, to trigger criminal liability for certain conduct, it expressly specifies the predicate offense, conduct or status.  *See* 18 U.S.C. § 922(g)(1) - (9) (listing the specific classes of persons for whom possession of a firearm is a felony); 18 U.S.C. § 1956(c)(7)(A) - (G) (listing the categories of "specified unlawful activity" that transform financial transactions into criminal "money laundering").  This need for specificity is particularly compelled here, because the activity that is criminalized – "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] an official proceedings" – touches on First Amendment-protected protests of Congressional activity.  Congress might well write a statute that makes "disruptive and disorderly conduct" at the Capitol (A051) the basis for criminal charges for "corruptly . . . obstructing" its proceedings. But § 1512(c)(2) does not so specify.

The facts of the present case strongly confirm the need for an express statutory cross-reference.   Once inside the Capitol, Robertson only went to an area to which the public has access – the Crypt.  DE109:728-29.  He did not go into any offices, or into a chamber of Congress.  He stole nothing.  He destroyed nothing.  He

did not assault anyone.  Robertson was a police officer, with a criminal history of zero (no prior arrests, no traffic infractions).  PSI ¶¶ 80-83.

The district court equated "corruptly" with the term "consciousness of wrongdoing," but this term also extends too readily to non-criminal activity.  *See*, *e.g.*, *Hoai v. Sun Refining and Marketing Co.*, 1991 WL 242116, * 1 (D.D.C. 1991) (under the Petroleum Marketing Practices Act, a franchisee's claim for exemplary damages against its franchisor for willful disregard of the Act must show "consciousness of wrongdoing") (unpublished); *In re Chief Executive Officers Club, Inc.*, 359 B.R. 527, 542 (Bankr. Ct. S.D.N.Y. 2007) (holding executive in civil contempt because "by back-dating the check [he] showed consciousness of wrongdoing").[1]

Moreover, although "consciousness of wrongdoing" might satisfactorily describe a criminal state of mind for some crimes, this term is inapt when applied to the persons on Capitol Hill on January 6, and now charged with violating § 1512(c)(2).  Fracker candidly testified (for the government) that, though he's since changed his mind, "at the time [January 6] it was all fun and games."  DE109:756.  Robertson believed that the 2020 election had been "rigged" and felt that he had

---

[1]  *United States v. Nordean* equated "corruptly" with "wrongfully," stating: "a defendant can act 'wrongfully' – *i.e.* 'corruptly' – through either his means or his purpose." 579 F. Supp. 3d 28, 50 (D.D.C. 2021).  But the term "wrongfully" similarly encompasses swaths of non-criminal activity.  *See*, *e.g.*, *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997) (adjudicating complaint that professor was "wrongfully denied tenure and promotion"); *Compton v. Alpha Kappa Alpha Sorority, Inc*., 64 F.Supp. 3d 1, 6 (D.D.C. 2014) (adjudicating complaint that student was "wrongfully" denied membership in a sorority).

been "disenfranchised by fraud." DE109:690. Admittedly, Robertson was convicted of obstruction of justice based on evidence that on January 13, 2021, *after* January 6, once he learned that the FBI was investigating him, Robertson got rid of both Fracker's and his own cell phone. DE109:746-47. But this post-January 13 conduct does not demonstrate "consciousness of wrongdoing" in the alleged "intent to obstruct" the January 6 official proceeding. *See Andersen*, 544 U.S. at 707 (requiring a "nexus" between the defendant's conduct and the proceeding to be obstructed).

In its order denying Robertson's motion for a judgment of acquittal, the district court noted that *Andersen*, 544 U.S. at 705-06, used the term "consciousness of wrongdoing." A046. But *Andersen* used this term when it held that the trial court's jury instructions on 18 U.S.C. § 1512(b) were inadequate because they "failed to convey the *requisite* consciousness of wrongdoing." 544 U.S. at 706 (emphasis added). This statement did not imply that the term "consciousness of wrongdoing" identified the *mens rea* to prove that a defendant "knowingly . . . corruptly" engaged in the prohibited conduct: *Andersen* expressly declined to address the "outer limits" of § 1512(b)'s "knowingly . . . corruptly persuade" *mens rea*. *Id*. (brackets omitted). *Andersen* noted that the Fifth Circuit Pattern Jury Instruction for 18 U.S.C. § 1503 "defined 'corruptly' as knowingly and dishonestly with the specific intent to subvert or undermine the integrity' of a proceeding." *Id*. at 706. The elimination of this language in the trial court's jury instruction was

19

"significant," because, without this language, the instruction "[n]o longer was any type of 'dishonesty' necessary to a finding of guilt." *Id.* (brackets omitted).

