**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-3062

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THOMAS ROBERTSON,

*Defendant-Appellant.*

═══════════════════════

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
═══════════════════════

REPLY BRIEF FOR APPELLANT THOMAS ROBERTSON


District Court                          Timothy Cone, Esq.
Cr. No. 1:21-CR-34 (Cooper, J.)         1615 New Hampshire Avenue N.W.
                                        Washington, D.C. 20009
                                        Tel. (202) 862-4333
                                        timcone@comcast.net

                                        Counsel for Appellant Robertson
                                        Appointed by the Court

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Robertson's § 1512(c)(2) conviction should be reversed . . . . . . . . . 1

        1.    A defense-favorable interpretation of § 1512(c)(2) in *Miller* should apply to Robertson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        2.    To establish that a defendant acted "corruptly," it is not enough, as the government claims, to show that a defendant's conduct was not "innocent or innocuous" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The § 2J1.2(b)(1)(B) enhancement should be vacated . . . . . . . . . . 15

        1.    Because Robertson objected to the imposition of the § 2J1.2 enhancement, "plain error" does not apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    The term "administration of justice" does not refer to Congress' certification of the Electoral College vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF LENGTH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) . . . . . . . . . 6-7, 9, 10

*Bryan v. United States*, 524 U.S. 184 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Elonis v. United States*, 575 U.S. 723 (2015)  . . . . . . . . . . . . . . . . . . . . .  4, 5, 6, 14

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995)  . . . . . . . . . . . . . . . . . . . . . .  17

*In re Kendall*, 712 F.3d 814 (3d Cir. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Liu v. Lynch*, 802 F.3d 69, 75 (1st Cir. 2015)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Rosner v. United States*, 10 F.2d 675 (2d Cir. 1926)  . . . . . . . . . . . . . . . . . . . 17-18

*Ry. Lab. Executives' Ass'n v. U.S.R.R. Ret. Bd*,
    749 F.2d 856 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

* *United States v. Aguilar*, 515 U.S. 593 (1995)  . . . . . . . . . . . . . . . . . . . . .  12, 26

*United States v. Amer*, 110 F.3d 873 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . .  25

*United States v. Brock*, 2022 WL 3910549 (D.D.C. Aug. 31, 2022) . . . . . . . . . 2-3

*United States v. Delgado*, 984 F.3d 435 (5th Cir. 2021). . . . . . . . . . . . . . . . . . . .  13

*United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . .  22

*United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011) . . . . . . . . . . . . . . . . . 13-14

*United States v. Gordon*, 710 F.3d 1124 (10th Cir. 2013) . . . . . . . . . . . . . . .  14, 15

*United States v. Hunter*, 809 F.3d 677 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . 15-16

*United States v. McHugh*, 583 F. Supp. 3d 1 (D.D.C. 2022)  . . . . . . . . . . . . . . .  14

*United States v. Miller*, Case No. 22-3041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*United States v. Newman*, 614 F.3d 1232 (11th Cir. 2010) . . . . . . . . . . . . . . . . 25

*United States v. North*, 910 F.2d 843 (D.C. Cir. 1990) . . . . . . . . . . . 7, 10-12, 14

*United States v. Pasha*, 797 F.3d 1122 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . 13

*United States v. Rubenacker*, No. 21-cr-193 (D.D.C.) . . . . . . . . . . . . . . . . . 19-20

*United States v. Sandlin*, 575 F. Supp. 2d 16 (D.D.C. 2021) . . . . . . . . . . . . . . . 6

* *United States v. Seefried*, __F. Supp. 3d __,
    2022 WL 16528415 (D.D.C. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-28

*United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . 2-3

*United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) . . . . . . . . . . . . . . . . 22

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) . . . . . . . . . . . . . . . 5

## STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

18 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 9, 26

18 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 14, 20

18 U.S.C. § 1512(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-15, 21

U.S.S.G. § 1B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 27

U.S.S.G. § 2J1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 16-28

U.S.S.G. Appendix A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19-21, 27

Fed. R. App. P. 28(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-3

Black's Law Dictionary (11th ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## SUMMARY OF ARGUMENT

1.    Contrary to the government's argument, for purposes of 18 U.S.C. § 1512(c)(2), acting "corruptly" does not broadly refer to the minimal mental state needed to cross the line from innocent conduct into wrongful conduct.  The word "corruptly" specifically refers to "acting dishonestly, with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person."

2.    Contrary to the government's argument, the 8-level sentence enhancement provided at U.S.S.G. § 2J1.2(b)(1)(B) for "obstruct[ing] the administration of justice" applies to conduct that obstructs a judicial or quasi-judicial tribunal, not to conduct that obstructs Congress' certification of the Electoral College vote count.

## REPLY ARGUMENT

**A.    Robertson's § 1512(c)(2) conviction should be reversed.**

> **1.    A defense-favorable interpretation of § 1512(c)(2) in *Miller* should apply to Robertson.**

In his Initial Brief, Robertson noted that in a separate case, *United States v. Miller*, Case No. 22-3041, this Court is presently considering whether 18 U.S.C. § 1512(c)(2) applies to a defendant, like him, who has not taken any "action with respect to a document, record or other object."  Br. 13.  Robertson "adopt[ed] by

reference the arguments of the appellees" in these cases, and asked that, in the event *Miller* interpreted the statute in his favor, this new precedent apply to him.  Br. 13.

