**ORAL ARGUMENT SCHEDULED MAY 11, 2023**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-3062

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THOMAS ROBERTSON,

*Defendant-Appellant.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SUPPLEMENTAL BRIEF FOR APPELLANT THOMAS ROBERTSON

District Court
Cr. No. 1:21-CR-34 (Cooper, J.)

Timothy Cone, Esq.
1615 New Hampshire Avenue N.W.
Washington, D.C. 20009
Tel. (202) 862-4333
timcone@comcast.net

Counsel for Appellant Robertson
Appointed by the Court

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. "Corruptly" does not refer to whether a defendant's conduct was "unlawful." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3. "Corruptly" means acting "dishonestly" to obtain a tangible benefit; it usually requires deception.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) . . . . . . . . . . . . . . 7, 9

*Marinello v. United States*, __ U.S. __, 138 S.Ct. 1101 (2018) . . . . . . . . . . . . . . 5

*United States v. Aguilar*, 515 U.S. 593 (1995) . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 9

*United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023) . . . . . . . . . . . . . . . . . . 1-12

*United States v. Gordon*, 710 F.3d 1124 (10th Cir. 2013) . . . . . . . . . . . . . . . . . 9-10

*United States v. North*, 910 F.2d 843 (D.C. Cir. 1990) . . . . . . . . . . . . . . . 1-2, 5, 7

*United States v. Reich*, 479 F.3d 179 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 9

## OTHER AUTHORITIES

18 U.S.C. § 1507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 1512(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1512(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1512(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-12

18 U.S.C. § 1512 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 5104(e)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 1956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

D.C. Code § 22-3211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Memorandum from Bill Barr to Deputy Att'y Gen. Rod Rosenstein (June 8, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Randall Eliason, *Obstruction of Justice and the Capitol Riot – Part 2* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 12

The World Bank, *What Can the World Bank Group's Integrity Group Vice-Presidency (INT) Investigate?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**GLOSSARY OF ABBREVIATIONS**

| | |
|---|---|
| Br. | Appellant's Opening Brief |
| Gov't Br. | Appellee's Answering Brief |
| Reply Br. | Appellant's Reply Brief |
| Gov't Supp. Br. | Appellee's April 18, 2023 Supplemental Brief |

# ARGUMENT

## 1. Introduction.

Robertson agrees with government that the April 7, 2023 decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *pet. for panel rehearing filed* (April 25, 2023), is not precedential authority with respect to the interpretation of "corruptly" in 18 U.S.C. § 1512(c)(2). Gov't Supp Br. 1-13. But opinions without precedential force can be persuasive authority. *See id.* (lead opinion, concurrence and dissent cite prior concurrences, and dissents, as authority). Accordingly, this brief addresses the persuasive force, or lack thereof, of the reasoning of the *Fischer* opinions. On balance, their reasoning supports Robertson's view that acting "corruptly" means acting dishonestly, using deception, to obtain a tangible benefit – which he did not do.

## 2. "Corruptly" does not refer to whether a defendant's conduct was "unlawful."

The *Fischer* concurring and dissenting opinions noted that in most obstruction of justice prosecutions the requisite mental state is *inherent* in the commission of the offense. *See id*. at 355 (Walker, J., concurring) ("*any* endeavor to obstruct a judicial proceeding is inherently . . . corrupt.") (quoting *United States v. North*, 910 F.2d 843, 940-41 (D.C. Cir. 1990) (Silberman, J., concurring in part)); *id*. at 374 (Katsas, J.

dissenting) (describing 18 U.S.C. § 1512(a) & (d) as prohibiting "inherently obstructive acts"); *id*. at 379 (noting the "inherently wrongful conduct" covered by § 1512(b)).

As a result, precedent has left largely unresolved the mental state of acting "corruptly" for purposes of § 1512(c)(2). *See id*. at 339-40 (lead opinion declines to express "a preference for any particular definition of 'corruptly'" and "leave[s] the exact contours of 'corrupt' intent for another day.").