Thus, the *Andersen* decision suggests that a "type of dishonesty" is required meet the *mens rea* of acting "corruptly." As noted above, *Andersen*'s suggestion that "corruptly" involves some type of dishonesty is consistent with other authorities. *See Aguilar*, 515 U.S. at 616-17 (Scalia, J. concurring) (quoting approvingly the district court's jury instruction that "[a]n act is done corruptly if it's done voluntarily and intentionally either to bring about an unlawful result or a lawful result by some unlawful method, *with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person*.") (emphasis added); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (a violation of § 1512(c)(2) requires proof of engaging in conduct "knowingly and *dishonestly* with the specific intent to subvert, impede or obstruct [the proceeding].") (emphasis added); *Stichting Ter Behartiging Van de Belangen v. Schreiber*, 327 F.3d 173, 182 (2d Cir. 2003) (noting that the legislative history of the Foreign Corrupt Practices Act noted that "[t]he word 'corruptly' is used . . . to make clear that the offer, payment, promise, or gift, must be intended to induce the recipient *to misuse his official position* in order to wrongfully direct business to the payor or his client, or to obtain preferential legislation") (quoting S. Rep. No. 95-114, at 10 (1977)); *see also Kelly v. United States*, __U.S. __, 140 S.Ct. 1565, 1574 (2020) (public officials' re-routing of traffic on the George Washington Bridge did not constitute "fraud," but their deceptive "cover story" was a "corrupt act"); DE86:13 (trial court's jury

instructions instruct that when an individual "obstructs or impedes a court proceeding *by bribing a witness* to refuse to testify in [a] proceeding . . . [he] does act *corruptly*."  (emphasis added).

In sum, "corruptly" means an act dishonestly done "with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person."  *Aguilar*, 515 U.S. at 616-17 (Scalia, J. concurring).

In the present case, Robertson was not dishonest. Prior to January 6, Robertson openly posted on Facebook that he had been "disenfranchised by fraud" in the 2020 Presidential election.  DE109:690; Gov't Ex. 100A.  On January 6, once inside the Capitol, Robertson posed for a selfie, with Fracker.  DE109:733; Gov't Ex. 103.  Fracker later wrote in a social media post: "Not like I did anything illegal." DE109:754-55.  Robertson posted on social media (DE110:802; Gov't Ex. 102A):

> I've seen for the first time in my life ..... A government scared of its people.  The pictures of them huddled in the floor crying is the most American thing I have ever seen. Regardless of what else happens those Senators and Congressmen now understand who they truly are accountable to in the end.  They have paid lip service to "Working for the people' for so long its become a hollow phrase.  They have been reminded.

Robertson's acts on January 6 were not dishonestly done for financial gain or benefit to himself.  Any hoped for benefit to President Trump was too remote from Robertson – a police officer in Rocky Mount, Virginia, holding a stick at the Capitol – to qualify this conduct as acting "corruptly." In sum, if Robertson obstructed, impeded or influenced an official proceeding, he did not do so "corruptly."  The Count 1 conviction should be reversed.

21

**2.     The district court erred in imposing eight-level and three-level sentence enhancement under U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2), because Robertson did not obstruct the "administration of justice."**

**A.     Standard of Review.**

This Court reviews *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Turner*, 21 F.4th 862, 865 (D.C. Cir. 2022).