The government responds that Robertson's "cursory mention" of *Miller* "is insufficient to preserve the issue in this case."  Gov't Br. 20, n. 3.

The Federal Rules of Appellate Procedure provide:

> **(i) Briefs in a Case Involving Multiple Appellants or Appellees**. In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

Fed. R. App. P. 28(i).  The government's position, here, is odd, because the government did not oppose a defendant's Rule 28(i) adoption of an argument from another case in district court in another January 6-Capitol Hill ("J6") prosecution. *United States v. Brock*, 2022 WL 3910549 * 5 n. 2 (D.D.C. Aug. 31, 2022).[1]

Admittedly, Robertson is not one of the appellants in Case No. 22-3031 and its consolidated cases.  But his adoption by reference of the arguments of the

---

[1] The cases on which the government relies (Gov't Br. 20, n.3) are inapposite. Neither *Ry. Lab. Executives' Ass'n v. U.S.R.R. Ret. Bd*, 749 F.2d 856, 859 n. 6 (D.C. Cir. 1984), nor *Liu v. Lynch*, 802 F.3d 69, 75 (1st Cir. 2015) involved a party's adoption of a common legal argument in an appellate brief submitted by an identically-situated party in another appeal.

appellees in these cases is consistent with the purpose of Rule 28(i): to "streamline the appeal of common legal issues." *United States v. Straker*, 800 F.3d 570, 588 n. 1 (D.C. Cir. 2015).

Robertson's treatment of the issue was not "cursory." He stated that he is a defendant convicted of violating § 1512(c)(2), and argued that he should benefit from a decision by this Court in *Miller* that interprets § 1512(c)(2) not to apply to identically-situated defendants, like him, who "took no action with respect to a document, record, or other object." Br. 13. Because this prior panel decision would be binding on the panel that will decide the present appeal, it would be unjust to treat Robertson differently than other parties on appeal.[2]

Candidly, in light of the enormous volume of J6 prosecutions under § 1512(c)(2), one would have expected the government, as in *Brock*, to welcome a defendant's adoption by reference of a statutory-interpretation argument already fully briefed and argued orally in the referenced pending appeals in *Miller*, in order to streamline the adjudication of common legal issues. The alternative would have been for the parties to the present appeal rehash the arguments made by the parties

---

[2]  In the event this Court concludes that FRAP 28(i) cannot extend to the present situation simply because the present appeal is not consolidated with *Miller*, Robertson respectfully requests that this Court treat his cross-reference to *Miller* in his Initial Brief (Br. 13) as a motion to consolidate his case with the *Miller* group of cases, and that this Court grant said motion.

in the pending *Miller* appeals, a rehash that would have been wasteful for all concerned, since the statutory-interpretation issue in these cases (orally argued in December 2022) likely will already be decided before the present appeal gets heard.

      **2.**    **To establish that a defendant acted "corruptly," it is not enough, as the government claims, to show that a defendant's conduct was not "innocent or innocuous."**

In his Initial Brief, Robertson noted that 18 U.S.C. § 1512(c)(2) requires proof that a defendant acted "corruptly." Br. 14. Robertson argued that the evidence failed to show that he acted "corruptly," because "'corruptly' means an act "dishonestly done 'with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person,'" and the evidence did not establish this *mens rea*. Br. 21 (citation omitted).[3]

In its Response Brief ("Gov't Br."), the government argues:

> Robertson misapprehends the function of the mens rea requirement. In *Elonis v. United States*, 575 U.S. 723, 736-37 (2015), the Supreme Court explained that the criminal law requires only the mens rea necessary to separate "wrongful" from "otherwise innocent" conduct (internal quotation marks omitted).

---

[3] Br. 21. Robertson also argued that any hoped for benefit for President Trump was too remote to qualify his conduct as acting "corruptly." Br. 21. Since the government's does not contest this point, it is now conceded.

Gov't Br. 30. From this *Elonis*-based premise, the government argues that, in the present case, the evidence only needed to show that Robertson "used unlawful means or acted with an unlawful purpose, while also evincing consciousness of wrongdoing." Gov't Br. 18, 32. The government asserts: "The evidence . . . overwhelmingly demonstrated that Robertson acted corruptly, including through his intention 'to use violence on January 6th, which in turn [was] indicative of using unlawful means or acting with unlawful purpose.'" Br. 34 (quoting App. 51).

But it is the government that misapprehends § 1512(c)(2)'s mens rea requirement, and *Elonis*. *Elonis* addressed 18 U.S.C. § 875(c), a criminal statute that makes it unlawful to communicate a "threat . . . to injury" someone; this statute contained *no* express *mens rea* element. 575 U.S. at 736. *Elonis* addressed whether this threat statute had a *scienter* requirement – adressed the *scienter* the law requires even when a criminal statute is silent on the mental state necessary to commit the offense. *Id.* *Elonis* stated: "When interpreting federal criminal statutes that are *silent* on the required mental state, we read into the statute *only* that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* (emphasis added) (citations omitted). *Elonis* relied on cases that had addressed the *mens rea* of criminal statutes which contained no express *mens rea*. *Id.* at 734 (noting that *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994)

interpreted a statute which "did not contain" scienter requirements).