The challenge in interpreting the word "corruptly" is to make *explicit* the mental state that, in the ordinary case, remained *implicit*. *Id*. at 355 (Walker, J., concurring) (noting that in obstruction statutes "the connection between 'corruptly' and the defendant's intent . . . is implicit").

The lead opinion stated: "'corrupt' intent exists at least when an obstructive action is independently *unlawful* – *i.e.*, an independently unlawful act is necessarily 'wrongful' and encompasses a perpetrator's use of 'independently corrupt means' or 'an unlawful method.'" 64 F.4th at 340 (emphasis added). Judge Walker's opinion claimed that the "implicit" meaning of acting "corruptly" was "the intent to procure an *unlawful* benefit." *Id*. at 355 (emphasis added).[1] This common focus on the

[1] Judge Walker claimed that Congress incorporated in § 1512(c)(2) a "long-established meaning" – his proposed meaning – of "corruptly." *Id*. at 356. However, no "long-established meaning" exists -- only "candidates." *Id*. at 349 (lead opinion).

unlawfulness of a defendant's action may have arisen out of a perceived need to draw a clear line – unlawful vs. lawful – to prevent the act element of subsection (c)(2) from "sweeping up" conduct like lobbying, or political advocacy. 64 F.4th at 339. Yet this concern is puzzling. *See id*. at 378 (Katsas, J., dissenting) ("[§ 1512(c)]seems an unlikely candidate to extend obstruction law into new realms of political speech"); Randall Eliason, *Obstruction of Justice and the Capitol Riot – Part 2*, p.7 ("Section 1512(c) has been on the books for more than twenty years and we haven't seen any widespread prosecutions of political opponents."), https://www.sidebarsblog.com/p/obstruction-of-justice-and-the-capitol. Until the January 6 prosecutions, few worried that § 1512(c)(2) could be enforced against political activists (who enjoy First Amendment protection), or against lobbyists (who are well-situated to thwart such an impulse).

The view that § 1512(c)(2) potentially sweeps up large swaths of non-criminal activity can be traced to the lead opinion's observation that "appellees do not identify any 'common attribute' connecting [§§ 1512(c)(1) and (c)(2)]." *Id*. at 346. In the absence of a "common attribute" with subsection (c)(1), the cannons of *ejusdem generis* and *noscitur a sociis* were "irrelevant" to interpreting the act element of subsection (c)(2). *Id*.

Yet, subsection (c)(1) "concerns *obstructive* conduct." *Id*. at 334 (lead

opinion) (emphasis added). Subsection (c)(2) expressly criminalizes conduct that "obstructs." The two subsections share the "common attribute" of "obstructive conduct." In subsection (c)(2), the words "influences," and "impedes," that immediately follow "otherwise obstructs," naturally refer to "obstructive conduct" – *i.e.*, to acts that *improperly* influence, or impede. *Cf*. The World Bank, *What Can the World Bank Group's Integrity Group Vice-Presidency (INT) Investigate?* ("Corruption: A corrupt practice is the offering, giving, receiving or soliciting, directly or indirectly, anything of value to *influence improperly* the actions of another) (emphasis added), https://www.worldbank.org/en/about/unit/integrity-vice-presidency/What-can-the-World-Bank-Groups-INT-investigate. Thus understood, the terms "influences" and "impedes" do not encompass "large swaths" of non-criminal activity, such as lobbying or political advocacy, but simply express, in different words, the prohibition against obstruction. *Fischer*, 614 F.4th at 355 ("[a]cts specifically intended to influence, obstruct, or impede the due administration of justice . . . are necessarily corrupt.") (quoting *United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., concurring)).

Whatever its origins, the focus on the *unlawfulness* of conduct is misplaced.