**B.     The term "administration of justice" does not encompass Congress's certification of electoral votes.**

The PSI recommended the imposition of an 8-level sentence enhancement on the basis of a Federal Sentencing Guideline that recommends this enhancement if "the offense involved causing or threatening to cause physical injury to a person, or property damage, *to obstruct the administration of justice*. PSI ¶ 58 (citing U.S.S.G. § 2J1.2(b)(1)(B)) (emphasis added)). The PSI recommended an additional 3-level enhancement for an offense that "resulted in substantial interference with *the administration of justice*." PSI ¶ 3 (emphasis added) (citing U.S.S.G. § 2J1.2(b)(2)). Prior to sentencing, Robertson objected to these enhancements, pointing out that the Guideline commentary to § 2J1.2 provides:

> "Substantial interference with the administration of justice" includes a premature or improper termination of a felony investigation, an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources.

DE121:1-4 (quoting U.S.S.G. § 2J1.2, comment. n. 1.). (At sentencing, Robertson again objected to these enhancements, pointing that he was not involved in a "premature or improper termination of a felony investigation." A068. The district

22

court overruled Robertson's objections, noting other similar cases in which the enhancements had been applied, and ruling as follows:

> THE COURT: Okay. The Court finds that the enhancement applies. The offense did result in a substantial interference given both the delay that the riot caused in the certification proceeding, which is the proceeding at issue, and the expenditure of substantial resources that was necessary to fix the damage that was done to the Capitol.

A071-72.    The district court imposed a within-Guidelines sentence of 87 months, based on a total offense level of 29, which included both the §§ 2J1.2(b)(1)(B) and (b)(2) enhancements of 8-levels and 3-levels, respectively, noting: "if I were just assessing your conduct at the Capitol, I would conclude that that eight-level enhancement, which, again, more than doubles your potential sentence, overstates . . . the seriousness of your activity, and I would likely give you a below guidelines sentence."    A077.    However, the district court added that it imposed the 8-level enhancement based on Robertson's post-January 6 statements, including that he fact that Robertson advocated violence, destroyed evidence, and continued to possess weapons in violation of his release conditions.    A079.    Robertson maintains that the district court of a sentence within the Guidelines range based on the §§ 2J1.2(b)(1)(B) and (b)(2) enhancements was erroneous, because his acts did not obstruct the "administration of justice."

In *United States v. Seefried*, __F.Supp. 3d __, 2022 WL 16528415 (D.D.C. Oct. 29, 2022), Judge McFadden recently ruled that the U.S.S.G. §§ 2J1.2(b)(1)(B)

and (b)(2) 8-level and 3-level enhancements did not apply to a January 6 defendant "because the electoral certification does not involve the 'administration of justice.'"

*Seefried* noted that Black's Law Dictionary defines the phrase "administration of justice" as "[t]he maintenance of right within a political community by means of the physical force of the state."  2022 WL 16528145 at * 2 (quoting *Administration of Justice*, Black's Law Dictionary (11th ed. 2019)).  In addition, the term "due administration of justice" is defined as "[t]he proper functioning and integrity of a court or other tribunal and the proceedings before it in accordance with the rights guaranteed to the parties."  *Id*. (quoting *Administration of Justice*, Black's Law Dictionary (11th ed. 2019)).  *Seefried* noted: "These definitions suggest that the 'administration of justice' involves a judicial or quasi-judicial tribunal that applies the force of the state to determine legal rights."

*Seefried* reasoned that the electoral college certification by Congress "does not share the characteristics" of the definitions of administration of justice.  *Id*.  Citing the procedures required by 3 U.S.C. § 15, which include making a list of the votes, *Seefried* found that this certification is "largely a ceremonial proceeding where Members [of Congress] and staff open, read, list, and announce the electoral votes."  *Id*.  "It takes place within the deliberative branch of government – Congress – not the branches that typically exercise judgment (the judiciary), or force (the executive)."  *Id*.  "Congress applies no 'physical force' or 'sanction of force' during the certification."  *Id*.  The proceeding involves "no possibility of punishment by the state."  *Id*.  And it "does not involve 'the proper functioning and integrity of a court

24

or other tribunal . . . in accordance with the rights guaranteed to the parties." *Id*. Unlike judicial or quasi-judicial bodies, the certification "confirms, announces, and officially records whom the people have chose to be President and Vice-President." *Id*.