*Elonis* reversed the defendant's conviction because, at trial, the jury instructions allowed the jury to convict based on the defendant's "negligence," a disfavored standard for criminal offenses, and one that fails to instruct the jury to consider "the defendant's mental state." *Id*. at 738, 740-41. *Elonis* stopped short of resolving whether mere "recklessness" could satisfy the statute's implicit *mens rea* element. *Id*. at 741-42. Since, as Justice Alito pointed out in his separate opinion, "[t]here can be no real dispute that *recklessness* regarding a risk of serious harm is *wrongful conduct*," *Id*. at 745 (Alito, J. concurring and dissenting in part) (emphasis added), the majority opinion in *Elonis* in effect left open the possibility that the statute at issue might require the government to prove *more* than just a reckless indifference to serious harm – might require evidence not just that the defendant crossed the line that separates "innocent conduct" from "wrongful conduct," but evidence that the defendant had a deliberately culpable state of mind. *Elonis* did not hold, as the government claims, that to prove the *mens rea* for the threat statute at issue in that case – much less the *mens rea* of a criminal offense that, like § 1512(c)(2), expressly spells out the *mens rea* – the government need "only [prove] the mens rea necessary to separate "wrongful" from "otherwise innocent" conduct." Gov't Br. 30.

6

When a criminal statute, like § 1512(c)(2), states the requisite *mens rea*, this expressly-stated *mens rea* governs the case – not the *mens rea* the Supreme Court infers (as in *Elonis*) from *unexpressed* Congressional intent. This express element is the *scienter* the government must prove beyond a reasonable doubt.

Here, the *mens rea* of § 1512(c)(2) is to act "corruptly." *United States v. Sandlin*, 575 F. Supp. 2d 16, 24 (D.D.C. 2021) (noting that § 1503 "includes the same *mens rea* term ("corruptly") as does § 1512(c)(2)."); *cf. Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) (*mens rea* of 18 U.S.C. § 1512(b) is "knowingly . . . corruptly persuades"). Consequently, contrary to the government's assertion, § 1512(c)(2) does not require "*only* the *mens rea* necessary to separate "wrongful" from "otherwise innocent" conduct." Gov't Br. 30 (emphasis added). The statute requires specific proof that the defendant acted "corruptly." *See*, *e.g.*, *United States v. North*, 910 F.2d 843, 881-884 (D.C. Cir. 1990) (applying the "corruptly" *mens rea* stated in the text of 18 U.S.C. § 1505).

Perhaps because the Government erroneously believes that "corruptly" merely means non-innocent conduct, its brief never definitively settles on the meaning of "corruptly" in § 1512(c)(2). Its legal discussion notes that "'corruptly' may fairly described as 'a word of many meanings' whose construction is often dependent on the context in which it appears." Gov't Br. 36 (citations omitted). The government

7

adds: "Courts have long recognized that a defendant who acts dishonestly to secure an improper benefit for himself or another acts 'corruptly.'" Gov't Br. 38 (collecting cases).  The government's argument then concludes: "But it does not follow that obtaining an improper benefit is the *only* way one may act 'corruptly' within the meaning of Section 1512(c)(2)."  Gov't Br. 39 (emphasis in original).  Yet the government offers no counter-example of a "way" a person acts "corruptly" for purposes of § 1512(c)(2).

The government's factual argument likewise fails to identify the particular act, or acts, that establish that Robertson acted "corruptly."  Gov't Br. 33-34.  Instead, the government sets forth a summary of the evidence, and then quotes the following statement by the district court in its denial of Robertson's motion for judgment of acquittal: "The evidence thus overwhelmingly demonstrated that Robertson acted corruptly, including through his intention 'to use violence on January 6th, which in turn [was] indicative of using unlawful means or acting with an unlawful purpose.'"  Br. 34 (quoting App. 51).

The government's citation to the district court's statement implies that acting "corruptly" for purposes of § 1512(c)(2) means "using unlawful means or acting with an unlawful purpose."  But interpreting the word "corruptly" to mean "using unlawful means or acting with an unlawful purpose" unduly broadens the meaning

of this term in this *criminal* statute, because a person can act "unlawfully" by engaging in *non-criminal* tortious activity, or even *non-tortious* activity that violates a person's expectation of privacy, or property rights.   Br. 15-16 (collecting examples).  And, even when understood to refer to criminal activity, the meaning of acting "corruptly" is more specific than acting "unlawfully."  Br. 16.

The government's list of Robertson's acts which purportedly provide "overwhelming" evidence that he acted "corruptly" includes non-criminal activity – for example, "[d]onning his mask in the midst of the chaos on the front of the Capitol building," or, once inside this building, "chanting WHOS HOUSE? OUR HOUSE." Gov't Br. 33-34.  The list also includes acts for which Robertson was convicted of criminal offenses in this case – for example, the use of his wooden stick.  Gov't Br. 33-34.  But viewed individually or as a whole, these acts are *not* those of a person acting "corruptly."   A person does not act "corruptly" by putting on a gas mask, chanting WHOS HOUSE OUR HOUSE, or unlawfully using a wooden stick.  Nor when doing all three in succession, because none of this activity constitutes acting *dishonestl*y to secure an improper benefit for himself or another.