Judge Walker's definition drew primarily on Justice Thomas' dissenting opinion in *Marinello v. United States*, which interpreted the word "corruptly" to

mean "an intent to procure an unlawful benefit either for [himself] or for some other person." 138 S.Ct. 1101, 1114 (2018) (cited at 64 F.4th at 352, 357, 359, 361-62). This made the touchstone whether a person sought to procure an *unlawful result*. Yet, in his *Aguilar* concurrence, Justice Scalia noted approvingly a jury instruction that defined "corruptly" as an act done "to bring about *either* an unlawful result or a *lawful* result by some unlawful method." 515 U.S. at 616-17 (emphasis added) (cited at 64 F.4th at 340). The unlawfulness of the benefit is not the touchstone. The benefit itself – like a valid jury verdict – may well be lawful.

The lead opinion stated that "'corrupt' intent exists when a perpetrator uses "an unlawful method." 64 F.4th at 340 (citing *North*, 910 F.2d at 942-43 (Silberman, J., concurring and dissenting in part)). But a method can be lawful, and still be corrupt. *See* Eliason, *Obstruction of Justice and the Capitol Riot – Part 2*, p. 6 ("if I shred my files because I'm cleaning out my office, that's perfectly lawful [but i]f I shred those same because they were subpoenaed by a grand jury . . . I am acting with corrupt intent.").

The lead opinion stated that crimes like killing witnesses "are classic examples of obstruction of justice." 64 F.4th at 339. But what makes a murder obstruction of justice is not the unlawfulness of murder *per se*, but the fact that the killing was intended to obstruct justice.

In sum, the meaning of "corruptly" is narrower than an "independently unlawful act" or "an unlawful method." *See id*. at 380 (Katsas, J., dissenting) (criticizing the "overbreadth" of an "independently corrupt means" standard).

Judge Walker recognized that, under his "unlawful benefit" standard, a protester who violated a picketing statute (18 U.S.C. § 1507) could be convicted of violating § 1512(c)(2) if "he *knew* that his picket was unlawful." *Id*. at 358 (emphasis in original). Thus, a person subject to the one-year maximum penalty of § 1507 would now find himself subject to the 20-year maximum of § 1512(c)(2), simply because his conduct obstructed an official proceeding and he *knew* his picketing was unlawful. In fact, if unlawfulness is the test, a person who engaged in disorderly conduct, in violation of 18 U.S.C. § 5104(e)(2)(D) -- a misdemeanor -- would be subject to § 1512(c)(2)'s 20-year maximum simply because he "knew" that his disorderly conduct was "unlawful." This is anomalous. *See id*. at 376, 381 (Katsas, J., dissenting) (faulting a standard that subjects a person to a 20-year sentence simply because "the defendant knows he is acting unlawfully in some small way."). Moreover, a "knowledge of unlawfulness" standard is inconsistent with prior definitions of what it means to act "corruptly." *Id*. at 381 (citing *Aguilar*, 515 U.S. at 617 (Scalia, J., dissenting in part) and *North*, 910 F.2d at 940 (Silberman, J., dissenting in part)).

Generally, to avoid circularity, drafters of criminal laws steer clear of the term "unlawful," resorting to it only when the activity being criminalized is *generally lawful*. For instance, an otherwise-lawful "financial transaction" becomes criminal "money-laundering" only when it "involves the proceeds of "specified *unlawful* activity." 18 U.S.C. § 1956 (emphasis added). But obstruction of justice does not usually involve lawful activity – to the contrary it is "inherently" criminal. *Fischer*, 64 F.4th at 355 (Walker, J., concurring); *id*. at 374 (Katsas, J., dissenting).

The lead opinion noted that *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-08 (2005) stated that the word "corruptly . . . is normally associated with 'wrongful, immoral, depraved or evil' conduct." *Id*. at 339-40. But *Arthur Andersen* did not address the contours of the word "corruptly"; it held that a jury instruction was deficient because it failed to require a finding of consciousness of wrongdoing. *Id*. at 370 (Katsas, J., dissenting); *accord* Br. 18; Reply Br. 5-7, 14. Equating "corruptly" with a "wrongful purpose" unduly broadens the coverage of § 1512(c)(2). *Id*. at 360-61 (Walker, J., concurring); *id*. at 379 (Katsas, J. dissenting); Reply Br. 5-15.