*Seefried* further noted that Black's Law Dictionary defines "obstructing the administration of justice" and "interfering with the administration of justice" as "[t]he skewing of the disposition of legal proceedings, as by fabricating or destroying evidence, witness-tampering, or threatening or intimidating a judge." *Id*. at * 3 (quoting *Perverting the Course of Justice*, Black Law Dictionary (11th ed. 2019)). *Seefried* pointed out that "[t]he certification does not resemble a trial or similar judicial proceeding where evidence could be falsified or destroyed, witnesses could be tampered with, or a judge could be intimidated so as to interfere with the disposition of parties' legal rights." *Id.*

*Seefried* noted that another federal criminal statute, 18 U.S.C. § 1503, permits prosecution for obstructing the due administration of justice by "threats or force." *Id*. By contrast, the statute of conviction, 18 U.S.C. § 1512, "contains no such language." *Id.*

*Seefried* recognized that other courts have interpreted the term "administration of justice" in § 2J1.2 "more broadly," but disagreed with their interpretations, because they analyzed the meaning of words separately, instead of the terms "administration of justice" taken together. *Id*. Moreover, the word "administration"

25

is defined as "the execution of a law by putting it in effect, applying it to the affairs of men." *Id*. * 4 (quoting Ballentine's Law Dictionary (3d. ed. 1969)).

*Seefried* was "unconvinced" by the reasoning in *United States v. Rubenacker*, 21-cr-193, Tr. at 71-72 (May 26, 2022), that the "physical force of the state" could refer to law enforcement located at the Capitol to secure the proceedings, and that legislators' statutory right to object during the certification can be analogized to evidentiary objections. *Id*.

> The fact that law enforcement is present at an official proceeding—which will often be the case—surely cannot mean that the administration of justice is occurring. Consider a presidential inauguration. Police and Secret Service are present at this official proceeding to protect the incoming President and other distinguished attendees. But no one would say that the inauguration involves the "administration of justice"; it is a ceremonial proceeding that formally installs the Nation's new leader.

*Id*. Moreover, the fact that legislators "have to right to object to the certification . . . does not mean that the certification involves the administration of justice." *Id*.

Turning from the dictionary to the "context," *Seefried* noted that the "customary usage" of a phrase can be assessed by looking at electronic databases. *Id*. *6 & Attachment A. The databases indicated that, during the decade preceding the promulgation of U.S.S.G. § 2J1.2, the term "administration of justice" corresponded with the sense of "a judicial proceeding deciding legal rights." *Id*. "The phrase appeared in conjunction with witness tampering, contempt of court, various evidentiary privileges, the effect of jury instructions on court proceedings, and the conduct of juries." *Id*. The term also referred to issues like "effective"

26

administration of justice "by courts," the violation of ethical rules, perjury and other usages "closely linked with judicial proceedings, or an actor who is intimately involved with the judicial process." *Id*. Other (more infrequent usages) included the rationale for the exclusionary rule, prosecutorial discretion, and roadside intoxication tests. *Id*. These usages did not always involve a formal proceeding, but "contemplate[d] the state's application of force or the government's role in investigating and prosecuting crimes." *Id*. ("there is essentially no evidence that either judges, lawyers, or speakers more generally used the term 'administration of justice' to refer to legislative proceedings like the certification of the electoral count."). Three examples of "administration of justice" occurred outside court proceedings, but "the vast majority of examples in the sample shared certain hallmarks such as action disruptive of, or prejudicial to, a court proceeding." *Id*. * 7.

*Seefried* noted the government's reliance on the final phrase of the Guideline commentary: "the unnecessary expenditure of substantial Governmental or court resources." *Id*. * 8 (citing U.S.S.G. 2J1.2 commentary n. 1). But *Seefried* found that "argument proves too much":

> If courts may enhance an obstruction-related sentence by eleven levels any time the Government can show that the offense caused unnecessary expenditure of its resources, "substantial interference with the administration of justice" could encompass just about anything. Indeed, the Government could theoretically trigger the enhancements at will.

*Id*.