Admittedly, acting "corruptly," or making threats, or using force, may reflect equivalent notions of blameworthiness or culpability.  *Cf.* 18 U.S.C. § 1503 (making it a crime to obstruct justice "corruptly or by threats or force").  But each is a distinct

9

concept; each refers to distinct conduct. Participation in a violent riot is not corruption.

The government relies on the Supreme Court's decision in *Arthur Andersen* for the proposition that acting corruptly merely means acting with "consciousness of wrongdoing." Gov't Br. 18, 26. But, as the government correctly notes, *Arthur Andersen* "determined that the jury instructions in that case were erroneous because they did not require the jury to kind 'any type of dishonesty,' [and] allowed conviction where a defendant simply 'impeded' the Government's factfinding ability." Gov't Br. 26-27 (citing *Arthur Andersen*, 544 U.S. at 706-77) (brackets omitted). *Arthur Andersen* used the term "consciousness of wrongdoing" to explain that a violation of a criminal statute requires proof of some criminal culpability. But *Arthur Andersen* did not state that the "requisite consciousness of wrongdoing" for the statute at issue in that case was, simply, "consciousness of wrongdoing." *Arthur Andersen* stated: "The outer limits of [the "knowingly . . . corruptly persuades"] element need not be explored here because the jury instructions at issue simply failed to convey the requisite consciousness of wrongdoing." *Id*. at 706. Thus, *Arthur Andersen* was not equating the term "consciousness of wrongdoing" with the meaning of the word "corruptly." *Arthur Andersen* found reversible error in a jury instruction that failed to require a jury to find whether a defendant harbored *any*

10

"consciousness of wrongdoing."   *Arthur Andersen* expressly stopped short of addressing the "outer limits" of the terms "knowingly . . . corruptly persuades."   In short, *Arthur Andersen* does not stand for the proposition that "corruptly" means "with consciousness of wrongdoing."

The government heavily relies on the majority opinion, and on Judge Silberman's dissent, in this Court's decision in *North*.   Gov't Br. 22-25, 27-28, 31, 38.   But these opinions support Robertson's position.

The majority noted that "[a] corrupt intent may also be defined as 'the intent to obtain an improper advantage for oneself or someone else, inconsistent with official duty and the rights of others."   *North*, 910 F.2d at 882-83 (quoting Ballentine's Law Dictionary 276 (3d ed. 1969) (definition of "corruptly").

In addition, the majority noted approvingly the trial court's jury's instruction on the word "corruptly."   *Id*. at 883 (the defendant "was entitled only to the [jury] instruction on intent given, and to a jury that applied 'corruptly' according to its usual definitions.").   The trial court's jury instruction in *North* stated:

> [T]he obstruction count[ ] involve[s] not only the element of specific intent but [also that the] defendant must have acted corruptly.... [*A] deliberate, knowing bad purpose is not enough to convict.* He must be shown beyond a reasonable doubt to have had the bad purpose to act in the precise manner a statute was intended to prevent, that is, to obstruct or try to obstruct an inquiry ....

> To find that the defendant acted with specific corrupt intent in the obstruction counts, he must be shown to have also acted with the bad purpose of doing the thing prohibited by the particular statute. A person who has this purpose and does an act knowingly and intentionally, with the deliberate purpose to conduct himself in a manner prohibited by the statute, acts with specific corrupt intent.

*Id*. at 938 (Silberman, J. dissenting) (emphasis added).    The above-quoted instructions explicitly instructed the jury to that "a deliberate, knowing bad purpose" is "not enough" to prove that the defendant acted "corruptly."   The instruction in effect required more than the mental state of "consciousness of wrongdoing" which the government here erroneously equates with acting "corruptly."

Judge Silberman's dissent disagreed with the majority insofar as its opinion concluded that the jury need not have been instructed to consider the defendant's "purpose" for his conduct.   *Id*. at 945-46.   But, as Judge Silberman noted, the majority "agree[d] with a good deal of my analysis."   *Id*. at 946.   Notably, the two opinions agreed that the defendant's "creation of a false chronology" showed that he was acting "corruptly to influence the congressional investigation."   *Id*. at 884, 890, 893.   *Compare id*. at  944 (Silberman, J., dissenting) ("I assume arguendo that North's aid in the preparation of the false chronology . . . could constitute the basis of a jury determination of corrupt means."); *id*. ("the [false] chronology was apparently designed to conceal").   Thus, both opinions agreed that evidence of

12

*concealment* – which, in essence, is evidence of dishonesty – established that the defendant acted "corruptly." This view that concealment is evidence of acting "corruptly" is consistent with Robertson's view that an act is done corruptly if it is done dishonestly, with a hope or expectation of a benefit to himself or another. Br. 10, 14-15, 19-21. The concealment is necessary because if a person were to *openly* obstruct, influence, or impede an official proceeding in violation of 18 U.S.C. § 1512(c)(2), the person would publicly expose his wrongdoing – and could not hope or expect a private financial gain or benefit for himself (or another).