Something other than unlawfulness underlies the meaning of the term "corruptly."

**3. "Corruptly" means acting "dishonestly" to obtain a tangible benefit; it usually requires deception.**

The *Fischer* dissent noted that, historically, activities "did not constitute obstruction unless they directly impinged on a proceeding's *truth-seeking function* through acts such as bribing a decisionmaker or falsifying evidence presented to it." 64 F.4th at 378 (Katsas, J., dissenting) (emphasis added); *id*. at 375 (obstruction statutes preserve "the flow of truthful (and only truthful) information to investigatory or judicial processes"). This observation finds support in the comprehensive list of § 1512(c)(2) cases summarized in the lead opinion, which involve acts like "lying in written responses to civil interrogatory questions"; "seeking a false alibi witness"; or "attempting to orchestrate a grand jury's witness' testimony." *Id*. at 337-38 (collecting cases). Obstruction statutes protect against self-interested actions that undercut the most basic value of the system – the truth-finding process, or in the case of Congressional proceedings, the integrity of the legislative process. Obstructive acts subvert processes that depend on honesty and integrity. *See Fischer*, 64 F.4th at 370 (obstruction involves actions that "subvert the integrity of [the] truth-finding function through compromising the *honesty* of decision-makers (*e.g.*, judge, jury) or impairing the integrity [of evidence]") (emphasis added) (quoting Memorandum from Bill Barr to Deputy Att'y Gen. Rod Rosenstein (June 8, 2018),

http://perma.cc/CWX6-GAE9). Obstructive acts are necessarily *dishonest*, and, therefore, generally, made possible only through deception, because one cannot *openly* subvert a process that depends on honesty and integrity to safeguard the rights of others. *See Aguilar*, 515 U.S. at 616 (Scalia, J., dissenting in part) ("corruptly" involves "an act done with an intent to give some advantage inconsistent with official duty and the rights of others.") (cited in *Fischer*, 614 F. 4th at 380) (Katsas, J., dissenting); *id*. at 338 (lead opinion notes that *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007) affirmed a § 1512(c)(2) conviction where the defendant "did not impair evidence but *deceived* the recipient [of a forged document].") (emphasis added); Br. 14-15 (noting that *Arthur Andersen* cited approvingly a jury instruction that defined "corruptly" as acting "knowingly and *dishonestly* with the specific intent to subvert or undermine the integrity of a proceeding") (emphasis added); Reply Br. 13-15 (collecting cases, such as *United States v. Gordon*, which stated: "Acting 'corruptly' within the meaning of § 1512(c)(2) means acting 'with an improper purpose and to engage in conduct knowingly and *dishonestly* with the specific intent to subvert, impede or obstruct the [proceeding]." 710 F.3d 1124, 1151 (10th Cir. 2013) (emphasis added).

Again, obstructive acts are carried out dishonestly, or "corruptly," because one cannot openly and honestly elevate one's advantage over others within a process that

operates with integrity – that is designed to take account of the rights of others, free of corruption.