27

Moreover, the government's reliance on the final phrase of the commentary's definition failed to read that phrase "in context." *Id*. The list in the definition "refers to investigations, verdicts, and judicial determinations – all of which involve the coercive force fo the state and the actual or potential determination of legal rights in judicial or enforcement proceedings." *Id*. In context, the definition's reference to "Governmental" resources refers to "*prosecutorial* resources." *Id*. \* 9 (emphasis in original). A broad definition of "Governmental" would "render the phrase 'or court' superfluous." *Id*.

*Seefried* noted that another section of the commentary lists exemplar offenses – such as intimidating a juror, or altering court records – that "evoke traditional notions of judicial or enforcement proceedings . . . [n]one of them relate to a legislative proceeding." *Id*. (the electoral certification "does not qualify for these enhancements because it involves no judicial or quasi-judicial application of force to decide or maintain legal rights.").

Finally, *Seefried* noted that in *Aguilar*, the Supreme Court construed the phrase "due administration of justice" in 18 U.S.C. § 1503 to mean that this term refers to a "judicial or grand jury proceeding." *Id*. (citing *Aguilar*, 515 U.S. at 599). *Seefried* concluded that *Aguilar*, and the reasoning of the circuit courts that have followed *Aguilar*, constitute a "wall of evidence" supporting a reading of the "administration of justice" to involve a "judicial or quasi-judicial proceeding applying the force of the state to decide legal rights." *Id*. \* 10.

28

Further, the use of the term "administration of justice" in the Declaration of Independence refers to King George III's assaults on the independence of the Judiciary. *Id*.

Finally, the government's arguments in *Seefried* and in like cases that the statutory term "official proceeding" is broader than proceedings only involving the administration of justice confirms that "administration of justice" has a narrower meaning. *Id*. * 10-11.

Judge McFadden's reasoning in *Seefried* is highly persuasive. Robertson requests that this Court vacate his sentence enhancements under U.S.S.G. §§ 2J1.2(b)(1)(B) & (b)(2) for obstructing the "administration of justice," and remand his case for resentencing.

## CONCLUSION

For the foregoing reasons, this Court should vacate Robertson's conviction on Count 1, vacate his sentence, and remand for resentencing.

Respectfully submitted,

 /s/ Timothy Cone
Timothy Cone, Esq.
1615 New Hampshire Avenue, N.W.
4th Floor (North)
Washington, D.C. 20009
Tel. (202) 862-4333
timcone@comcast.net

Appointed counsel for Appellant Roberston

29

**CERTIFICATE OF LENGTH**

I CERTIFY that this Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 6,870 words.

/s/ Timothy Cone
Timothy Cone

**CERTIFICATE OF SERVICE**

I CERTIFY that on this 27th day of December 2022,  a copy of the Appellant's Brief (with Addendum) was filed via this Court's electronic filing system and was thereby on Assistant United States Attorney Elizabeth H. Danello, Deputy Chief, Appellate Division, Office of the United States Attorney for the District of Columbia, 555 Fourth Street, N.W., Room 8106, Washington, D.C. 20530 (email address: elizabeth.danello@usdoj.gov).




/s/ Timothy Cone
    Timothy Cone

Appointed Counsel
for Appellant Robertson

## ADDENDUM

**18 U.S.C. § 1512(c):**

(c) Whoever corruptly--

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

**U.S.S.G. § 2J1.2(b):**

(b) Specific Offense Characteristics

(1) (Apply the greatest):

(A) If the (i) defendant was convicted under 18 U.S.C. § 1001; and (ii) statutory maximum term of eight years' imprisonment applies because the matter relates to sex offenses under 18 U.S.C. § 1591 or chapters 109A, 109B, 110, or 117 of title 18, United States Code, increase by 4 levels.

(B) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels.

(C) If the (i) defendant was convicted under 18 U.S.C. § 1001 or § 1505; and (ii) statutory maximum term of eight years' imprisonment applies because the matter relates to international terrorism or domestic terrorism, increase by 12 levels.

(2) If the offense resulted in substantial interference with the administration of justice, increase by 3 levels.

(3) If the offense (A) involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter; or (C) was otherwise extensive in scope, planning, or preparation, increase by 2 levels.