To its credit, the government's response takes note of a number of cases which rely on the definition of "corruptly" akin to the definition Robertson advocates here. *United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) (cited at Gov't Br. 29 for the proposition that "to act 'corruptly' means to act 'knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice."); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (cited at Gov't Br. 29 for the proposition that "to act 'corruptly' is to act 'with an improper purpose' and 'to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct."); *United States v. Pasha*, 797 F.3d 1122, 1132 (D.C. Cir. 2015) (cited at Gov't Br. 38 as a case that "recognized that a defendant who acts dishonestly to secure an improper benefit for himself or another acts 'corruptly.'"). The

13

government, though, is untroubled by these cases because in its view a definition that requires a dishonest intent to benefit oneself or others "would be *sufficient* to prove the mens rea in Section 1512(c)(2), [but] it is not *necessary* to do so." Gov't Br. 35-36. This argument is off the mark.

The "sufficient but not necessary" argument claims, in effect, that while a *mens rea* of dishonest intent to benefit oneself or another would be sufficient to prove the § 1512(c)(2) *mens rea*, it is unnecessary, because a *less* culpable *mens rea* would suffice. In the government's view, it need only prove "the *mens rea* necessary to separate 'wrongful' from 'otherwise innocent' conduct." Gov't Br. 30 (citing *Elonis*, 575 U.S. at 736-37). But, as noted above, proof of recklessness suffices to distinguish "wrongful conduct" from "otherwise innocent conduct." *Elonis* 575 U.S. at 737, 741-42. Recklessness, which involves conscious disregard of risk of harm, is a less culpable mental state than a crime involving an *intentional* infliction of the specific harm addressed in a criminal statute. Proof of mere recklessness – of conduct that was not "innocent" – would not suffice to prove a violation of § 1512(c)(2), which "is a specific intent statute." *United States v. McHugh*, 583 F. Supp. 3d 1, 21 (D.D.C. 2022). *See United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) ("Acting 'corruptly' within the meaning of § 1512(c)(2) means acting with 'an improper purpose and to engage in conduct knowingly and dishonestly with

14

the *specific intent* to subvert, impede, or obstruct [the proceeding].") (quoting *Friske*,
640 F.3d at 1291); *cf. North*, 910 F.2d at 884 (18 U.S.C. § 1505 "is a 'specific intent'
offense").

The government argues that the meaning of the word "corruptly" can be
"dependent on the context in which it appears."  Gov't Br. 36 (quoting *Bryan v.
United States*, 524 U.S. 184, 191 (1998)).  But this does not entail that acting
"corruptly" is equivalent to acting "with consciousness of wrongdoing." The
"wrongdoing" of which the § 1512(c)(2) perpetrator must have "consciousness" is
not just, as the government claims (Gov't Br. 18) awareness that he is using
"unlawful means," or endeavoring to achieve an "unlawful purpose" (or some other
form of culpability, such as disregard of the risk of serious harm).   Again, "[a]cting
'corruptly' within the meaning of § 1512(c)(2) means acting 'with an improper
purpose to engage in conduct knowingly and *dishonestly* with the *specific intent* to
subvert, impede or obstruct [the proceeding].'" *Gordon*, 710 F.3d at 1151 (quoting
*Friske*, 640 F.3d at 1291).

### B.     The § 2J1.2(b)(1)(B) enhancement should be vacated.

#### 1.     Because Robertson objected to the imposition of the § 2J1.2 enhancement, "plain error" does not apply.

Citing *United States v. Hunter*, 809 F.3d 677, 682 (D.C. Cir. 2016), the

government claims that Robertson's challenge to the imposition a sentence enhancement under U.S.S.G. § 2J1.2 is subject to "plain-error review," because in the district court Robertson argued that "the supporting facts were inadequate," whereas on appeal he advance the "legal claim . . . that the enhancement were inapplicable because the certification of the Electoral College vote did not constitute the 'administration of justice.'" Gov't Br. 40. But *Hunter* applied "plain error" because at sentencing, after the defendants were given an opportunity to object, they "failed to do so." 809 F.3d at 683. Here, Robertson objected to the § 2J1.2 enhancement. DE149:16-17. His argument that this enhancement applies only to causing "a premature or improper termination of a felony investigation" echoed his argument on appeal that his conduct, if it interfered with the Electoral College vote, did not obstruct the "administration of justice." DE149:16-19. The prosecutor responded that obstructing the "election certification" qualified as a "substantial interference with the administration of justice." DE149:19. At the conclusion of the sentencing hearing, defense counsel stated: "[w]e . . . stand by our objections." DE149:27. Plainly, Robertson preserved the argument he is making on appeal. *Hunter* involved a defendant who failed to lodge any objection on the sentencing issue. 809 F.3d at 602. It is inapposite.

In addition, since the case on which Robertson primarily relies, *United States*

16

*v. Seefried*, __F. Supp. 3d __, 2022 WL 16528415 (D.D.C. 2022), was decided on October 29, 2022, after the August 17, 2022 entry of the final judgment in Robertson's case, Robertson cannot be faulted for failing to cite *Seefried* at his August 11, 2022 sentencing.  DE149.