Judge Walker claimed that his standard narrowed the sweep of §1512(c)(2) because it required an unlawful "benefit." *Fischer*, 64 F.4th at 352. But his broad understanding of "benefit" fails to limit the sweep of § 1512(c)(2). Crimes as (relatively) minor as misdemeanor-theft involve something of tangible value: "property." *See*, *e.g.* D.C. Code § 22-3211. In the obstruction context, traditionally, the improper benefit is a "financial, professional, or exculpatory advantage," not the "diffuse intangible benefit of having a preferred candidate remain President." 64 F.4th at 380-81 (Katsas, J., dissenting). Defending his broad understanding of "benefit," Judge Walker stated: "Few would doubt that a defendant could be convicted of corruptly bribing a presidential elector if he paid the elector to cast a vote in favor of a preferred candidate." *Id*. at 356, n. 5. But this hypothetical resorts to a core obstruction scenario – bribery – where "corrupt" intent is inherent in the *quid pro quo*. *See id*. at 354 (Walker, J, concurring) (discussing bribery statutes). In a prosecution for bribing a presidential elector, it would be unnecessary to consider whether the intangibility of the expected "benefit" somehow exculpated the perpetrator. The dishonest *quid pro quo* subversion of the electoral process would suffice to convict. However, when the conduct is not such core obstruction – like

openly going into the Capitol Building with a stick to protest the results of a Presidential election – the expected benefit is too diffuse and intangible to support a § 1512(c)(2) conviction.

The *Fischer* lead opinion stated that "corrupt intent" could be proved based on the charged conduct of "assaulting law enforcement officers." 64 F.4th at 340. This statement could be *Fischer's* narrow ruling with regard to the word "corruptly," because Judge Walker's concurrence ultimately concluded that acting "corruptly" could be proved by establishing conduct "like assaulting police officers." *Id*. at 361. But since the parties agree that *Fischer* contains no holding on the meaning of the term "corruptly," *see* Gov't Supp. Br. 1-13, and because Judge Walker conditioned his concurrence on an interpretation of "corruptly" that no other member of the panel adopted, the scope of this ruling should be read very narrowly. Read narrowly, *Fischer* ruled that the "extreme conduct" – *see id*. at 382 (Katsas, J., dissenting) – of assaulting police officers constituted an attempt to improperly influence, or impede – *i.e.* to "obstruct" – an official proceeding -- and did not reach the contours of other conduct that could violate § 1512(c)(2).

Alternatively, *Fischer* could have equated the subversion of *law enforcement* inherent in assaulting police officers as sufficiently akin to the subversion of the *truth-seeking function* of legal proceedings to qualify as acting "corruptly."

Either way, *Fischer* would not suggest that Robertson acted "corruptly," because he was not convicted of assaulting police officers. His entering a restricted area while carrying a dangerous weapon – a stick – was reckless. But it was insufficient to establish the intent to physically assault police – or even to use his stick.[2]

## CONCLUSION

Robertson entered the Capitol in plain view of others. Once inside, he posted a photo of himself on Facebook. He did not act deceptively. He did not act dishonestly. He did not act "corruptly" for purposes of § 1512(c)(2).

Respectfully submitted,

/s/ Timothy Cone

Timothy Cone, Esq.
1615 New Hampshire Avenue N.W.
Washington, D.C. 20009
Tel. (202) 862-4333
timcone@comcast.net

[2] Commenting on the instant case, Professor Eliason wrote that Robertson used a stick "to assault law enforcement officers." Eliason, *Obstruction of Justice and the Capitol Riot – Part 2*, p. 5. But despite the government's similar claim on appeal, Gov't Br. 7, 34, neither the PSI nor the government's sentencing memorandum (DE124) alleged that Robertson assaulted anyone. The sentencing court specifically found that Robertson did not assault police officers. DE149:65.

**CERTIFICATE OF SERVICE**

I CERTIFY that on this 4th day of May 2023, a copy of the Appellant's Supplemental Brief was filed via the ECF system and was thereby served on Special Assistant United States Attorney James I. Pearce, 601 D Street, N.W., Washington, D.C. 20530.

/s/ Timothy Cone
Timothy Cone

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations in this Court's briefing order issued on April 12, 2023, because it contains no more than 2,600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect in New Times Roman 14-point font in both text and footnotes.

3. This brief complies with the privacy redaction requirement of Fed R. App. 25(a)(5) because it contains no personal data identifiers, and

4. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

DATED: May 4, 2023

/s/ Timothy Cone
Timothy Cone