> **2.     The term "administration of justice" does not refer to Congress' certification of the Electoral College vote.**

In his Initial Brief, Robertson argued that this Court should vacate his 8-level enhancement under U.S.S.G. 2J1.2, because this enhancement addresses threatening physical injury "in order to obstruct the administration of justice," and the term "administration of justice" does not encompass Congress' certification of electoral votes.  Br. 21-28.  The government disagrees; its arguments are unpersuasive.

The government first cites to a handful of definitions of "administration of justice," for example Black's Law Dictionary definition of "obstruction of justice" as "interference with the orderly administration of law and justice."  Gov't Br. 41. But the same dictionary further defines "obstructing the administration of justice" and "interfering with the administration of justice" as "[t]he skewing of the disposition of legal proceedings, as by fabricating or destroying evidence, witness-tampering, or threatening or intimidating a judge." *Perverting the Course of Justice*, Black's Law Dictionary (11th ed. 2019) (cited in *Seefried*, 2022 WL 1658415 at * 3).

On balance, Black's Law Dictionary supports Robertson's view that the term "administration of justice" involves "legal proceedings."

The government cites to dictionary definitions of the term "justice" and the term "contempt." Gov't Br. 41. But the relevant term here are the three words "administration of justice." *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995) ("a word is known by the company it keeps").

The government relies on *Rosner v. United States*, 10 F.2d 675 (2d Cir. 1926). Gov't Br. 41. But *Rosner* supports Robertson's narrower reading of the term "administration of justice."

*Rosner* held that a person who advised another person to disregard an oral request by the United States attorney "would not have been obstructing the administration of justice." *Id*. at 676. *Rosner* thus construed the term "administration of justice" narrowly.

In addition, *Rosner* gave examples of the "administration of justice," such as penalizing the carriage of weapons inside a courtroom, or corruptly advising an accused not to appear. *Id*. These examples grounded the meaning of "administration of justice" in courtroom proceedings.

In sum, *Rosner* is consistent with the government's candid acknowledgment that "the term 'administration of justice' is more narrowly used . . . to refer to

18

"interference with the pendency of some sort of judicial proceeding." Gov't Br. 42 (citing *In re Kendall*, 712 F.3d 814, 828 (3d Cir. 2013)).

The government points out that "Section 2J1.2 applies to an array of obstruction statutes, including many that do *not* involve the 'administration of justice' in the narrow sense." Gov't Br. 42-43 (emphasis in original) (noting that § 2J1.2 applies to a statutes involving "a proceeding before Congress," concealing invoices related to imported merchandise, obstructing a workforce investigation, obstructing proceedings before departments, agencies, and committees, obstruction of state gambling laws, and other offenses). From this, the government infers that the term "administration of justice" has a broad enough meaning to encompass interference with Congress' certification of the Electoral College count. Gov't Br. 42-43.

But the variety of offenses covered by § 2J1.2 merely indicates that its *base offense level* of 14 set forth at U.S.S.G. § 2J1.2(a) is applicable to all the offenses identified as "covered offenses" in § 2J1.2's background commentary list of "Statutory Provisions," and in the statutory index at Appendix A. For purposes of this base offense level, the government may well be correct that "obstruction of justice offenses are not limited solely to interference with judicial proceedings." Gov't Br. 44. But the applicability of a guideline *base offense level* does not resolve

19

the question whether the guideline's *specific offense characteristic* (here, §

2J1.2(b)(1)(B)) applies to an offender's conduct (here, Robertson's violation of §

1512(c)(2)).

The government quotes the statement in another case of Hon. Beryl A. Howell,

Chief Judge of the United States District Court for the District of Columbia, that it

"doesn't make sense" for the specific offense characteristics of § 2J1.2 "not to apply

to *all* of the cases involving obstruction of proceedings taking place outside of courts

or grand juries."  Gov't Brief 45 (emphasis added) (citing Sentencing Transcript

(ECF No. 70) at 69 in *United States v. Rubenacker*, No. 21-cr-193  (D.D.C.)).  But,

to the contrary, it makes sense that the (especially harsh) 8-level enhancement of §

2J1.2(b)(1)(B) does not apply to certain offenses cross-referenced in Appendix A.

For example (as the government notes (Gov't Br. 46)), the Guideline itself

specifically provides that two statutory offenses (18 U.S.C. §§ 1001 and 1505) are

not covered by § 2J1.2(b)(1)(B), but by other specific offense characteristics. *See* §§

2J1.2(b)(1)(A) & (b)(1)(C).   As with all other specific offense characteristics in the

Guidelines, not all of their specified sentence enhancements (or sentence reductions)

apply to all crimes covered by a particular Guideline.   *See* U.S.S.G. § 1B1.1(2)

(instructing sentencing courts to "[d]etermine the base offense level and apply *any*

*appropriate* specific offense characteristic, cross references, and special instructions

20

contained in the particular guideline in Chapter Two.") (emphasis added); *id*. at 1B1.2, cmt. n. 2 ("after [the sentencing court] has determined the applicable guideline . . . determine *any applicable* specific offense characteristics") (emphasis added). A defendant who is subject to a particular guideline is not automatically subject to each and every specific offense characteristic sentence enhancement listed in this guideline.

Thus, even if § 2J1.2(b)(1)(B) is applicable to a § 1512(c) offense, it might not apply to the *subsection* of this statute for which the defendant was convicted. Under U.S.S.G. Appendix A, the § 2J1.2(b)(1)(B) enhancement is applicable to an offense prosecuted under subsection (c)(1), an offense committed by a person who "alters, destroys, mutilates, or conceals a record, document or other object . . . with the intent to impair the . . . use in an official proceeding." But § 2J1.2(b)(1)(B)'s application to a subsection (c)(1) offender does not entail that this enhancement applies to a person, like Robertson, convicted of disrupting the Electoral College count under subsection (c)(2).

Finally, even if a statute is cross-referenced under Appendix A, the applicability of a Guideline's specific offense characteristic depends on the specific *factual record* underlying the specific conviction. Here, the applicability of the § 2J1.2(b)(1)(B) enhancement depends not whether the § 1512(c)(2) offense of

21

conviction was cross-referenced in Appendix A, but on whether the "relevant conduct" for the offense encompassed obstructing the "administration of justice."

The government states: "Reading the [§ 2J1.2(b)(1)(B) enhancement] as applying only to judicial or quasi-judicial proceedings would fail to address conduct in a wide variety of obstruction offenses." Gov't Br. 46. In effect, the government complains that reading an "administration of justice" enhancement to apply only to offenses that involve the "administration of justice" fails to address a "wide variety" of other offenses. But this is the way the law works. If an offense is not covered by a text, it is not covered by the rule.

The government also relies (Gov't Br. 46-47) on the Guideline commentary, specifically on its definition of "substantial interference with the administration of justice." Gov't Br. 46. This commentary states: "'Substantial interference with the administration of justice' includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2 cmt. n. 1. The government relies on the commentary's final clause, which refers to "the unnecessary expenditure of substantial governmental or court resources." Gov't Br. 46-47. This argument suffers from several flaws.

First, *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018), recently held that courts are not bound by Guideline commentary where the commentary expands the meaning of the Guidelines themselves.  More recently, other Circuits have joined *Winstead* in holding that a court should only defer to Guideline commentary when the text of the Guideline is ambiguous.  *See*, *e.g.*, *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc) (if "uncertainty does not exist" courts should not defer to Guideline commentary); *see id*. at 1273 n. 3 (collecting like decisions from other Circuits).

Here, the familiarity of federal courts with the subject matter to which the term "administration of justice" refers makes it inappropriate for federal courts to defer to the Sentencing Commission with regard to the meaning of this term.

Second, assuming *arguendo* that the term "administration of justice" contains a degree of uncertainty that makes it appropriate for federal courts to seek the assistance of an administrative agency in clarifying its meaning, it is not the kind of ambiguity that opens the door for "administration of justice" to mean "the unnecessary expenditure of substantial governmental or court resources."  Rather, "the unnecessary expenditure of substantial governmental or court resources" refers to the words  "substantial interference with" found at § 2J1.2(b)(2), which provides for a three-level enhancement of a defendant's offense level.  *See Seefried*, 2022 WL

23

16528415 at * 8 ("the modifying phrase 'substantial interference' appears only in the three-level enhancement [at § 2J1.2(b)(2)]."). It is the "substantial interference," not the "administration of justice," that causes the "unnecessary expenditure." *See* Gov't Br. 56 ("the [§ 2J1.2(b)(1)(B)] enhancement is best read as applying where the obstructive conduct itself – not the later prosecution of that conduct – caused the unnecessary expenditure of substantial governmental resources."). In sum, the phrase "or the unnecessary expenditure of substantial governmental or court resources" does not refer to § 2J1.2(b)(1)(B).

Contrary to the government's argument (Gov't Br. 47-48), treating the commentary at § 2J1.2 cmt. (n. 1) as referring to § 2J1.2(b)(2) but not to § 2J1.2(b)(1)(B) does not "lead to the incongruous result of giving two different meanings to the term "administration of justice" within the same guideline." Gov't Br. 48-49. Rather, this treatment makes the final ("unnecessary expenditure") phrase in the commentary at § 2J1.2 cmt. (n. 1) refer to the term "substantial interference with" found at § 2J1.2(b)(2), while allowing the language preceding this final phrase to refer to the term "administration of justice."

In addition, even if, *arguendo*, the phrase "unnecessary expenditure of substantial governmental or court resources" in the commentary bound a court's interpretation of the term "administration of justice," and even if this phrase related

24

to the term "administration of justice" in § 2J1.2(b)(1)(B), instead of only relating to the term "substantial interference with" in § 2J1.2(b)(2)), this phrase includes the word "court," which limits the "governmental resources" at issue to resources expended in connection with judicial proceedings. *Seefried*, 2022 WL 16528415 at * 8 (the word "court" indicates that the commentary refers to "*prosecutorial* resources") (emphasis in original); *see id.* (pointing out that none of the background commentary's list of exemplar offenses "relate to a legislative proceeding.").

The government cites to cases which, it claims, show that § 2J1.2(b)(1)(b) has been applied "in a wide range of proceedings beyond judicial or grand jury proceedings." Gov't Br. 49. But these cases involve judicial or investigative proceedings from which punishment would flow. *Seefried*, 2022 WL 16528415 at * 10 (analyzing many of the cases cited in the government's brief here).

The government relies on *United States v. Amer*, 110 F.3d 873, 885 (2d Cir. 1997) for the proposition that the commentary's list "of acts warranting this enhancement" extends to "other acts – if similarly or even more disruptive of the administration of justice." Gov't Br. 47. But *Amer* involved a defendant whose "actions were calculated to thwart the legal process and to ensure that he, not the judge with jurisdiction over custody matters, would be the ultimate decisionmaker about who would retain custody of his child." *United States v. Newman*, 614 F.3d

1232, 1238 (11th Cir. 2010) (summarizing, and agreeing with, the reasoning in *Amer*). *Amer* thus involved acts "calculated to thwart the legal process." *Id*. *Amer*'s application of § 2J1.2(b)(1)(2)'s enhancement may be consistent with the guideline's increased punishment for persons who "obstruct the administration of justice." But this does not mean that this enhancement applies to persons who obstruct Congress' certification of the Electoral College vote. A child custody proceeding is an adjudicatory proceeding that is part of the administration of justice. Congress' certification of a presidential vote is not part of the administration of justice.

*Seefried* pointed out that a federal criminal statute defines the term "obstruction of justice" as an act that "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs or impedes . . . the *due administration of justice*. 2022 WL 16528415 at * 3 (emphasis in original) (quoting 18 U.S.C. § 1503). *Seefried* noted that none of the January 6 defendants were charged under this statute, and noted the similarity of the language with the Guideline enhancement the government now invoked. *Id*; *see id*. at *10 (noting that the reasoning in *Aguilar*, 515 U.S. at 599, suggests that "due administration of justice" refers to a "judicial or grand jury proceeding). The government addresses this portion of *Seefried* by pointing out that a statutory "context" may favor a different interpretation of the same words found in a Guideline. Gov't Br. 57-58. Admittedly,

26

terms may carry a different meaning in a statute and in a Guideline. *Seefried*, 2022 WL 16528415 at * 10 (citation omitted). But the government reads too stark a divergence between the two meanings: according to the government, in the statutory context, the words "administration of justice" are narrow, and refer to conduct affecting "judicial and grand jury proceedings," but, in the Guidelines context, the very same words expand to encompass activities affecting every branch of Government. Gov't Br. 51. This divergence is implausible.

The government argues that a broad reading of § 2J1.2(b)(1)(B) would be consistent with the Guideline's application to a "wide variety of obstruction statutes." Gov't Br. 58. Indeed, the government argues that the "broader reading" it advocates would achieve the result of having the eight-level "administration of justice" enhancement "apply to *all* the obstruction offense covered by § 2J1.2." Gov't Br. 58-59 (emphasis added). But, as discussed above, the fact that, by operation of Appendix A of the Guidelines, the base offense level of § 2J1.2 applies to a wide variety of obstruction statutes does *not* mean that its harsh 8-level enhancement, set forth at subsection (b)(1)(B), also applies to a "wide variety of obstruction statutes" – much less that it applies to "all" obstruction offenses. *See* U.S.S.G. §§ 1B1.2(a) & (b) (instructing sentencing courts, first, to consult Appendix A to determine the guideline for the offense of conviction, and, once this guideline has been identified,

to "determine the applicable guideline range.").

The government also argues that a narrow interpretation of "administration of justice" would leave a difficult interpretative issue regarding what constitutes a "judicial or quasi-judicial" proceedings.  Gov't Br. 59.  But courts are well-equipped to decide which proceedings constitute a judicial or quasi-judicial proceeding, and which do not.

In a final argument, the government claims that the Electoral College vote qualifies as a "quasi-adjudicatory" proceeding.  Gov't Br. 59-60.  But there is a clear distinction between the peaceful transfer of power effected by Congress' certification of the Electoral College vote, and a judicial proceeding that "decide[s] legal rights." *Seefried*, 2022 WL 16528415 at * 4, * 10.  The actors are different: litigants, lawyers, judges and juries, as opposed to legislators; the process is different: litigation as opposed to certification; the questions presented are different: whose legal rights should prevail as opposed to whose side won the election; and the result is different: legal outcome as opposed to the outcome of an election outcome.

## CONCLUSION

For the foregoing reasons, this Court should vacate Robertson's Count 1 conviction, and the § 2J2.1(b)(1)(B) sentence enhancement.

28

Respectfully submitted,


 /s/ Timothy Cone
Timothy Cone, Esq.
1615 New Hampshire Avenue N.W.
Washington, D.C. 20009
Tel. (202) 862-4333
timcone@comcast.net

**CERTIFICATE OF LENGTH**

I CERTIFY that this Brief complies with the type-volume limitation of FED.

R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the

numbered pages of this brief contain 6438 words.


/s/ Timothy Cone
Timothy Cone


**CERTIFICATE OF SERVICE**


I CERTIFY that on this 15th day of February 2023,  a copy of the Appellant's

Reply Brief was filed via the ECF system and was thereby served on Special

Assistant United States Attorney James I. Pearce, 601 D Street, N.W.,  Washington,

D.C. 20530.


/s/ Timothy Cone
Timothy Cone